NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 23-5044

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

IN RE SEALED CASE

On Appeal from the United States District Court
for the District of Columbia
No. 23-sc-31 (Hon. Beryl A. Howell)

_____

BRIEF OF AMICI CURIAE 22 PRESS ORGANIZATIONS
IN SUPPORT OF NEITHER PARTY AND
IN SUPPORT OF ACCESS TO SEALED COURT RECORDS

_____

Charles D. Tobin
Chad R. Bowman
Maxwell S. Mishkin
Lauren Russell
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Amici Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for amici curiae certify as follows:

### A.    Parties And Amici

Appellant is Twitter, Inc. ("Twitter").  Appellee is the United States of America.  Amici curiae are Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Fox News Network, LLC, USA TODAY, a publication operated by subsidiaries of Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Cable Satellite Corporation d/b/a C-SPAN, NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, POLITICO LLC, Radio Television Digital News Association, Reuters News & Media Inc., TEGNA Inc., Telemundo Network Group LLC d/b/a Noticias Telemundo, Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post.

### B.    Ruling At Issue

The ruling to which this brief responds is the August 16, 2023 Order of this Court directing the parties to show cause why the "sealed merits briefs in this case

. . . and the audio recording and transcript of the joint session of the oral argument should not be unsealed," and directing the Government to show cause "why the ex parte appellee brief and the audio recording and transcript of the ex parte session of the oral argument should not be unsealed."  Order of Aug. 16, 2023 (per curiam).

### C.     Related Cases

Amici recently filed a related application for access to records in this matter that remain under seal in the U.S. District Court for the District of Columbia, which has been docketed as *In re Press Application for Access to Judicial Records in Case No. 23-sc-31, In the Matter of the Search of Information that is Stored at Premises Controlled by Twitter, Inc.*, Case No. 23-mc-84-JEB (D.D.C.).

### D.     Rule 26.1 Corporate Disclosure Statement

Advance Publications, Inc. does not have any parent corporation.  Nor does any publicly held corporation own more than ten percent of its stock.

American Broadcasting Companies, Inc. d/b/a ABC News is an indirect, wholly-owned subsidiary of The Walt Disney Company, a publicly traded corporation.

The Associated Press is a news cooperative incorporated under the Not-for-Profit Corporation Law of New York and has no parents, subsidiaries or affiliates that have any outstanding securities issued to the public.

Bloomberg L.P. is a limited partnership; its general partner is Bloomberg Inc.; and no publicly held corporation owns 10% or more of Bloomberg L.P.'s limited partnership interests.

Cable News Network, Inc., is ultimately a wholly-owned subsidiary of Warner Bros. Discovery, Inc., a publicly traded corporation. Warner Bros. Discovery, Inc. has no parent company and, to the best of Cable News Network, Inc.'s knowledge, no publicly held company owns 10% or more of Warner Bros. Discovery, Inc.'s stock.

CBS Broadcasting Inc. is a wholly owned subsidiary of Paramount Global, a publicly traded company. National Amusements, Inc., a privately held company, beneficially owns the majority of the Class A voting stock of Paramount Global. Paramount Global is only aware, without further inquiry, that Berkshire Hathaway Inc., a publicly traded company, beneficially owns at least 10% of Paramount Global's total common stock, i.e., Class A and Class B on a combined basis, as reported on a Form 13F filed with the Securities and Exchange Commission on February 14, 2023.

Dow Jones & Company, Inc. ("Dow Jones"), publisher of the Wall Street Journal, is an indirect subsidiary of News Corporation, a publicly held company. Ruby Newco, LLC, an indirect subsidiary of News Corporation and a non-publicly held company, is the direct parent of Dow Jones. News Preferred Holdings, Inc., a

iv

subsidiary of News Corporation, is the direct parent of Ruby Newco, LLC. No publicly traded corporation currently owns 10% or more of the stock of Dow Jones.

The E.W. Scripps Company is a publicly traded company with no parent company. No individual stockholder owns more than 10% of its stock.

Fox News Network, LLC is directly, wholly-owned by Fox Television Stations, LLC, which is directly, wholly-owned by Fox Television Holdings, LLC, which is directly, wholly-owned by Foxcorp Holdings LLC, which is directly, wholly-owned by Fox Corporation, which is the ultimate parent and is publicly held. All of the aforementioned entities except Fox Corporation are privately held. No publicly held corporation other than Fox Corporation owns 10% or more of Fox News Network, LLC.

Gannett Co., Inc. is a publicly traded company (NYSE: GCI). BlackRock Inc., also a publicly traded entity, owns more than a ten percent interest in Gannett Co., Inc.

Gray Media Group, Inc. is held entirely by Gray Television, Inc., a publicly held corporation. No entity holds 10% or more of the equity in Gray Television, Inc.

Los Angeles Times Communications LLC is a wholly-owned subsidiary of NantMedia Holdings, LLC, which is a privately held company. No company with a 10% or greater ownership share in NantMedia Holdings, LLC is publicly traded.

National Cable Satellite Corporation d/b/a C-SPAN is a District of Columbia non-profit, non-stock corporation that is exempt from federal income tax pursuant to Section 501(c)(3) of the Internal Revenue Code, and as such has no stockholders.

NBCUniversal Media, LLC d/b/a NBC News is indirectly owned by Comcast Corporation, which is publicly held.  No other publicly held corporation owns 10% or more of the stock of NBCUniversal Media, LLC.

The New York Times Company, a publicly traded company, has no parent company and no publicly held corporation owns 10% or more of its stock.

POLITICO LLC is wholly owned by POLITICO Media Group LLC which is, in turn, wholly owned by Axel Springer SE, and no publicly held corporation owns 10% or more of its stock.

Radio Television Digital News Association is a nonprofit organization that has no parent company and issues no stock.

Reuters News & Media Inc. is a Delaware corporation whose parent is Thomson Reuters U.S. LLC, a Delaware limited liability company. Reuters News & Media Inc. and Thomson Reuters U.S. LLC are indirect and wholly owned

subsidiaries of Thomson Reuters Corporation, a publicly held corporation that is traded on the New York Stock Exchange and Toronto Stock Exchange. There are no intermediate parent corporations or subsidiaries of Reuters News & Media Inc. or Thomson Reuters U.S. LLC that are publicly held, and there are no publicly held companies that own 10% or more of Reuters News & Media Inc. or Thomson Reuters U.S. LLC shares.

TEGNA Inc. has no parent corporation. No publicly held corporation owns 10% or more of Tegna, Inc.'s stock.

Telemundo Network Group LLC d/b/a Noticias Telemundo is indirectly owned by Comcast Corporation, which is publicly held. No other publicly held corporation owns 10% or more of the stock of Telemundo Network Group LLC.

Univision Networks & Studios, Inc. is a wholly-owned subsidiary of Univision Communications Inc. (UCI), which is a privately held corporation. No publicly held corporation currently owns 10% or more of the stock of UCI. UCI's ultimate parent company is TelevisaUnivision, Inc., and the publicly traded company Grupo Televisa, S.A.B. owns 10% or more of the stock of TelevisaUnivision, Inc.

WP Company LLC d/b/a The Washington Post is a wholly owned subsidiary of Nash Holdings LLC, which is privately held and does not have any outstanding securities in the hands of the public.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ix

IDENTITY OF AMICI CURIAE, THEIR INTEREST IN THIS MATTER,
AND THE SOURCE OF THEIR AUTHORITY TO FILE THIS BRIEF...............1

RULE 29(a)(4)(E) CERTIFICATION...................................................2

CIRCUIT RULE 29(d) CERTIFICATION .............................................2

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT .................................................................................6

BACKGROUND AND PROCEDURAL HISTORY .................................................2

I.      THIS COURT SHOULD UNSEAL THE SEALED RECORDS
        UNDER THE FIRST AMENDMENT RIGHT OF ACCESS .......................7

        A.      The First Amendment Right Of Access Applies To
                The Sealed Records ..........................................................8

        B.      The Government Cannot Justify Continuing To
                Withhold The Sealed Records From The Public .................9

II.     THIS COURT SHOULD UNSEAL THE SEALED RECORDS
        UNDER THE COMMON LAW RIGHT OF ACCESS ..............................11

CONCLUSION ..............................................................................12

CERTIFICATE OF COMPLIANCE........................................................13

CERTIFICATE OF SERVICE ............................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Carducci v. Regan*,
714 F.2d 171 (D.C. Cir. 1983)..................................................................9

*Dhiab v. Trump*,
852 F.3d 1087 (D.C. Cir. 2017)............................................................7, 9

*Metlife, Inc. v. Financial Stability Oversight Council*,
865 F.3d 661 (D.C. Cir. 2017)..........................................................6, 8, 11

*In re New York Times Co.*,
585 F. Supp. 2d 83 (D.D.C. 2008)..........................................................12

*Richmond Newspapers v. Virginia*,
448 U.S. 555 (1980)..........................................................................6, 9

*In re Sealed Case*,
--- F.4th ---, 2023 WL 5076091, No. 23-5044
(D.C. Cir. July 18, 2023) ...............................................................3, 10

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) ..................................................................8

*United States v. Hubbard*,
650 F.2d 293 (D.C. Cir. 1980)...............................................................11

*Washington Post v. Robinson*,
935 F.2d 282 (D.C. Cir. 1991)...............................................................10

## IDENTITY OF AMICI CURIAE, THEIR INTEREST IN THIS MATTER, AND THE SOURCE OF THEIR AUTHORITY TO FILE THIS BRIEF

Amici have moved for leave to file this brief pursuant to Federal Rule of Appellate Procedure 29(a)(3) and Circuit Rule 29(b).  As noted in that motion, Twitter consented to the filing of this brief, and the Government asserted that it "takes no position on this request and defers to the Court."

Amici are Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Fox News Network, LLC, USA TODAY, a publication operated by subsidiaries of Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Cable Satellite Corporation d/b/a C-SPAN, NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, POLITICO LLC, Radio Television Digital News Association, Reuters News & Media Inc., TEGNA Inc., Telemundo Network Group LLC d/b/a Noticias Telemundo, Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post.

As media organizations, amici regularly seek access to court records and proceedings related to the Special Counsel's investigation and prosecution of former President Donald J. Trump.  Amici recently filed a related application for

access to records in this matter that remain under seal in the U.S. District Court for

the District of Columbia, which has been docketed as *In re Press Application for*

*Access to Judicial Records in Case No. 23-sc-31, In the Matter of the Search of*

*Information that is Stored at Premises Controlled by Twitter, Inc.*, Case No. 23-

mc-84-JEB (D.D.C.).

## RULE 29(a)(4)(E) CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici certify

that no party's counsel authored this brief in whole or in part; no party or party's

counsel contributed money that was intended to fund preparing or submitting this

brief; and no person – other than amici or their counsel – contributed money that

was intended to fund preparing or submitting the brief.

## CIRCUIT RULE 29(d) CERTIFICATION

Pursuant to D.C. Circuit Rule 29(d), amici certify that this brief is necessary

to provide the unique experience and perspective of news media organizations on

the public right of access to judicial records and proceedings.  Amici are not aware

of any other amicus briefs being filed in response to the August 16, 2023 Order.

## INTRODUCTION AND SUMMARY OF ARGUMENT

From his first day in office, former President Donald J. Trump used Twitter prolifically. *See, e.g.*, Michael D. Shear, et al., *How Trump Reshaped the Presidency in Over 11,000 Tweets*, The New York Times (Nov. 2, 2019), https://www.nytimes.com/interactive/2019/11/02/us/politics/trump-twitter-presidency.html ("'He needs to tweet like we need to eat,' Kellyanne Conway, his White House counselor, said in an interview."). That continued until the platform permanently suspended Trump's account, following the Capitol riot, for "violat[ing] the company's policy against glorification of violence." *See, e.g.*, Brian Fung, *Twitter bans President Trump permanently*, CNN (Jan. 9, 2021), https://www.cnn.com/2021/01/08/tech/trump-twitter-ban/index.html.

"Since November 18, 2022, Special Counsel Jack Smith has overseen an ongoing criminal investigation into potential interference with the peaceful transfer of power following the 2020 presidential election." *In re Sealed Case*, --- F.4th ---, 2023 WL 5076091, No. 23-5044 (D.C. Cir. July 18, 2023). This investigation has so far led to Trump's indictment on four felony counts, including conspiracy to obstruct the certification of the electoral vote in Congress on January 6, 2021. *See United States v. Trump*, No. 23-cr-257-TSC (D.D.C.).

On August 9, 2023, this Court published a redacted version of a thirty-four-page decision in this matter, affirming the District Court's order in Case No. 23-sc-

3

31 (D.D.C.), *In the Matter of the Search of Information That Is Stored at Premises Controlled by Twitter, Inc.* ("*In re Twitter*"), which held Twitter in contempt for failing to comply promptly with a search warrant for private messages (known on Twitter as "direct messages") sent from Trump's account, @realDonaldTrump. Part of this Court's docket has been unsealed *sua sponte*, and the District Court released roughly 500 pages of records from the *In re Twitter* matter as well, including a copy of the warrant served on Twitter in connection with the Special Counsel's investigation.[1]

On August 16, 2023, this Court issued an order, *sua sponte*, requiring that the parties show cause why the "sealed merits briefs in this case . . . and the audio recording and transcript of the joint session of the oral argument should not be unsealed." Order of Aug. 16, 2023 (per curiam). The Court also ordered the Government to show cause "why the ex parte appellee brief and the audio recording and transcript of the ex parte session of the oral argument should not be unsealed." *Id.* Finally, the Court reminded counsel of their obligation "to 'promptly notify the Court when it is no longer necessary to maintain the record or portions of the record under seal.'" *Id.* (quoting D.C. Cir. Rule 47.1(f)(4)). The

---

[1] The District Court released the records in two sets of documents: one unsealed with redactions, *see* https://www.dcd.uscourts.gov/content/doc-50-1-attachment-documents-unsealed-redactions, the other unsealed without redactions, *see* https://www.dcd.uscourts.gov/content/doc-50-2-attachment-b-documents-unsealed-without-redactions.

docket reflects that two responses to the August 16 Order have since been filed, both of which are under seal.

Pursuant to Federal Rule of Appellate Procedure 29 and Circuit Rule 29, Advance Publications, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Bloomberg L.P., Cable News Network, Inc., CBS Broadcasting, Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, The E.W. Scripps Company, Fox News Network, LLC, USA TODAY, a publication operated by subsidiaries of Gannett Co., Inc., Gray Media Group, Inc., Los Angeles Times Communications LLC, publisher of The Los Angeles Times, National Cable Satellite Corporation d/b/a C-SPAN, NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, POLITICO LLC, Radio Television Digital News Association, Reuters News & Media Inc., TEGNA Inc., Telemundo Network Group LLC d/b/a Noticias Telemundo, Univision Networks & Studios, Inc., and WP Company LLC d/b/a The Washington Post respectfully submit this brief in support of unsealing all of the briefs, argument transcripts, and argument audio recordings referenced in the August 16 Order (together, the "Sealed Records"). The powerful First Amendment and common law rights of access apply to all of the Sealed Records, and especially given the significant amount of information about this case that this Court and the

District Court have already made public, the Government cannot demonstrate a compelling reason to continue keeping these important records secret.

## ARGUMENT

The First Amendment and common law rights of access to court records are "a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch." *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017) (Garland, J.). Nowhere is the maintenance of integrity and legitimacy more important than in a case like this one, involving the historic and closely-watched investigation of a former President. Under the Constitution and the common law, the Court should unseal the Sealed Records and any other records filed in this matter for which that Government can no longer demonstrate a compelling need to keep from the public.

## I. THIS COURT SHOULD UNSEAL THE SEALED RECORDS UNDER THE FIRST AMENDMENT RIGHT OF ACCESS

In *Richmond Newspapers v. Virginia*, the Supreme Court recognized that "the right to attend criminal trials is implicit in the guarantees of the First Amendment," as "without the freedom to attend such trials, which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated.'" 448 U.S. 555, 580 (1980) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). The Supreme Court and lower courts have since then identified additional categories of proceedings and records to which the right of

6

access attaches, and "sketched a two-stage process for resolving whether the First

Amendment affords the public access to a particular judicial record or proceeding."

*Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).

"First the court must determine whether a qualified First Amendment right

of public access exists." *Id.* (internal marks omitted).  To make that determination,

"the Supreme Court has identified two requirements that it calls the tests of

experience and logic.  The experience inquiry looks to whether the proceeding has

historically been open.  And the somewhat oddly-labeled logic inquiry asks

whether the right of access plays an essential role in the proper functioning of the

judicial process and the government as a whole." *Id.* at 1103 (internal marks

omitted) (quoting *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S.

1, 9, (1986), and *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325,

1331-32 (D.C. Cir. 1985) (Scalia, J.)).  "Both tests must be satisfied before we can

conclude that the First Amendment provides a qualified right of access." *Id.*  If the

right of access applies, then the records or proceedings "may be sealed but only if

'specific, on the record findings are made demonstrating that closure is essential to

preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 1092

(quoting *Press-Enterprise II*, 478 U.S. at 13-14).

7

**A.    The First Amendment Right Of Access Applies To The Sealed Records**

Experience and logic both favor access to appellate briefing and oral argument records.  In terms of experience, the National Archives provides public access to copies of transcripts and briefs from the D.C. Circuit stretching back to 1893, the year this Circuit was established.  *See Guide to Federal Records: Records of the United States Courts of Appeals*, Nat'l Archives & Records Admin., https://www.archives.gov/research/guide-fed-records/groups/276.html.  In terms of logic, "[t]he presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice."  *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).  Thus, "professional and public monitoring is an essential feature of democratic control," and "[s]uch monitoring is not possible without access to . . . documents that are used in the performance of Article III functions."  *Id.*

That public monitoring must extend to briefs, because "[a] brief (or part of a brief) can affect a court's decisionmaking process even if the court's opinion never quotes or cites it.  To affect the court's decision, after all, is the reason parties file briefs."  *Metlife*, 865 F.3d at 667.  And it must include access to the records of oral argument, as "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as

8

arbiters of legal questions presented *and argued* by the parties before them."
*Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (emphasis added).  Indeed,
though the Supreme Court in *Richmond Newspapers* made the observation with
respect to trial proceedings, it is just as true for appellate courts that the "courtroom
is a public place where the people generally—and representatives of the media—
have a right to be present, and where their presence historically has been thought to
enhance the integrity and quality of what takes place."  *Richmond Newspapers,
Inc.*, 448 U.S. at 578.

Public access to briefs and argument records thus passes the tests of both
experience and logic, and the First Amendment right of access applies accordingly.

### B.     The Government Cannot Justify Continuing To Withhold The Sealed Records From The Public

If the Court agrees that the First Amendment right of access applies to the
Sealed Records, then to justify withholding them from the public, the Government
must demonstrate that such sealing "is essential to preserve higher values and is
narrowly tailored to serve that interest."  *Dhiab*, 852 F.3d at 1102 (Williams, J.,
concurring) (citation omitted).  Specifically, to overcome the constitutional access
right the Government must demonstrate that:

> a.     There is a substantial probability of prejudice to a compelling
>        interest if the right is not limited.  *Press-Enterprise II*, 478 U.S.
>        at 13-14; *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"),
>        464 U.S. 501, 510 (1984); *Richmond Newspapers*, 448 U.S. at
>        580-81.

b.  There is no alternative to a limitation of the access right that will adequately protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 13-14; *Washington Post v. Robinson*, 935 F.2d 282, 289-90 (D.C. Cir. 1991).

c.  Restricting access will effectively protect against the threatened harm. *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

d.  The restriction on access is narrowly tailored to minimize the harm to the public's access rights. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287.

With these principles in mind, this Court should conclude that the First Amendment right of access requires the release of the Sealed Records. Particularly because of the Court's *sua sponte* decision to unseal its ruling in this matter, the public already possesses a tremendous amount of information about this dispute between Twitter and the Government. *See generally In re Sealed Case*, 2023 WL 5076091. The Government thus cannot show that continuing to seal the briefs and oral argument records in which the parties set out their positions in that dispute is necessary to prevent harm to a compelling state interest, let alone that there is no alternative to continued sealing that will prevent that purported harm, or that continued sealing of entire documents – rather than releasing those documents with properly targeted redactions – is narrowly tailored to preventing that alleged harm. *See Robinson*, 935 F.2d at 292 (concluding that "the government did not demonstrate a compelling interest to justify sealing" court record where, *inter alia*,

10

"disclosure of [its] contents . . . would only have confirmed to the public what was already validated by an official source").

Because the First Amendment right of access applies to the Sealed Records and the Government cannot show a compelling interest in continuing to withhold those records from the public in full, the Court should grant access to the Sealed Records with only those redactions the Government can show are still necessary.

## II.    THIS COURT SHOULD UNSEAL THE SEALED RECORDS UNDER THE COMMON LAW RIGHT OF ACCESS

The Court also should release the Sealed Records under the common law right of access.  "Although [this] right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests."  *Metlife*, 865 F.3d at 663.  Like the constitutional right of access, the common law right requires courts to conduct a two-stage analysis.  First, courts determine whether the records at issue are "judicial records" to which there is a "strong presumption" in favor of access.  *Id.* at 665-69.  If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to determine whether the presumption of access has been rebutted.  650 F.2d 293, 317-21 (D.C. Cir. 1980).

The Sealed Records are unquestionably "judicial records" to which the public has a presumptive right of access under the common law.  *See, e.g.*, *Metlife*, 865 F.3d at 668 (documents that "were filed before the district court's decision and were intended to influence it" are judicial records).  The Court should therefore

11

release those records unless the Government rebuts the strong presumption of

public access under *Hubbard* and *Metlife*, which it cannot do given the extensive

amount of information about this case that is already public.  *See In re New York*

*Times Co*., 585 F. Supp. 2d 83, 93 (D.D.C. 2008) (ordering Government to release

records with limited redactions because the "public has made a strong showing of

need for the materials, much of the information is already in the public forum, and

there is no possibility of prejudice to an investigation or a future defendant").

## CONCLUSION

For the foregoing reasons, this Court should unseal all of the records referred

to in the August 16, 2023 Order, as well as any other records in this matter for

which the Government can no longer demonstrate a compelling need for secrecy.

Dated:  September 6, 2023          Respectfully submitted,

/s/ *Charles D. Tobin*
Charles D. Tobin
Chad R. Bowman
Maxwell S. Mishkin
Lauren Russell
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballardspahr.com

*Counsel for Amici Curiae*

12

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.     This document complies with the type-volume limit of FRAP 29(a)(5)

because, excluding the parts of the document exempted by FRAP 32(f) and D.C.

Circuit Rule 32(e)(1), this document contains 2,262 words.

2.     This document complies with the typeface requirements of FRAP

32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document

has been prepared in a proportionally spaced typeface using Microsoft Word 2016

in 14 point Times New Roman font.

Dated:  September 6, 2023          /s/ *Charles D. Tobin*
                                  Charles D. Tobin

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I caused the foregoing to be filed and served electronically via the Court's ECF System upon all counsel of record. I further certify that, pursuant to Circuit Rule 31(b), I caused eight paper copies of the foregoing to be filed via FedEx to the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit.

Dated:  September 6, 2023        /s/ *Charles D. Tobin*
                                 Charles D. Tobin

14