PANEL DECISION ISSUED AUGUST 9, 2023

Case No. 23-5044

---

**UNITED STATES COURT OF APPEALS**

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

IN RE: SEALED CASE,

---

Appeal from the United States District Court for the District of Columbia,
No. 1:23-sc-00031
Hon. Judge Howell

**BRIEF OF *AMICUS CURIAE* ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF APPELLANT'S PETITION FOR REHEARING EN BANC**

---

David Greene
Andrew Crocker
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109-7701
Tel: (415) 436-9333
Fax: (415) 436-9993
david@eff.org
*Attorneys for Amicus Curiae*
*Electronic Frontier Foundation*

September 8, 2023

i

## CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES AND STATUTES

Pursuant to D.C. Circuit Rules 26.1 and 28(a)(1) and Fed. R. App. P. 26.1 the undersigned counsel certifies as follows:

**A.      Parties and Amici**

Appellant is X Corp., formerly known as Twitter, Inc. ("Twitter"). Appellee is the United States of America. Amicus is the Electronic Frontier Foundation.

**B.      Rulings Under Review**

This brief refers to the Court's August 9, 2023 ruling.

**C.      Related Cases**

Amicus is not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).


September 8, 2023                          _____*/s/ David Greene*___
                                                          David Greene

                                                          *Attorneys for Amicus Curiae*
                                                          *Electronic Frontier Foundation*

ii

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to D.C. Circuit Rule 26.1 and Federal Rule of Appellate Procedure 26.1, amicus submits the following corporate disclosure statement: The Electronic Frontier Foundation is a donor-funded, nonprofit civil liberties organization, has no parent corporation, and does not issue stock.

## GLOSSARY OF ABBREVIATIONS

None.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, RELATED CASES AND STATUTES .................................................................................................ii

CORPORATE DISCLOSURE STATEMENT ............................................. iii

GLOSSARY OF ABBREVIATIONS ..........................................................iv

TABLE OF AUTHORITIES ........................................................................vii

STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING ...................................................................................................1

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS .1

STATUTES AND REGULATIONS ..............................................................1

INTEREST OF AMICUS .................................................................................2

INTRODUCTION..........................................................................................3

ARGUMENT .................................................................................................4

I.    THE PANEL'S FIRST AMENDMENT ANALYSIS DEFIES PRECEDENT FROM THE SUPREME COURT AND THIS COURT, AND IT CONFLICTS WITH THE LAW OF OTHER CIRCUITS. .........................4

A.    Prior Restraints Are Uniquely Disfavored Under Longstanding First Amendment Precedent. ....................................................................................4

B.    The Panel Did Not Apply the "Most Exacting" Strict Scrutiny Due to Prior Restraints...............................................................................................7

C.    The Panel Erred in Holding That *Freedman*'s Procedural Protections Do Not Apply.......................................................................................................10

II.    IF LEFT UNDISTURBED, THE PANEL'S DECISION PRESENTS A THREAT TO FIRST AMENDMENT RIGHTS IN THIS COURT. ............... 12

CERTIFICATE OF SERVICE ........................................................................ 1

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS PURSUANT TO FED. R. APP. P. 32(G)(1) .................................................... 2

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alexander v. United States*,
    509 U.S. 544 (1993)................................................................3

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963)................................................................6

*Butterworth v. Smith*,
    494 U.S. 624 (1990)................................................................8

*Carroll v. President & Comm'rs of Princess Anne*,
    393 U.S. 175 (1968)................................................................8

*Columbia Broad. Sys., Inc. v. U.S. Dist. Ct. ("CBS"),*
    729 F.2d 1174 (9th Cir. 1984) ...............................................7, 10

*Doe v. Mukasey*,
    549 F.3d 861 (2d Cir. 2008). ......................................................10

*Freedman v. Maryland,*
    380 U.S. 51 (1965)................................................................4

*Microsoft v. DOJ*,
    233 F. Supp. 3d 887 (W.D. Wash. 2017)....................................................14

*Near v. Minnesota*,
    283 U.S. 697 (1931)). ..............................................................5, 6

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976)................................................................3, 5, 6, 9

*New York Times v. United States* (*Pentagon Papers*),
    403 U.S. 713 (1971)................................................................7, 10

*Oklahoma Publ'g Co. v. Dist. Ct.*,
    430 U.S. 308 (1977)................................................................9

vii

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971).................................................................6

*Patterson v. Colorado*,
  205 U.S. 454 (1907).................................................................5

*Procter & Gamble Co. v. Bankers Trust Co.*,
  78 F.3d 219 (6th Cir. 1996) ..................................................9

*Promotions Ltd. v. Conrad*,
  420 U.S. 546 (1975)............................................................5, 7

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)...................................................................8

*Smith v. Daily Mail*,
  443 U.S. 97 (1979)...............................................................4, 7

*Spokane Arcades, Inc. v. Brockett*,
  631 F.2d 135 (9th Cir. 1980) ................................................11

*State v. Simants*,
  236 N.W.2d 794 (Neb. 1975). ................................................6

*Vance v. Universal Amusement Co.*,
  445 U.S. 308 (1980)..........................................................11, 12

**Statutes**

18 U.S.C. § 2705 .....................................................................3, 7

18 U.S.C. § 2709 ......................................................................10

**Other Authorities**

Claire Cain Miller, *Tech Companies Concede to Surveillance Program*, N.Y.
  Times (June 7, 2013), ..........................................................13

*NDO Fairness Act*, H.R. 3089, 117th Cong. (2023) ..........................................14

*Who Has Your Back,* EFF (2014) (detailing which companies published
  transparency reports),..........................................................13

## STATEMENT REGARDING CONSENT TO FILE AND SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(b), counsel for amicus certifies that we have filed a Motion for an Invitation to Participate as Amicus Curiae concurrently with this brief. Counsel further certifies that Twitter has consented to amici curiae's participation and the filing of this brief, and the government has no objection.

Pursuant to D.C. Circuit Rule 29(d), counsel for amicus curiae certifies that this separate amicus brief is necessary to provide the court with additional information about the prior restraint doctrine that will help it to decide the matter before it.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. No person other than amicus, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## STATUTES AND REGULATIONS

The text of 18 U.S.C. § 2705 and the text of 18 U.S.C. § 2709 appear in the Addendum.

## INTEREST OF AMICUS

The Electronic Frontier Foundation is a non-profit civil liberties organization that has worked for thirty-three years to protect free speech, privacy, security, and innovation in the digital world.

## INTRODUCTION

This case arises from Twitter's[1] attempts to modify a nondisclosure order issued under 18 U.S.C. § 2705, preventing Twitter from notifying anyone about a search warrant for data related to the user account @RealDonaldTrump.

In barring Twitter from speaking before that speech occurred, the nondisclosure order acted as a quintessential prior restraint, "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (cleaned up). Unlike the "threat of criminal or civil sanctions after publication," which "chills" speech, prior restraints entirely "freeze" speech for their duration, *Nebraska Press*, 427 U.S. at 559.

Breaking with bedrock First Amendment precedent from the Supreme Court and prior rulings of this Court and its sister circuits, the panel made two doctrinal errors. First, although the panel held that strict scrutiny applied to the nondisclosure order, its application did not resemble the "most exacting scrutiny"

---

[1] We follow the panel opinion's use of "Twitter" to refer to X Corp. Slip op. at 2 n.1.

3

accorded to prior restraints. *Smith v. Daily Mail*, 443 U.S. 97, 102 (1979). In particular, the panel's analysis of narrow tailoring was unduly limited by its assertion that Twitter's speech on information "obtained only by virtue of its involvement in the government's investigation" was not entitled to the highest protection. Slip op. at 22. Second, in considering Twitter's procedural challenge based on *Freedman v. Maryland,* 380 U.S. 51 (1965), the panel held that *Freedman* applies only to "licensing and censorship regimes," once again improperly distinguishing prior restraints imposed on private individuals unwillingly forced to participate in government investigations. Slip op. at 27.

These errors undermine at least a century of jurisprudence subjecting prior restraints to unique—and uniquely demanding—First Amendment scrutiny. The petition should be granted so this Court can fully consider whether to approve a drastic rewriting of First Amendment law counter to precedent from the Supreme Court, this Court, and its sister circuits. *See* Fed. R. App. P. 35(a)(1).

## ARGUMENT

## I.   THE PANEL'S FIRST AMENDMENT ANALYSIS DEFIES PRECEDENT FROM THE SUPREME COURT AND THIS COURT, AND IT CONFLICTS WITH THE LAW OF OTHER CIRCUITS.

### A.   Prior Restraints Are Uniquely Disfavored Under Longstanding First Amendment Precedent.

The panel's decision runs counter to what was previously one of the most uncontroversial and "deeply etched" precepts in First Amendment law: that prior

4

restraints are the "essence of censorship." *Se. Promotions Ltd. V. Conrad*, 420 U.S. 546, 559 (1975); *Near v. Minnesota*, 283 U.S. 697, 713 (1931). Indeed, as the Supreme Court recognized 116 years ago, "the main purpose of [the First Amendment] is to prevent all such Previous restraints upon publications as had been practiced by other governments." *Nebraska Press*, 427 U.S. at 557 (quoting *Patterson v. Colorado*, 205 U.S. 454, 462 (1907) (cleaned up) (distinguishing prior restraints from subsequent punishment of speech)).

The First Amendment has always uncontroversially protected against prior restraints. The Founders debated only whether—as Blackstone had earlier claimed—it included other restrictions on speech as well. *Near*, 283 U.S. at 714–15. And although the First Amendment was ultimately interpreted to also protect against post-publication intrusions on the freedoms of speech and the press, prior restraints remained more strongly disfavored. Unlike the "threat of criminal or civil sanctions after publication," which "chills" speech, prior restraints entirely "freeze" speech for their duration. *Nebraska Press*, 427 U.S. at 559.

For a solid century, the Supreme Court has repeatedly held that because prior restraints present such unique dangers, they are permissible only in the rarest cases. In 1931, the Court observed that the use of prior restraints was so far outside our constitutional tradition that "there ha[d] been almost an entire absence of attempts to impose" them—a consistency that reflects "the deep-seated conviction

that such restraints would violate constitutional right[s]." *Near*, 283 U.S. at 718. Thereafter, "the principles enunciated in *Near* were so universally accepted that the precise issue did not come before" the Court for another 40 years. *Nebraska Press*, 427 U.S. at 557–58 (citing *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)).

The Supreme Court's decision in *Nebraska Press* demonstrates just how well-established this principle was. In that case, the Court determined whether the right to a fair trial could justify a broad prior restraint against pre-trial publicity. 427 U.S. at 542. But the aspect of the trial judge's restrictive order most analogous to the prohibition at issue here—a prohibition on "reporting the exact nature of the restrictive order itself"—was so patently unconstitutional that the Nebraska Supreme Court voided it before the remainder of the publication bar reached the U.S. Supreme Court. *Id.* at 544. *See also State v. Simants*, 236 N.W.2d 794, 799, 805 (Neb. 1975).

The unbroken line of authority that prior restraints are reserved for "exceptional cases," *Near*, 283 U.S. at 716, has created a heavy presumption of unconstitutionality that the government must overcome. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963); *Keefe*, 402 U.S. at 419. Even if publication entails the risk of sanctions, "a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others

6

beforehand." *Conrad*, 420 U.S. at 559. This precedent has given rise to rigorous substantive and procedural protections, each unique to prior restraints.

> **B.    The Panel Did Not Apply the "Most Exacting" Strict Scrutiny Due to Prior Restraints.**

Nondisclosure orders issued under 18 U.S.C. § 2705 are prior restraints because they prohibit recipients from speaking about the subject matter of the underlying requests in advance of that speech. *See Matter of Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020) (treating Section 2705 nondisclosure order as a prior restraint); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 980 (C.D. Cal. 2017) (Section 2705 nondisclosure orders "almost uniformly" treated as prior restraints) (collecting cases).

This Court and its sister circuits have consistently subjected prior restraints to the "most exacting scrutiny," a standard derived from the Supreme Court's decisions in *New York Times v. United States*, 403 U.S. 713, 714 (1971), and *Smith v. Daily Mail*, 443 U.S. 97, 102 (1979). *See Halperin v. Dep't of State*, 565 F.2d 699, 707 (D.C. Cir. 1977); *Columbia Broad. Sys., Inc. v. U.S. Dist. Ct. (CBS),* 729 F.2d 1174, 1178 (9th Cir. 1984); *United States v. Quattrone,* 402 F.3d 304, 310 (2d Cir. 2005); *Sindi v. El-Moslimany*, 896 F.3d 1, 32 (1st Cir. 2018).

Relevant here, the Supreme Court has imposed an especially demanding form of the narrow-tailoring requirement, explaining that prior restraints must be

"couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968).

Although the panel here purported to apply strict scrutiny, it was unduly dismissive of the arguments Twitter raised about the necessity of the government's prior restraint and the possibility of more narrowly tailored alternatives. The panel supported its conclusion on the grounds that a prior restraint "limited to information that Twitter obtained only by virtue of its involvement in the government's investigation. . . is entitled to less protection than information a speaker possesses independently." Slip op. at 22 (citing *Butterworth v. Smith*, 494 U.S. 624, 636 (1990) (Scalia, J., concurring) and *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)).

However, the authorities the panel relied on to reject consideration of more narrowly tailored alternatives actually support the application of the "most exacting" strict scrutiny. In *Butterworth*, the Supreme Court *struck down* the part of a Florida law prohibiting grand jury witnesses from disclosing their own testimony even after the grand jury was discharged. *See* 494 U.S. at 632. That voided prohibition is more closely analogous to the speech restriction here. The portion of the statute *Butterworth* left in place did not authorize prior restraints,

only punishment *after* publication.[2] Similarly, in *Seattle Times*, the Court held that a newspaper had to comply with a protective order, to which it had agreed, prohibiting the disclosure of discovery material. 467 U.S. at 24–27. In declining to apply "exacting First Amendment scrutiny" accorded to a "classic prior restraint," the Court emphasized that the newspaper had to agree to follow the protective order to obtain the information in the first place, therefore distinguishing it from prior restraint cases in which a speaker is involuntarily gagged. 467 U.S. at 32–34. *See also Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996) (recognizing that *Seattle Times* applies narrowly and only to restraints on parties to civil litigation who have gained access to information by agreeing to a protective order as part of the discovery process). This case, of course, does not involve any such agreed-upon restrictions.

Moreover, there are many cases in which courts applied the exacting scrutiny due prior restraints where the ultimate *source* of the information the government seeks to control was the government itself. *See, e.g.*, *Nebraska Press,* 427 U.S. at 543 (press heard confession and other evidence while attending pretrial hearing); *Oklahoma Publ'g Co. v. Dist. Ct.*, 430 U.S. 308, 309 (1977)

---

[2] Statutes criminalizing publication of certain information are not considered prior restraints because unlike judicial and executive orders, they are not self-executing. *Landmark Comms. v. Virginia,* 435 U.S. 829, 838 (1978) (statute allowing for punishment after publication not a prior restraint).

(reporters obtained juvenile's name by attending court hearing which by law was supposed to be closed); *New York Times*, 403 U.S. at 713 (Pentagon Papers generated by a Defense Department contractor); *CBS*, 729 F.2d at 1176 (temporary restraining order preventing CBS from broadcasting government surveillance tapes).

By rejecting Twitter's proposed alternatives as categorically "unworkable" and "unpalatable," Slip. Op. at 24, 25, the panel failed to apply exacting scrutiny, relieving the government of its burden to actually demonstrate, with evidence, that these alternatives would be ineffective.

### C.    The Panel Erred in Holding That *Freedman*'s Procedural Protections Do Not Apply.

The panel's cramped view of the speech restrained by the nondisclosure order here led it to make an additional error, holding that the *Freedman* procedural protections applied to "censorship and licensing schemes are a poor fit in this case" because the nondisclosure order was not a "classic prior restraint." Slip op. at 27, 29.

This holding creates a split with the Second Circuit in *Doe v. Mukasey*, 549 F.3d 861 (2d Cir. 2008). Although the *Mukasey* court questioned whether government nondisclosure orders issued under the national security letter statute, 18 U.S.C. § 2709, were "typical prior restraint[s]," it nevertheless applied *Freedman. Id.* at 871, 877. It also specifically rejected analogies between national

security letters and the restrictions in *Butterworth* and *Seattle Times*. *Id.* at 877.

Moreover, *Freedman*'s procedural protections have been applied to a variety of government speech bans beyond permitting and licensing schemes.

In *Vance v. Universal Amusement Co.*, 445 U.S. 308, 310, 316 (1980), for example, a Texas statute empowered the state to obtain an ex parte temporary restraining order, which could be converted into a much longer temporary injunction, against exhibiting films if the distributor had previously demonstrated a habitual "commercial exhibition of obscenity." A court ultimately decided whether an injunction was warranted. The scheme in *Vance* was not a permitting scheme, and there was no pre- or post-exhibition review of enjoined films at all. Instead, injunctions were based on past exhibitions. *Vance*, 445 U.S. at 316 & nn.4, 5. Nevertheless, the Supreme Court approved the lower court's finding that the schemes were "procedurally deficient, and that they authorize prior restraints that are more onerous than is permissible under" *Freedman* and its progeny. *Id*. at 317.

Likewise, the Ninth Circuit applied *Freedman* to a speech injunction, as opposed to a pre-exhibition review scheme, in *Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135 (9th Cir. 1980). The court held that preliminary and permanent injunctions authorized by a public nuisance statute were an unconstitutional prior restraint. 631 F.2d at 138. Emphasizing that "'the burden of supporting an

injunction against future exhibition is even heavier than the burden of justifying the imposition of a criminal sanction for a past communication,'" it found the statute failed to satisfy *Freedman*. *Id.* (quoting *Vance*, 445 U.S. at 315).

## II.     IF LEFT UNDISTURBED, THE PANEL'S DECISION PRESENTS A THREAT TO FIRST AMENDMENT RIGHTS IN THIS COURT.

Regardless of the resolution of this case, the doctrinal errors described above risk granting the government far too much authority to shield its activities from public scrutiny. By characterizing the speech restrained by the nondisclosure order as merely information Twitter obtained by "virtue of its involvement in the government's investigation," the panel opinion enables prior restraints on speech involving a variety of matters of public concern, while restricting recipients' ability to meaningfully test these gag orders in court.

Under the panel's reasoning, officials can restrain a wide variety of speech about information "obtained from the government" without full access to timely, searching judicial review required by the First Amendment. This thwarts the very purpose of the *Freedman* procedures—to minimize abridgment of speech caused by even temporary gag orders. Even a meritless gag order that is ultimately voided by a court causes great harm while it is in effect. Importantly, the *Freedman* procedures do not disable the government from suppressing the dissemination of confidential information when suppression can be justified—but the government must justify it, promptly, to a court, and the government must bear the burden of

12

review, including narrow tailoring. *Freedman*, 380 U.S. at 58.

Every day, Americans obtain information that is a matter of great public concern "only by virtue of [their] involvement" in governmental and judicial processes. Incarcerated persons receive information from government agencies that control virtually every facet of their lives—from living conditions to medical care. Individuals receive information by interacting with law enforcement, border officials, the Internal Revenue Service, the U.S. Post Office, and the courts.

Transparency reporting is yet another example of speech that the government may more easily gag under the panel's reasoning. Especially following government declassifications accompanying the Snowden revelations in 2013, the public and the media has raised serious questions about the role played by tech companies, and transparency reporting has been a key tool for companies to provide much-needed data on government surveillance activity and clarify how they respond to requests.[3]

Internet users are unable to assert their own constitutional interests if providers are gagged from notifying them of the government's request. *See*

---

[3] *See, e.g.,* Claire Cain Miller, *Tech Companies Concede to Surveillance Program*, N.Y. Times (June 7, 2013), https://www.nytimes.com/2013/06/08/technology/tech-companies-bristling-concede-to-government-surveillance-efforts.html; *Who Has Your Back,* EFF (2014) (detailing which companies published transparency reports), https://www.eff.org/who-has-your-back-2014.

*Microsoft v. DOJ*, 233 F. Supp. 3d 887, 916 (W.D. Wash. 2017). And existing law does not require the government to notify users in most instances. *See, e.g., NDO Fairness Act*, H.R. 3089, 117th Cong. (2023).

This speech, which is essential to public oversight and accountability for government surveillance, lies at the heart of the First Amendment's protections. There is no basis for subjecting it to lesser constitutional protection.

September 8, 2023                    Respectfully submitted,

                                     ELECTRONIC FRONTIER FOUNDATION

                            By:  _____*/s/ David Greene*_____
                                     David Greene

                                     Electronic Frontier Foundation
                                     815 Eddy Street
                                     San Francisco, CA 94109-7701
                                     Tel: (415) 436-9333
                                     Fax: (415) 436-9993
                                     david@eff.org

                                     *Attorneys for Amicus Curiae Electronic Frontier Foundation*

14

ADDENDUM TABLE OF CONTENTS

18 U.S.C.§2705………………………………………………………A-1

18 U.S.C. §2709………………………………………………………...A-5

ADDENDUM

| United States Code Annotated |
| --- |
| Title 18. Crimes and Criminal Procedure |
| Section 2705 - Delayed Notice |

18 U.S.C.§ 2705

(a) Delay of Notification.—

(1) A governmental entity acting under section 2703(b) of this title may—

(A) where a court order is sought, include in the application a request, which the court shall grant, for an order delaying the notification required under section 2703(b) of this title for a period not to exceed ninety days, if the court determines that there is reason to believe that notification of the existence of the court order may have an adverse result described in paragraph (2) of this subsection; or

(B) where an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury subpoena is obtained, delay the notification required under section 2703(b) of this title for a period not to exceed ninety days upon the execution of a written certification of a supervisory official that there is reason to believe that notification of the existence of the subpoena may have an adverse result described in paragraph (2) of this subsection.

(2) An adverse result for the purposes of paragraph (1) of this subsection is—

(A) endangering the life or physical safety of an individual;

A-1

(B) flight from prosecution;

(C) destruction of or tampering with evidence;

(D) intimidation of potential witnesses; or

(E) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

(3) The governmental entity shall maintain a true copy of certification under paragraph (1)(B).

(4) Extensions of the delay of notification provided in section 2703 of up to ninety days each may be granted by the court upon application, or by certification by a governmental entity, but only in accordance with subsection (b) of this section.

(5) Upon expiration of the period of delay of notification under paragraph (1) or (4) of this subsection, the governmental entity shall serve upon, or deliver by registered or first-class mail to, the customer or subscriber a copy of the process or request together with notice that—

(A) states with reasonable specificity the nature of the law enforcement inquiry; and

(B) informs such customer or subscriber—

(i) that information maintained for such customer or subscriber by the service provider named in such process or request was supplied to or requested by that

A-2

governmental authority and the date on which the supplying or request took place;

(ii) that notification of such customer or subscriber was delayed;

(iii) what governmental entity or court made the certification or determination pursuant to which that delay was made; and

(iv) which provision of this chapter allowed such delay.

(6) As used in this subsection, the term "supervisory official" means the investigative agent in charge or assistant investigative agent in charge or an equivalent of an investigating agency's headquarters or regional office, or the chief prosecuting attorney or the first assistant prosecuting attorney or an equivalent of a prosecuting attorney's headquarters or regional office.

(b) Preclusion of Notice to Subject of Governmental Access.—A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section, may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an

A-3

order if it determines that there is reason to believe that notification of the

existence of the warrant, subpoena, or court order will result in—

(1) endangering the life or physical safety of an individual;

(2) flight from prosecution;

(3) destruction of or tampering with evidence;

(4) intimidation of potential witnesses; or

(5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2709

| United States Code Annotated |
| Title 18. Crimes and Criminal Procedure |
| Section 2709 – Counterintelligence access to telephone toll and transactional records |

(a) Duty to Provide.—A wire or electronic communication service provider shall comply with a request for subscriber information and toll billing records information, or electronic communication transactional records in its custody or possession made by the Director of the Federal Bureau of Investigation under subsection (b) of this section.

(b) Required Certification.—The Director of the Federal Bureau of Investigation, or his designee in a position not lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge in a Bureau field office designated by the Director, may, using a term that specifically identifies a person, entity, telephone number, or account as the basis for a request—

(1) request the name, address, length of service, and local and long distance toll billing records of a person or entity if the Director (or his designee) certifies in writing to the wire or electronic communication service provider to which the request is made that the name, address, length of service, and toll billing records sought are relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities, provided that such an investigation of a United States person is not conducted solely on the basis of

A-5

activities protected by the first amendment to the Constitution of the United

States; and

(2) request the name, address, and length of service of a person or entity if the

Director (or his designee) certifies in writing to the wire or electronic

communication service provider to which the request is made that the

information sought is relevant to an authorized investigation to protect against

international terrorism or clandestine intelligence activities, provided that such

an investigation of a United States person is not conducted solely upon the basis

of activities protected by the first amendment to the Constitution of the United

States.

(c) Prohibition of Certain Disclosure.—

(1) Prohibition.—

(A) In general.—If a certification is issued under subparagraph (B) and notice of

the right to judicial review under subsection (d) is provided, no wire or

electronic communication service provider that receives a request under

subsection (b), or officer, employee, or agent thereof, shall disclose to any

person that the Federal Bureau of Investigation has sought or obtained access to

information or records under this section.

(B) Certification.—The requirements of subparagraph (A) shall apply if the

Director of the Federal Bureau of Investigation, or a designee of the Director

whose rank shall be no lower than Deputy Assistant Director at Bureau headquarters or a Special Agent in Charge of a Bureau field office, certifies that the absence of a prohibition of disclosure under this subsection may result in—

(i) a danger to the national security of the United States;

(ii) interference with a criminal, counterterrorism, or counterintelligence investigation;

(iii) interference with diplomatic relations; or

(iv) danger to the life or physical safety of any person.

(2) Exception.—

(A) In general.—A wire or electronic communication service provider that receives a request under subsection (b), or officer, employee, or agent thereof, may disclose information otherwise subject to any applicable nondisclosure requirement to—

(i) those persons to whom disclosure is necessary in order to comply with the request;

(ii) an attorney in order to obtain legal advice or assistance regarding the request; or

(iii) other persons as permitted by the Director of the Federal Bureau of Investigation or the designee of the Director.

(B) Application.—A person to whom disclosure is made under subparagraph (A) shall be subject to the nondisclosure requirements applicable to a person to whom a request is issued under subsection (b) in the same manner as the person to whom the request is issued.

(C) Notice.—Any recipient that discloses to a person described in subparagraph (A) information otherwise subject to a nondisclosure requirement shall notify the person of the applicable nondisclosure requirement.

(D) Identification of disclosure recipients.—At the request of the Director of the Federal Bureau of Investigation or the designee of the Director, any person making or intending to make a disclosure under clause (i) or (iii) of subparagraph (A) shall identify to the Director or such designee the person to whom such disclosure will be made or to whom such disclosure was made prior to the request.

(d) Judicial Review.—(1) In general.—

A request under subsection (b) or a nondisclosure requirement imposed in connection with such request under subsection (c) shall be subject to judicial review under section 3511.

(2) Notice.—A request under subsection (b) shall include notice of the availability of judicial review described in paragraph (1).

(e) Dissemination by Bureau.—The Federal Bureau of Investigation may disseminate information and records obtained under this section only as provided in guidelines approved by the Attorney General for foreign intelligence collection and foreign counterintelligence investigations conducted by the Federal Bureau of Investigation, and, with respect to dissemination to an agency of the United States, only if such information is clearly relevant to the authorized responsibilities of such agency.

(f) Requirement That Certain Congressional Bodies Be Informed.— On a semiannual basis the Director of the Federal Bureau of Investigation shall fully inform the Permanent Select Committee on Intelligence of the House of Representatives and the Select Committee on Intelligence of the Senate, and the Committee on the Judiciary of the House of Representatives and the Committee on the Judiciary of the Senate, concerning all requests made under subsection (b) of this section.

(g) Libraries.—A library (as that term is defined in section 213(1) of the Library Services and Technology Act (20 U.S.C. 9122(1)), the services of which include access to the Internet, books, journals, magazines, newspapers, or other similar forms of communication in print or digitally by patrons for their use, review, examination, or circulation, is not a wire or electronic communication service

provider for purposes of this section, unless the library is providing the services

defined in section 2510(15) ("electronic communication service") of this title.

(Added Pub. L. 99–508, title II, § 201[(a)], Oct. 21, 1986, 100 Stat. 1867;

amended Pub. L. 103–142, Nov. 17, 1993, 107 Stat. 1491; Pub. L. 104–293, title

VI, § 601(a), Oct. 11, 1996, 110 Stat. 3469; Pub. L. 107–56, title V, § 505(a),

Oct. 26, 2001, 115 Stat. 365; Pub. L. 109–177, title I, § 116(a), Mar. 9, 2006,

120 Stat. 213; Pub. L. 109–178, §§ 4(b), 5, Mar. 9, 2006, 120 Stat. 280, 281;

Pub. L. 114–23, title V, §§ 501(a), 502(a), 503(a), June 2, 2015, 129 Stat. 282,

283, 289.)

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

.

   /s/ David Greene
David Greene

ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109-7701
Tel: (415) 436-9333
Fax: (415) 436-9993
david@eff.org

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS PURSUANT TO FED. R. APP. P. 32(G)(1)**

I hereby certify as follows:

1.    Pursuant to Fed. R. App. P. 32(g), this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B). The brief is printed in proportionally spaced 14-point type, and the brief has 2587 words according to the word count of the word-processing system used to prepare the brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

2.    The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and with the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 365 in 14-point Times New Roman font.

September 8, 2023                */s/ David Greene*
                                 David Greene

                                 *Attorneys for Amicus Curiae*
                                 *Electronic Frontier Foundation*