FILED UNDER SEAL

No. 23-5044

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE SEALED CASE

---

On Appeal from the United States District Court
for the District of Columbia, No. 1:23-SC-31-BAH
Before the Honorable Beryl A. Howell

---

## PETITION FOR REHEARING EN BANC

---

GEORGE P. VARGHESE
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

SETH P. WAXMAN
ARI HOLTZBLATT
BENJAMIN POWELL
WHITNEY RUSSELL
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

*Counsel for Appellant X Corp.,
successor in interest to Appellant
Twitter, Inc.*

September 1, 2023

**FILED UNDER SEAL**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION AND RULE 35(b)(1) STATEMENT ........................................ 1

BACKGROUND ...................................................................................... 3

REASONS FOR GRANTING THE PETITION ..................................................... 6

I.    THE PANEL ERRED IN CATEGORICALLY REJECTING LIMITED DISCLOSURE TO A TRUSTED REPRESENTATIVE AS AN UNWORKABLE ALTERNATIVE .................................................................................. 7

II.   THE PANEL ERRED IN HOLDING THAT THE PROCEDURAL SAFEGUARDS THAT APPLY TO ALL PRIOR RESTRAINTS DO NOT APPLY TO NON-DISCLOSURE ORDERS .................................................................... 13

CONCLUSION ...................................................................................... 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

FILED UNDER SEAL

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Alexander v. United States*, 509 U.S. 544 (1993) .......................................6

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ......................................................9

*Blount v. Rizzi*, 400 U.S. 410 (1971) ........................................................14

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) ............................................................................................................7

*Butterworth v. Smith*, 494 U.S. 624 (1990) .......................................15, 16

*Freedman v. Maryland*, 380 U.S. 51 (1965)......................2, 6, 13, 14, 15

*In re Application of Subpoena 2017R00776*, 947 F.3d 148 (3d Cir. 2020) .............................................................................................................9

*In re Grand Jury Proceedings*, 417 F.3d 18 (1st Cir. 2005) ....................8

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .................................18

*In re Sealed Search Warrant & Application*, 11 F.4th 1235 (11th Cir. 2021) ..........................................................................................................17

*In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) ..........................................................................................................17

*In re Search Warrant (Sealed)*, 810 F.2d 67 (3d Cir. 1987)....................18

*In re Subpoena To Testify Before Grand Jury Directed to Custodian of Records*, 864 F.2d 1559 (11th Cir. 1989)....................................................8

*John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008)............14, 15, 16

*National Socialist Party of America v. Village of Skokie*, 432 U.S. 43 (1977)..........................................................................................................14

*Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) ....................1

*Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) ..................12, 18

FILED UNDER SEAL

*Nixon v. Sirica*, 487 F.2d 700 (D.C. Cir. 1973) ......................................................18

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971)............................6

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ........................................................6

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
   487 U.S. 781 (1988)......................................................................................14

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)..............................................15

*Twitter, Inc. v. Garland*, 61 F.4th 686 (9th Cir. 2023) ..........................................17

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008)...........................................7

*United States v. Aguilar*, 515 U.S. 593 (1995) ......................................................15

*United States v. Nixon*, 418 U.S. 683 (1974)..........................................................12

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803
   (2000)..............................................................................................................7, 8

## DOCKETED CASES

*Microsoft Corp.'s Appeal of Non-Disclosure Orders*, No. 1:20-mc-
   00349 (S.D.N.Y.)............................................................................................11

*In re Application of USA for 2703(d) Order for Six Email Accounts
   Serviced by Google LLC*, No. 20-sc-3361 (D.D.C.)...................................4, 8

## STATUTES, REGULATIONS, AND RULES

18 U.S.C. § 2705 ............................................................................3, 6, 8, 13, 14

44 U.S.C. § 2206 ........................................................................................12

28 C.F.R. § 50.10 ......................................................................................10

36 C.F.R. § 1270.44 ..............................................................................4, 11, 12

D.C. Cir. R. 35 ........................................................................................9, 16

FILED UNDER SEAL

# OTHER AUTHORITIES

Department of Justice, *Seeking Enterprise Customer Data Held by Cloud Service Providers* (Dec. 2017), https://www.justice.gov/criminal-ccips/file/1017511/download ..................10

Charlie Savage & Katie Benner, *U.S. Waged Secret Legal Battle to Obtain Emails of 4 Times Reporters*, N.Y. Times (June 6, 2021), https://www.nytimes.com/2021/06/04/us/politics/times-reporter-emails-gag-order-trump-google.html .............................................10

Charlie Savage, *CNN Lawyers Gagged in Fight With Justice Dept. Over Reporter's Email Data*, N.Y. Times (June 9, 2021), https://www.nytimes.com/2021/06/09/us/politics/cnn-reporter-emails-justice-department.html ....................................................................11

Charlie Savage, *Garland Formally Bars Justice Dept. From Seizing Reporters' Records*, N.Y. Times (Oct. 26, 2022), https://www.nytimes.com/2022/10/26/us/politics/justice-department-reporters.html#:~:text=Bars%20Justice%20Dept.-,From%20Seizing%20Reporters%27%20Records,The%20Washington%20Post%20and%20CNN..............................................................10

Barbara Sprunt, *Former DOJ Officials Detail Threatening To Resign En Masse In Meeting With Trump*, NPR (June 23, 2022), https://www.npr.org/2022/06/23/1107217243/former-doj-officials-detail-threatening-resign-en-masse-trump-meeting.........................9

FILED UNDER SEAL

## INTRODUCTION AND RULE 35(b)(1) STATEMENT

The non-disclosure order challenged in this case barred Twitter from following its standard practice of notifying its users—here, former President Trump—that the government had obtained a warrant compelling Twitter to disclose account information.  As a "prior restraint[] on speech and publication," the order was "the most serious and the least tolerable infringement on First Amendment Rights." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559 (1976).  It could be upheld only if the government proved the order served a compelling government interest that no less restrictive alternative could achieve.  And the government had to make that showing before Twitter's First Amendment rights were irreparably injured.  Here, that required adjudicating Twitter's challenge to the order before compelling production under the warrant.  In upholding the order, the panel made two errors warranting en banc consideration.

First, the panel erred by adopting the novel rule that limited disclosure to a trusted representative is so "unpalatable" that the government need never consider it as a potential less restrictive alternative to blanket nondisclosure.  The panel applied that rule to dismiss out of hand Twitter's proposal of disclosing the warrant to a representative former President Trump had designated for all issues regarding his presidential records, who would have been barred by court order from telling Mr. Trump about the warrant.  Op.24-25.  Directly conflicting with Supreme Court

1

FILED UNDER SEAL

precedent, the panel relieved the government of its burden to prove the proffered alternative would not achieve its compelling interests.  The question is exceptionally important:  Courts' authorization of limited disclosure to trusted representatives allows online providers to protect a wide range of important privileges of users, including those protecting official communications, journalists' sources, and attorney-client relationships.

Second, the panel erroneously held that the procedural safeguards in *Freedman v. Maryland*, 380 U.S. 51 (1965), which are constitutionally required for all prior restraints, are never required for non-disclosure orders under the Stored Communications Act.  Op.28.  That holding conflicts with a Second Circuit decision requiring *Freedman* safeguards in an analogous context.  In this case, *Freedman*'s requirement that courts "preserv[e] … the status quo" until the government's claimed justification for a prior restraint is tested in an "adversary proceeding" barred the district court from compelling production before adjudicating Twitter's challenge to the order.  380 U.S. at 58-59.  The panel's contrary decision prevents online providers from exercising First Amendment rights and enabling users to protect their privileges by providing advance notice of government legal process.

FILED UNDER SEAL

# BACKGROUND

1.      On January 19, 2023, the government served a search warrant on Twitter for data associated with the user account @realDonaldTrump, including private communications sent and received during the user's presidency.  JA295, 298-300.  The warrant was accompanied by an 18 U.S.C. § 2705(b) non-disclosure order prohibiting Twitter from notifying anyone other than its counsel about the warrant.  JA1, 295.  The order rested on the district court's conclusion, based on the government's *ex parte* application, that there were "reasonable grounds to believe" disclosure would result in "destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation," and would give the former President "opportunity to … flee from prosecution."  JA1-2.

2.      The parties conferred multiple times but reached an impasse.  On February 2, they filed cross-motions:  the government for an order to show cause why Twitter should not be held in contempt for failing to produce under the warrant, JA22, and Twitter to vacate or modify the non-disclosure order because it violated Twitter's First Amendment rights, JA3.[1]

Twitter argued the order was a content-based prior restraint on speech that was invalid unless the government could satisfy strict scrutiny.  JA8.  Further, the

---

[1] Twitter challenges facially invalid non-disclosure orders, especially when they threaten users' privileges, regardless of the legal process to which they are attached.  JA217-222.

FILED UNDER SEAL

government could not demonstrate a compelling interest because disclosing the warrant would neither provide materially new information about an already highly public investigation nor cause the former President to flee.  JA10-14.

Twitter also argued the order was not narrowly tailored.  Twitter proposed notifying "a representative of the former President," such as one of the seven individuals designated as "representatives in all respects that pertain to the records of [Trump's] Presidency" pursuant to the Presidential Records Act.  JA16-17.  That Act's regulations specifically contemplate notifying these representatives before the National Archives discloses presidential records for "any … criminal investigation."  36 C.F.R. § 1270.44(a)(1), (c).

Twitter further proposed extending the order to bind that representative, similar to what another judge had recently done.  JA187, 316 (citing *In re Application of USA for 2703(d) Order for Six Email Accounts Serviced by Google LLC*, No. 20-sc-3361 (D.D.C.) ("*Six Email Accounts*")).  The representative could then attempt to assert any privilege on the former President's behalf without notifying him.  JA316.

Twitter separately requested to stay production under the warrant until its motion had been resolved to "prevent irreparable injury" to its First Amendment interest in notifying its user.  JA5.  Its proposed briefing schedule would have allowed the court to resolve *both* motions by February 9.  JA31.  The court instead

FILED UNDER SEAL

set the government's motion to be fully briefed and argued on February 7 and

Twitter's constitutional challenge to be fully briefed on February 23.  JA30-31.

The court granted the show-cause motion on February 7.  JA367.

4.    After Twitter complied with the warrant, JA369, the court denied

Twitter's motion to modify or vacate the non-disclosure order.  It agreed the order

was a content-based prior restraint and assumed strict scrutiny applied.  JA370-

372.  But the court concluded the order was narrowly tailored and rejected as

"preposterous" the proposed less restrictive alternative of notifying one of the

former President's statutorily designated representatives.  The court did not address

Twitter's proposal of extending the order to those representatives.  JA383-384.

5.    Twitter appealed, arguing the order should be vacated because the

government failed to show it was narrowly tailored and because the district court

should have delayed compliance with the warrant pending resolution of Twitter's

constitutional challenge.  Twitter Br. 1-3.

6.    A panel of this Court (Judges Pillard, Childs, and Pan) affirmed.  The

panel agreed the order was a "content-based prior restriction on speech" that was

"presumptively unconstitutional."  Op.19-20.  Relying on the government's *ex

parte* submissions, the panel found the government had a compelling interest in

"preserving the integrity and maintaining the secrecy of its ongoing criminal

investigation."  Op.21, 23-24.  It concluded the order was narrowly tailored and

found "unworkable" and "unpalatable" Twitter's proposed less restrictive alternative of disclosing the warrant to a designated representative.  Op.24-25.  The panel nowhere addressed Twitter's proposal to extend the non-disclosure order to a designated representative.

The panel next concluded the district court did not violate Twitter's First Amendment rights when it failed to address Twitter's constitutional claims before compelling production.  In so doing, the panel created a new rule:  the procedural safeguards established in *Freedman v. Maryland*, 380 U.S. 51 (1965)—designed to protect the First Amendment rights of speakers subjected to prior restraints—are "inapplicable" to § 2705(b) non-disclosure orders.  Op.28.

## REASONS FOR GRANTING THE PETITION

Non-disclosure orders, as "court orders" that "forbid" speech "in advance," are "classic examples of prior restraints."  *Alexander v. United States*, 509 U.S. 544, 550 (1993).  They are also content-based restrictions forbidding "particular speech because of the topic discussed."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  As the panel acknowledged, both types of restraints "are presumptively unconstitutional."  Op.20; Op.19.  The order thus faced "a 'heavy presumption' against its constitutional validity."  *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).  The panel erred in nonetheless upholding the order for two reasons warranting en banc review.

6

## I.    THE PANEL ERRED IN CATEGORICALLY REJECTING LIMITED DISCLOSURE TO A TRUSTED REPRESENTATIVE AS AN UNWORKABLE ALTERNATIVE

1.    As a content-based prior restraint, the order could be sustained only if the government "prove[d]" that any "plausible, less restrictive alternative" would be "ineffective to achieve its goals." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000). The panel relieved the government of that burden by holding that Twitter's proposed alternative—limited disclosure to a trusted representative—is categorically unworkable, not just in this case but in every case. *See* Op.24-25. That was error and, if allowed to stand, will curtail service providers' ability to ensure their users can assert important privileges.

Rather than consider whether Twitter's proposal would achieve the government's goals in this case, the panel held that *all* "proposals similar to Twitter's idea of notifying the former President's lawyers or representatives about the warrant, while expecting them to maintain the warrant's secrecy" are "unpalatable" and "'unworkable.'" Op.24-25. The panel was wrong to suggest that courts cannot assess individuals' trustworthiness; courts often do that in analogous contexts. For example, courts reviewing protective orders for trade secrets "examine factually all the risks and safeguards" of disclosing confidential information to counsel, including the counsel's role at the competitor company. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *see also, e.g.*, *United States v. Abu Ali*, 528 F.3d 210, 254 (4th Cir. 2008) (approving

7

order granting some defense counsel, but not other counsel or defendant, access to classified materials).

And the panel's conclusion that the proposal was a "nonstarter[] because [it] would not have maintained … confidentiality," Op.24, is overbroad and circular. The government does not have an interest in secrecy divorced from its interest in protecting investigations.  Any concern about disclosure by the representative to Mr. Trump could have been resolved by a mechanism the panel ignored: extending the non-disclosure order to the representative, as courts have done for § 2705(b) orders and in analogous contexts.  *E.g.*, Order, *Six Email Accounts*, No. 20-sc-3361 (D.D.C. Mar. 3, 2021), ECF No. 4, at 1; *In re Grand Jury Proc.*, 417 F.3d 18, 26 (1st Cir. 2005); *In re Subpoena To Testify Before Grand Jury Directed to Custodian of Records*, 864 F.2d 1559, 1563-1564 (11th Cir. 1989).

Most fundamentally, the panel's categorical rule erroneously relieves the government of its burden to prove the narrower alternative is "unworkable."  When a party offers a less restrictive alternative to blanket suppression of speech, "the risk of nonpersuasion … must rest with the government, not with the citizen." *Playboy*, 529 U.S. at 818.  The government must present "hard evidence," not "anecdote and supposition."  *Id.* at 819, 822.  Here, the government raised objections in a single sentence that is obscured by redaction, cites nothing in the record, and is vague about whether the objections cover all the representatives.

8

FILED UNDER SEAL

U.S. Br. 28.  It is difficult to understand what persuasive objection the government could have to some of the statutorily designated representatives, such as Steven Engel, a former head of the Office of Legal Counsel who publicly testified about his resistance to the former President's conduct.  *See* JA135.[2]  Otherwise, the government only complained that "Twitter does not explain why this approach would be workable."  U.S. Br. 28.  That impermissibly shifts the burden.  *See Ashcroft v. ACLU*, 542 U.S. 656, 669 (2004) (plaintiffs do not "bear a burden to introduce, or offer to introduce, evidence that their proposed alternatives are more effective").

     2.     The panel's conclusion that courts need not "take on the unpalatable job of 'assess[ing] the trustworthiness of a'" proposed representative, Op.24-25, not only gets the law wrong—it also shuts the door on an important method for balancing law-enforcement needs with safeguarding important privileges.  *See* Cir. R. 35(a)(2).  While the panel's holding resembles the holding of the only other court of appeal to address the issue raised here, *see In re Application of Subpoena 2018R00776*, 947 F.3d 148, 159 (3d Cir. 2020), that case did not consider a proposal to extend the non-disclosure order to the representative.  And the panel's

---

[2] Sprunt, *Former DOJ Officials Detail Threatening To Resign En Masse In Meeting With Trump*, NPR (June 23, 2022), https://www.npr.org/2022/06/23 /1107217243/former-doj-officials-detail-threatening-resign-en-masse-trump-meeting.

FILED UNDER SEAL

conclusion diverges from the approach other courts have taken in similar cases.

For instance, in *Six Email Accounts*, the court's decision permitting Google to alert

in-house counsel of a warrant "to obtain the email logs of four New York Times

reporters in a hunt for their sources" allowed the Times to successfully defend the

reporters' privilege.[3]  The case led the Justice Department to change its policies to

ban use of legal process to seize reporters' communications records to uncover

confidential sources in leak investigations.[4]

     Newspapers are not outliers.  The Justice Department has recognized that all

business enterprises should ordinarily be given the "opportunity to interpose

privilege and other objections" when law enforcement seeks enterprise information

held by third-party service providers, and encourages prosecutors to consider

"whether any protective order can be narrowed to permit the provider to notify an

appropriate official at the enterprise."  *See* Department of Justice, *Seeking

Enterprise Customer Data Held by Cloud Service Providers* 2-4 (Dec. 2017).  In a

case involving Microsoft, the government agreed "to notify an individual at

---

[3] Savage & Benner, *U.S. Waged Secret Legal Battle to Obtain Emails of 4 Times Reporters*, N.Y. Times (June 6, 2021), https://www.nytimes.com/2021/06/04/us /politics/times-reporter-emails-gag-order-trump-google.html.

[4] 28 C.F.R. § 50.10(a)(2); *see also* Savage, *Garland Formally Bars Justice Dept. From Seizing Reporters' Records*, N.Y. Times (Oct. 26, 2022), https://www.nytimes.com/2022/10/26/us/politics/justice-department-reporters.html #:~:text=Bars%20Justice%20Dept.-,From%20Seizing%20Reporters%27 %20Records,The%20Washington%20Post%20and%20CNN.

[Microsoft's] Enterprise Customer about [data production] orders, including by providing an individual at the Enterprise Customer with the account targeted." Order, *Microsoft Corp.'s Appeal of Non-Disclosure Orders*, No. 1:20-mc-00349, ECF No. 1 (S.D.N.Y. Oct. 16, 2020).

This mechanism is increasingly important because information is routinely stored with third-party cloud services.  Warrants seeking on-premises (i.e., non-cloud) data go to individuals at the target enterprise who can challenge the warrant on the target's behalf.  For example, CNN's general counsel received notice of a secret warrant seeking information about a CNN reporter only because the reporter's "'work email resided on [CNN's] servers.'"[5]  Similarly here, the vast majority of former President Trump's presidential records were accessible only through the Archivist, who would have required notice to a representative.  36 C.F.R. § 1270.44(a)(1), (c).  The government was able to avoid this notice requirement because the records happen to be on Twitter's servers.

Under the panel's decision, disclosure to a trusted representative would depend on the grace of prosecutors, rather than on evaluation by a court of whether the government met its burden, with hard evidence, to show limited disclosure

---

[5] Savage, *CNN Lawyers Gagged in Fight With Justice Dept. Over Reporter's Email Data*, N.Y. Times (June 9, 2021), https://www.nytimes.com/2021/06 /09/us/politics/cnn-reporter-emails-justice-department.html.

11

would be unworkable.  That threatens to weaken protection for many important privileges, including government officials, journalist-source, attorney-client, and doctor-patient.

The question is of particular importance—and the First Amendment interests are particularly acute—in this context.  There are serious questions about potential presidential privilege over private messages the former President sent and received during his presidency.  The "expectation of a President to the confidentiality of his conversations and correspondence" protects "the public interest."  *United States v. Nixon*, 418 U.S. 683, 708 (1974).  Congress anticipated the danger associated with disclosure of presidential communications in the Presidential Records Act, requiring that former Presidents ordinarily be notified when access is sought to their potentially privileged records.  44 U.S.C. § 2206.  The implementing procedures require that "[t]he Archivist promptly notif[y] the President (or their representative) … of a request for records," including for any "criminal investigation or proceeding."  36 C.F.R. § 1270.44(a)(1), (c).  As the Supreme Court emphasized in *Nixon v. Administrator of General Services*, the point of such "meaningful notice" is to "protect[]" a former president's "opportunity to assert … any legally or constitutionally based right or privilege."  433 U.S. 425, 444 & n.7 (1977).  The panel disregarded this special consideration, entirely relieving the government of its burden to demonstrate that a less restrictive alternative would

FILED UNDER SEAL

not achieve its goals by categorically holding that limited notice to a representative is an unworkable alternative.

## II. THE PANEL ERRED IN HOLDING THAT THE PROCEDURAL SAFEGUARDS THAT APPLY TO ALL PRIOR RESTRAINTS DO NOT APPLY TO NON-DISCLOSURE ORDERS

1.      Under *Freedman v. Maryland*, "[a]ny restraint imposed in advance of a final judicial determination on the merits" of the government's proffered justification must be "limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution." 380 U.S. 51, 59 (1965). *Freedman*'s timing requirement, together with its other protections, guards against the "danger of unduly suppressing protected expression" and the risk that "the censor's determination may in practice be final" if "it is made unduly onerous, by delay or otherwise, to seek judicial review." *Id.* at 54, 58. Here, this safeguard required staying enforcement of the warrant pending an adversarial adjudication of Twitter's First Amendment challenge (here, as Twitter proposed, a delay of only two days). Twitter Br. 34-42. The panel erred by instead holding that "*Freedman* is inapplicable" to 18 U.S.C. § 2705(b) non-disclosure orders. Op.28.

*Freedman* is not limited to "noncriminal" schemes. *See* Op.25-29. *Freedman* broadly held that "*any* system of prior restraints" "avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system." *Freedman*, 380 U.S. at 57-58 (emphasis added)

13

(cleaned up).  The Supreme Court has extended those protections to different types of prior restraints:  e.g., professional licensing statutes, *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 802 (1988); injunctions preventing political parades, *National Socialist Party of America v. Village of Skokie*, 432 U.S. 43, 44 (1977); and statutes permitting the executive to block mail related to the sale of obscene materials, *Blount v. Rizzi*, 400 U.S. 410, 421-422 (1971).

The order's connection to a criminal investigation does not, as the panel suggested (Op.26), render *Freedman* inapplicable.  "*Freedman*[] … cannot be disregarded simply because [the prior restraint] does not impose a traditional licensing scheme."  *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 880 (2d Cir. 2008) (applying *Freedman* to an order preventing disclosure of a national security letter).  And contrary to the panel, the district court's consideration and grant of the government's *ex parte* application pursuant to § 2705(b) after consideration of the "statutory requirements" is not "[effective] judicial review" that renders *Freedman*'s "protective measures" unnecessary.  *See* Op.27-28.  This case exemplifies why:  Twitter did not receive "adversary" judicial review of the prior restraint or *any* review of its First Amendment interests until *after* the district court compelled production.  *Freedman*, 580 U.S. at 58.  That not only changed the "status quo" but also made it impossible for Twitter to achieve the purpose of its

14

desired speech, irreversibly infringing Twitter's First Amendment rights. *See id.* at 59. That this was a criminal proceeding may bear on the government's ultimate justification for the restraint, but it does not determine whether *Freedman*'s protections are necessary to guard against the dangers of the restraint—as they were here because the order restrained time-sensitive speech about potential infringement of presidential privilege.

The panel was wrong to analogize this case to those addressing "confidentiality requirements with respect to information obtained in connection with court processes." Op.28. This case is unlike *Seattle Times Co. v. Rhinehart*, where a newspaper was prohibited from publishing information it had obtained through discovery motions. 467 U.S. 20, 25 (1984). The newspaper "voluntarily assume[d] a duty of confidentiality" by leveraging the government's civil discovery tools to obtain the information. *United States v. Aguilar*, 515 U.S. 593, 606 (1995). There thus was no concern that the newspaper was unwillingly silenced—unlike Twitter here. As the Second Circuit explained when rejecting this precise argument, Twitter's "'participation' in the investigation is entirely the result of the Government's action." *Mukasey*, 549 F.3d at 877, 880. *Butterworth v. Smith*, 494 U.S. 624, 624-625 (1990), is even further afield. It did not need to address *Freedman* protections because it found a non-disclosure law preventing

15

grand jury witnesses from disclosing their grand jury testimony facially

unconstitutional.  *Id.* at 635-636.[6]

2.    En banc review is also warranted because the panel's decision

"conflicts with the authoritative decisions of other United States Courts of

Appeals."  Cir. R. 35(b)(1)(B).   The Second Circuit, reviewing analogous non-

disclosure requirements for national security letters, held that the requirements

must comply with *Freedman* and adapted them to the context.  *See Mukasey*, 549

F.3d at 876-878 (2d Cir. 2008) (Newman, J., joined by Sotomayor, J., Calabresi,

J.); *see also* Op.20, n.5 (treating *Mukasey* as relevant to whether strict scrutiny

applies).  For example, it imposed "time limits on the nondisclosure requirement

pending judicial review."  *Mukasey*, 549 F.3d at 883.  Unlike the panel here, the

Second Circuit found *Rhinehart* inapposite, explaining that it "fail[ed] to

appreciate the analogy between the individual[] … seeking disclosure in

[*Rhinehart*]" and the plaintiff challenging a non-disclosure requirement, "who had

no interaction with the Government until the Government imposed its

nondisclosure requirement upon it."  *Id.* at 877.  Like the Ninth Circuit in *Twitter v.*

---

[6] Contrary to the panel's suggestion that *Butterworth* "recognized" that a grand
jury witness's right to "disclose his own testimony … did not extend to
information that the witness gleaned from participating in the investigation,"
Op.28, such as the testimony of another witness, that question was not before the
Court, *see* 494 U.S. at 629 n.2.

16

*Garland*, which held that *Freedman*'s "specific procedural framework" is not required for national-security related non-disclosure requirements, 61 F.4th 686, 702 (9th Cir. 2023), the panel here similarly refused to apply *Freedman*'s safeguards, deepening a circuit split on whether those protections are required for non-disclosure orders.

3.    The panel's conclusion that *Freedman* is inapplicable to non-disclosure orders as a matter of law will do great damage if left uncorrected.  Like the panel's refusal to entertain less-restrictive alternatives, it will curtail service providers' ability to exercise their own First Amendment rights, including to ensure their users can assert important privileges.  If courts are never required to resolve challenges to non-disclosure orders before ordering compliance with a warrant, then service providers cannot notify users in time to allow them to object.

Other courts have rightly prohibited review of documents seized pursuant to a warrant pending adjudication of privilege claims.  The Eleventh Circuit has required interlocutory review of documents seized from a legal office, recognizing that "[o]nce the government improperly reviews [attorney-client] privileged materials, the damage … is 'definitive and complete.'"  *In re Sealed Search Warrant & Application*, 11 F.4th 1235, 1247 (11th Cir. 2021).  The Fourth Circuit has preliminarily enjoined review of attorney-client materials seized from a law firm.  *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 183 (4th Cir.

2019).  And in *In re Search Warrant (Sealed)*, 810 F.2d 67 (3d Cir. 1987), the Third Circuit recognized a doctor's right to seek an injunction barring review of patients' medical records.

As with other privileges, executive privilege claims should be resolved before confidentiality of the potentially privileged documents is breached.  In *Administrator of General Services*, for instance, the Supreme Court recognized that disclosing confidential presidential communications to the Archivist even for "screening" was an "intrusion into executive confidentiality."  433 U.S. at 449-455; *see also In re Sealed Case*, 121 F.3d 729, 758-759, 744 (D.C. Cir. 1997) (explaining the President may "invoke the privilege when asked to produce documents").  And this Court in *Nixon v. Sirica* rejected President Nixon's claim of absolute discretion over disclosure of presidential communications but nonetheless required that, if the district court ordered production of presidential communications to the grand jury, the court also "provide a reasonable stay to allow … an opportunity to appeal"—ensuring a full judicial airing of privilege questions before potentially privileged documents were handed over.  487 F.2d 700, 721 (D.C. Cir. 1973).  The First Amendment required the same here.

## CONCLUSION

This Court should grant rehearing.

FILED UNDER SEAL

Dated:  September 1, 2023                 Respectfully submitted,


                                          /s/ *Seth P. Waxman*
                                          SETH P. WAXMAN
                                          ARI HOLTZBLATT
                                          BENJAMIN A. POWELL
                                          WHITNEY RUSSELL
                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                          2100 Pennsylvania Avenue N.W.
                                          Washington, D.C. 20006
                                          (202) 663-6000

                                          GEORGE P. VARGHESE
                                          WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                          60 State Street
                                          Boston, MA 02109
                                          (617) 526-6000

                                          *Attorneys for X Corp., successor in interest*
                                          *to Appellant Twitter, Inc.*

FILED UNDER SEAL

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A).

1.      Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 3,900 words.

2.      The brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ *Seth P. Waxman*

SETH P. WAXMAN

September 1, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of September, 2023, I caused the foregoing to be served by email upon:

James Pearce, Assistant Special Counsel

/s/ *Seth P. Waxman*

SETH P. WAXMAN

# ADDENDUM

## TABLE OF CONTENTS

Page

PANEL OPINION ........................................................................Add. 1

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES ................................................................................Add. 35

CORPORATE DISCLOSURE STATEMENT ............................Add. 37

**FILED UNDER SEAL**

<u>UNDER SEAL — EX PARTE INFORMATION REDACTED</u>

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 19, 2023              Decided July 18, 2023

No. 23-5044

IN RE: SEALED CASE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-sc-00031)

———

*Ari Holtzblatt* argued the cause for appellant. With him on
the briefs was *Whitney Russell*.

*James I. Pearce*, Assistant Special Counsel, U.S.
Department of Justice, argued the cause for appellee. With him
on the brief were *J.P. Cooney*, Deputy Special Counsel,
*Raymond N. Hulser*, Counselor to the Special Counsel, and
*Cecil W. VanDevender* and *John M. Pellettieri*, Assistant
Special Counsels.

Before: PILLARD, CHILDS and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

**Add. 1**

**FILED UNDER SEAL**

2

UNDER SEAL — EX PARTE INFORMATION REDACTED

PAN, *Circuit Judge:*[*] The district court issued a search warrant in a criminal case, directing appellant Twitter, Inc. ("Twitter") to produce information to the government related to the Twitter account "@realDonaldTrump."[1] The search warrant was served along with a nondisclosure order that prohibited Twitter from notifying anyone about the existence or contents of the warrant. Twitter initially delayed production of the materials required by the search warrant while it unsuccessfully litigated objections to the nondisclosure order. Although Twitter ultimately complied with the warrant, the company did not fully produce the requested information until three days after a court-ordered deadline. The district court thus held Twitter in contempt and imposed a $350,000 sanction for its delay.

In this appeal, Twitter argues that the nondisclosure order violated the First Amendment and the Stored Communications Act; that the district court should have stayed its enforcement of the search warrant until after Twitter's objections to the nondisclosure order were resolved; and that the district court abused its discretion by holding Twitter in contempt and imposing the sanction. We affirm the district court in all respects.

---

[*]   **NOTE**: Portions of this opinion contain **Ex Parte Information**, which has been redacted.
[1]   During the pendency of this appeal, Twitter, Inc. merged into a privately held company named X Corp. Opening Br. iii. For ease of reference, we refer to appellant as "Twitter" throughout this opinion.

**Add. 2**

3

<u>UNDER SEAL — EX PARTE INFORMATION REDACTED</u>

## I.

### A.

The Stored Communications Act (the "Act"), 18 U.S.C. § 2701 *et seq.*, establishes procedures for law enforcement officers to obtain evidence from electronic service providers in criminal cases. The Act permits the government to obtain a search warrant or court order that directs the service provider to turn over "the contents of [a subscriber's] wire or electronic communication" or "a record or other information pertaining to a subscriber." 18 U.S.C. § 2703(b)(1), (c)(1). A service provider that receives an order to produce subscriber data can move to quash or modify the order by showing that the information requested is "unusually voluminous" or that compliance "would cause an undue burden." *Id.* § 2703(d). Service providers that give information to the government under the procedures prescribed by the Act are immunized from liability. *Id.* § 2703(e).

The Act allows the government to seek a nondisclosure order, which directs service providers "not to notify any other person" of a warrant or order's existence "for such period as the court deems appropriate." *Id.* § 2705(b). A court "shall enter" such a nondisclosure order if "there is reason to believe that notification of the existence of the warrant" or order will result in one of five enumerated harms: "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id.*

4

### B.

Since November 18, 2022, Special Counsel Jack Smith has overseen an ongoing criminal investigation into potential interference with the peaceful transfer of power following the 2020 presidential election. The investigation encompasses events related to the riot that took place on January 6, 2021, at the United States Capitol. *See In re N.Y. Times Co.*, No. 1:22-mc-100 (BAH), 2023 WL 2185826, at *4 (D.D.C. Feb. 23, 2023); U.S. DEP'T OF JUSTICE, APPOINTMENT OF A SPECIAL COUNSEL (Nov. 18, 2022), https://perma.cc/34GU-BESD. "Despite the intense media attention" surrounding that investigation, it "proceeds behind doors that remain closed to the public." *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, No. 1:23-mc-35 (JEB), 2023 WL 3931384, at *1 (D.D.C. June 9, 2023). The instant case arises from the Special Counsel's investigation.

On January 17, 2023, the government applied for, and obtained, a search warrant that directed Twitter to produce data and records related to the "@realDonaldTrump" Twitter account. At the same time, the government applied for, and obtained, a nondisclosure order, which prohibited Twitter from disclosing the existence or contents of the search warrant to any person. Based on *ex parte* affidavits, the district court found probable cause to search the Twitter account for evidence of criminal offenses. Moreover, the district court found that there were "reasonable grounds to believe" that disclosing the warrant to former President Trump "would seriously jeopardize the ongoing investigation" by giving him "an opportunity to destroy evidence, change patterns of behavior,

FILED UNDER SEAL

5

UNDER SEAL — EX PARTE INFORMATION REDACTED

[or] notify confederates." J.A. 1; *see* 18 U.S.C. § 2705(b).[2] The warrant required Twitter to turn over all requested information by January 27, 2023. The nondisclosure order was to remain in effect for 180 days after its issuance.

The government faced difficulties when it first attempted to serve Twitter with the warrant and nondisclosure order. On January 17, 2023, the government tried to submit the papers through Twitter's website for legal requests, only to find out that the website was inoperative. Two days later, on January 19, 2023, the government successfully served Twitter through that website. On January 25, 2023, however, when the government contacted Twitter's counsel to check on the status of Twitter's compliance, Twitter's counsel stated that she "had not heard anything about [the] [w]arrant." J.A. 50. She informed the government that an on-time production "would be a very tight turnaround," but she confirmed that the account's available data was preserved. *Id.* at 50–51.

On February 1, 2023 — four days after the compliance deadline — Twitter objected to producing any of the account information. Although the company did not question the validity of the search warrant, it asserted that the nondisclosure order was facially invalid under the First Amendment. Twitter informed the government that it would not comply with the warrant until the district court assessed the legality of the nondisclosure order.

---

[2]    The district court also found reason to believe that the former President would "flee from prosecution." J.A. 1. The government later acknowledged, however, that it had "errantly included flight from prosecution as a predicate" in its application. J.A. 281 n.1. The district court did not rely on risk of flight in its ultimate analysis. *See* J.A. 195.

**FILED UNDER SEAL**

6

On February 2, 2023, Twitter filed a motion to vacate or modify the nondisclosure order; meanwhile, the government moved for an order to show cause as to why Twitter should not be held in contempt of court for its noncompliance with the warrant.

In its motion challenging the nondisclosure order, Twitter argued that the order violated the company's First Amendment right to communicate with its subscriber, former President Trump. The company asserted that compliance with the warrant before resolution of the motion to vacate or modify the nondisclosure order would preclude the former President from asserting executive privilege to shield communications made using his Twitter account. Although Twitter acknowledged that it "may not have standing to raise [executive privilege] issues," and took "no position on the applicability of executive privilege," the company asserted that prompt compliance with the warrant would nevertheless "impede its ability to effect its First Amendment rights to provide meaningful notice to its user." J.A. 15, 17–18. Citing *Freedman v. Maryland*, 380 U.S. 51 (1965), and *Thomas v. Chicago Park District*, 534 U.S. 316 (2002), Twitter argued that the district court was obligated to maintain the status quo and "stay any production obligation" while the parties litigated the constitutionality of the nondisclosure order. J.A. 18.

The government raised two counterarguments in its motion for an order to show cause. First, it asserted that the warrant and nondisclosure order "are different court orders, imposing different obligations." J.A. 24. Thus, it reasoned, Twitter's compliance with the warrant should not depend on how the court resolved any issues related to the nondisclosure order. Second, the government insisted that neither the warrant nor the Act "provide for intervention by a third party [such as

7

Twitter] before compliance with" a warrant. *Id.* Accordingly, Twitter's obligation to promptly produce account information in response to the warrant was clear, and the government requested a hearing for Twitter to show cause why it should not be held in contempt. *Id.*

The district court set distinct schedules for resolving each of the two outstanding motions. The district court set a hearing on February 7, 2023, on the government's show-cause motion; but it put Twitter's motion challenging the nondisclosure order on a slower track, ordering the government to file a response to that motion by February 16, 2023, with Twitter's reply due on February 23, 2023.

## C.

At the February 7 hearing, the district court heard arguments from both parties about Twitter's noncompliance with the search warrant. Although Twitter requested that the court stay its enforcement of the warrant until after it adjudicated Twitter's motion to vacate or modify the nondisclosure order, the court denied that request and found Twitter in contempt of court.

In an oral ruling, the court rejected Twitter's argument that the First Amendment required adjudication of the nondisclosure order before enforcement of the warrant. Adopting Twitter's requested approach would "invite intervention by Twitter — let alone every other electronic communications provider — to delay execution of any [warrant] . . . issued under the [Act]" while it litigated challenges based on "slivers of knowledge" of an investigation's scope. J.A. 212. Because "any challenge to a [nondisclosure order] is separate from a challenge to a search

FILED UNDER SEAL

8

warrant" and additional delays would "increase[] the risk that evidence will be lost or destroyed, heighten[] the chance the targets will learn of the investigation, and jeopardize[] the government's ability to bring any prosecution in a timely fashion," the court refused to stay its enforcement of the warrant. *Id.* at 213 (citing *Google LLC v. United States*, 443 F. Supp. 3d 447, 455 (S.D.N.Y. 2020)).

The district court further determined that "the government ha[d] satisfied . . . [the] requirements for finding [Twitter in] contempt" for failing to comply with the warrant. J.A. 211. It found that the search warrant "was an unambiguous court order requiring Twitter to comply with production of the specified records . . . by January [27], 2023," and that Twitter violated the court's order by failing to turn over the records. *Id.* at 211–12. Nonetheless, the district court gave Twitter an opportunity to purge its contempt by producing the account information. When the court asked Twitter's counsel whether the company could produce the required materials by 5:00 p.m. that evening, counsel answered: "I believe we are prepared to do that. Yes, Your Honor." *Id.* at 210. The court also asked the government what sanctions it would request if Twitter failed to comply. The government suggested sanctions that would accrue at a geometric rate: $50,000 per day, to double every day that Twitter did not comply. The court adopted that suggestion, noting that Twitter was sold for over $40 billion and that its owner's net worth was over $180 billion. Twitter did not object to the sanctions formula. Accordingly, the district court ordered Twitter to produce the records specified by the warrant by 5:00 p.m. on February 7, 2023. If Twitter did not purge its contempt by that time, the district court ordered "escalating daily fines" that were "designed to ensure Twitter complies with the search warrant." *Id.* at 213–14.

9

Twitter missed the 5:00 p.m. deadline. Although Twitter timely produced some records, its production was incomplete. After a follow-up call with the government on the next day, Twitter produced supplemental information in the early hours of February 9, 2023. The district court held a second hearing on February 9, 2023, during which the court meticulously reviewed the requirements of the warrant and resolved any remaining disputes. At that hearing, Twitter made several new representations related to its production of responsive materials. *See, e.g.*, J.A. 242 ("[Government Counsel]: This is the first time I have heard a complaint about a date limitation on 1H."); *id.* at 254 ("This is the first time we are hearing about another preservation between January 3rd and January 9."); *id.* at 254–55 ("I have never heard of 'fleets' in part of any discussion that we have had. . . . It still will be relevant, it still will be responsive."). Twitter completed its production at 8:06 p.m. on February 9, 2023.

The parties subsequently submitted papers regarding the applicability of sanctions. The government suggested that Twitter's three days of noncompliance after the deadline had passed merited a $350,000 sanction, under the sanctions formula that the court previously had adopted and announced. *See* Gov't Notice Regarding Accrued Sanction 2, ECF No. 19. Twitter denied that any penalty was "appropriate," arguing that it had acted in good faith and had substantially complied with the February 7 deadline. J.A. 274. Twitter further argued that an incremental $200,000 sanction for the last day of noncompliance was unjustified, in light of "new search terms provided by the government" shortly before 4:00 p.m. on February 9 and Twitter's production of the required information "just hours" after the February 9 hearing. *Id.* at 277–78. Notably, Twitter still did not object to the sanctions formula.

**FILED UNDER SEAL**

10

On March 3, 2023, the district court issued an opinion and order denying Twitter's motion to vacate or modify the nondisclosure order, finding Twitter in civil contempt, and imposing a $350,000 contempt sanction. The district court assumed without deciding that Twitter's First Amendment challenge to the nondisclosure order should be analyzed under the exacting standard of strict scrutiny. The district court determined that the order, which prohibited speech about a particular warrant for a 180-day period, was a narrowly tailored means to protect the compelling interest of safeguarding the integrity and secrecy of an ongoing criminal investigation. The court further held Twitter in contempt for its three days of noncompliance with the production order and rejected the good faith and substantial compliance defense that Twitter had asserted.[3]

Twitter filed a timely notice of appeal. It moved both the district court and this Court to stay the $350,000 sanctions payment pending appeal. Both courts denied Twitter's motions. Twitter subsequently paid the $350,000 sanction into an escrow account maintained by the district court clerk's office.

On June 20, 2023, during the pendency of this appeal, the government filed an *ex parte* motion in the district court,

---

[3]     The district court ordered Twitter to comply with the warrant by 5:00 p.m. on February 7, 2023. J.A. 216. Twitter did not complete its production of account information until 8:06 p.m. on February 9, 2023. J.A. 276. Thus, Twitter delayed its production for a 51-hour period. The district court's order increased the sanction amount "every day," so it reasoned that additional fines "accrued as soon as 12:00 [a.m.]" at the beginning of each new day. J.A. 389. The 51-hour period, therefore, constituted three days of noncompliance. *See id.*

**FILED UNDER SEAL**

11

requesting a modification and extension of the nondisclosure order. The government proposed to permit Twitter to notify the former President of the existence and contents of the warrant. The only limitation on the disclosure would be to withhold the identity of the case agent assigned to the investigation. Gov't Mot. to Modify & Extend 1, ECF No. 45. The government changed its position due to ███████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████ Gov't Mot. to Modify & Extend 6, ECF No. 45. The government also requested that the amended nondisclosure order remain in effect for an additional 180 days. The district court granted the government's motion on the same day it was filed. *See* Order, ECF No. 46.

## II.

Twitter claims that the district court: (1) imposed an unlawful nondisclosure order that violated the First Amendment; (2) erred by refusing to stay its enforcement of the warrant while the parties litigated Twitter's constitutional challenge to the nondisclosure order, thereby failing to implement procedural safeguards required by *Freedman*; (3) erred in its application of § 2705(b) of the Act because, Twitter asserts, there was no reason to believe disclosure would harm the investigation; and (4) abused its discretion by finding Twitter in contempt, discounting Twitter's good faith and substantial compliance, and levying an unduly coercive sanction.

We have jurisdiction to review the final contempt adjudication under 28 U.S.C. § 1291. *See Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 436 (D.C. Cir.

12

2010).  We also have jurisdiction to review the district court's order denying Twitter's motion to vacate or modify the nondisclosure order under the collateral-order doctrine.  The collateral-order doctrine permits appeals from "decisions [1] that are conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively unreviewable on appeal from the final judgment in the underlying action."  *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 528 (D.C. Cir. 2018) (alterations in original) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)).  The district court's order conclusively rejected Twitter's challenges to the nondisclosure order.  It resolved important questions unrelated to the underlying investigation, including whether the nondisclosure order survived strict scrutiny.  If we declined to exercise jurisdiction over the instant appeal, the district court's order would be effectively unreviewable because it concerns Twitter's rights, not the rights of any individual targeted by the grand jury:  The issues raised by Twitter cannot be reviewed in an appeal of the final judgment in the underlying criminal case.  *See In re Application of Subpoena 2018R00776*, 947 F.3d 148, 154 (3d Cir. 2020) (*In re Subpoena*).  With all three elements of the collateral-order doctrine met, we are satisfied that we have appellate jurisdiction.

But each of Twitter's arguments implicates an additional jurisdictional or procedural issue.  The government argues that Twitter's claims based on the First Amendment and *Freedman* are moot; and that Twitter forfeited its statutory argument by first raising it in a reply brief in the district court.  Furthermore, Twitter's payment of the contempt sanction raises the question of whether its appeal of the sanction is moot.  We conclude that we may review all of Twitter's claims except for the statutory argument, which was forfeited.

**FILED UNDER SEAL**

13

**A.**

Article III of the Constitution grants the federal courts power to resolve "actual, ongoing controversies," meaning that "we lose jurisdiction if a pending case becomes moot." *Trump v. Mazars USA, LLP*, 39 F.4th 774, 785 (D.C. Cir. 2022) (quoting *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019)). Accordingly, we may not decide a case if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *J.T. v. District of Columbia*, 983 F.3d 516, 522 (D.C. Cir. 2020) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

Nevertheless, "[a] court can decide an otherwise-moot matter if the dispute is capable of repetition yet evading review." *Mazars USA*, 39 F.4th at 786. This exception applies if: (1) "the challenged action [i]s . . . too short to be fully litigated prior to its cessation or expiration"; and (2) "there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). The alleged wrong "must be defined in terms of the precise controversy it spawns." *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005).

**1.**

The government asserts that Twitter's First Amendment argument is moot because the nondisclosure order has been modified to remove the provision that Twitter challenges — *i.e.*, the prohibition against Twitter communicating about the warrant with the account holder. Gov't Rule 28(j) Letter (June

**FILED UNDER SEAL**

14

21, 2023). In response, Twitter argues that the dispute over the originally issued nondisclosure order is capable of repetition yet evading review. Twitter Rule 28(j) Letter (June 22, 2023). We think Twitter has the better of this argument.

When considering whether a dispute is capable of repetition, we focus not on "the precise historical facts that spawned the [litigant's] claims," but "whether the legal wrong complained of . . . is reasonably likely to recur." *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009). We have emphasized that this test should not "be applied with excessive 'stringency,'" *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 324 (D.C. Cir. 2014) (quoting *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988)), as it is a "functional approach," *Del Monte*, 570 F.3d at 323.

The legal issue Twitter raises is whether its First Amendment rights are violated by a § 2705(b) nondisclosure order that prohibits Twitter from revealing the existence or contents of a search warrant to its customer, who is a suspect in a criminal investigation. That dispute is reasonably likely to recur. "In estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past." *Clarke*, 915 F.2d at 704. Twitter previously has received, and challenged, nondisclosure orders attached to subpoenas, warrants, and other requests for user information. *See* J.A. 217–22 (listing challenges); *cf. Twitter, Inc. v. Garland*, 61 F.4th 686, 692–94 (9th Cir. 2023). And Twitter avers that it will continue to resist complying with nondisclosure orders that it believes are "facially invalid." Twitter Rule 28(j) Letter 2 (June 22, 2023). We think it is reasonably likely that the government will seek subscriber information from Twitter in future criminal cases, and that the government therefore will serve more search warrants and

**Add. 14**

15

nondisclosure orders on Twitter. At some point, Twitter "will again be confronted by an order of this sort" raising a similar First Amendment issue. *In re Reps. Comm. for Freedom of the Press*, 773 F.2d 1325, 1329 (D.C. Cir. 1985).

We are unpersuaded by the government's narrow framing of Twitter's claims. The government asserts that it will not seek additional information about the former President's Twitter account, and that Twitter's expressed interest in communicating with the former President so that he may assert executive privilege is case-specific. *See* Gov't Rule 28(j) Letter (June 21, 2023); *cf.* Gov't Br. 39 n.11. But, as the district court noted, "Twitter's interests here are purely about its right to speak to the [account user]," J.A. 379, and such interests do not depend on the user's identity. Twitter has claimed that it has a First Amendment right to meaningfully communicate with its users, and other account holders may hold other privileges, such as the attorney-client privilege, that could be asserted in response to a warrant issued under the Act. Twitter therefore could again claim that a nondisclosure order "impede[s] its ability to effect its First Amendment rights to provide meaningful notice to its user." J.A. 17–18. We therefore view Twitter's claim as capable of repetition.

We have no trouble holding that a challenge to a nondisclosure order also "evades review." Such an order typically has a limited duration — the instant nondisclosure order was to remain in effect for 180 days and was extended on June 20, 2023 for a period of 180 days. *See* J.A. 2; Order, ECF No. 46; *see also* DEPUTY ATT'Y GEN. ROD J. ROSENSTEIN, U.S. DEP'T OF JUSTICE, POLICY REGARDING APPLICATIONS FOR PROTECTIVE ORDERS PURSUANT TO 18 U.S.C. § 2705(B), at 2 (Oct. 19, 2017), https://perma.cc/MN34-QMNW (advising a one-year maximum for nondisclosure orders). As a "rule of

**FILED UNDER SEAL**

16

thumb," we have considered an order of less than two years' duration "too short" to be fully litigated before it expires. *See Ralls Corp.*, 758 F.3d at 321 (applying two-year rule of thumb in the context of agency actions of short duration); *accord Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016). Nondisclosure orders under § 2705(b) fall comfortably within that timeframe. *Ralls Corp.*, 758 F.3d at 321; *see also Del Monte*, 570 F.3d at 322 ("[T]he short duration [must be] typical of the challenged action.").

Moreover, we have reasoned in an analogous context that "contempt issues" that arise during a grand jury investigation "could not or probably would not be able to be adjudicated while fully live." *In re Sealed Case*, 877 F.2d 976, 981 n.6 (D.C. Cir. 1989) (quoting *In re Grand Jury Proc.*, 785 F.2d 629, 631 (8th Cir. 1986)). After all, "a grand jury's term and its investigations are by their very nature of limited and relatively short duration." *Id.* at 981 n.6; *accord In re Grand Jury Proc.*, 971 F.3d 40, 53 (2d Cir. 2020) ("[T]he relatively short duration of the grand jury has made it practically impossible to fully litigate . . . challenges to [a grand jury] subpoena."). The instant nondisclosure order was issued by the district court in connection with a criminal investigation by a grand jury, and the order's date of expiration necessarily bears some relationship to the limited duration of the grand jury's work. We find that reasoning relevant here and conclude that the originally issued nondisclosure order evades review.[4]

---

[4]    Twitter has not argued that the district court did not have jurisdiction to modify the nondisclosure order. But "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, No. 22-105, slip op. at 3 (U.S. June 23, 2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459

17

**2.**

Faced with competing motions from the parties, the district court chose to grant the government's motion to enforce the warrant before ruling on Twitter's motion to amend or vacate the nondisclosure order. Twitter argues that the district court should have decided its motion first. The government argues with some force that Twitter's argument about the timing of the district court's rulings became moot once Twitter produced the information that was the subject of the warrant. After all, we cannot now require the district court to consider Twitter's First Amendment claims before enforcing a warrant that has already been enforced and complied with. *Cf. United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987); *In re Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d 670, 672 (11th Cir. 1992).

Although we agree that this dispute is moot, we also believe that it is capable of repetition yet evading review. Time is of the essence when the government seeks evidence needed

---

U.S. 56, 58 (1982)); *accord Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1128 (D.C. Cir. 1978). This rule prevents the trial court and the appellate court from "step[ping] on each other's toes," for "[i]t would interfere with the appellate court's review of an order if the district court modified that order mid-appeal." *Coinbase*, slip op. at 8 (Jackson, J., dissenting). In the instant case, the district court modified the nondisclosure order mid-appeal, and it appears that the district court may not have had jurisdiction to make that modification. Nevertheless, any such error does not affect our review of the nondisclosure order as it existed when Twitter filed the instant appeal. One purpose of the rule that may have divested the district court of jurisdiction is to allow us to proceed with our consideration of the appeal without interference; and our determination that Twitter's First Amendment claim is capable of repetition yet evading review gets us to the same place.

**FILED UNDER SEAL**

18

in a criminal case, so there may be little opportunity to fully litigate a substantial constitutional claim while holding in abeyance the execution of a search warrant. And, despite the government's promise that it "does not intend to seek another search warrant and nondisclosure order for the former President's Twitter account," Gov't Br. 39 n.11, Twitter can reasonably expect to receive (and be ordered to comply with) more search warrants for other accounts, accompanied by nondisclosure orders that could implicate the account holders' privileges and Twitter's asserted First Amendment rights.

**B.**

We decline to consider Twitter's argument that the district court misapplied the Act because that claim was forfeited. Twitter contends that the district court erroneously found that disclosure of the warrant's existence or contents would result in one of § 2705(b)'s enumerated harms. *See* 18 U.S.C. § 2705(b) (requiring government to demonstrate "reason to believe" that disclosure of the warrant will "seriously jeopardiz[e] an investigation" or result in another enumerated harm). That argument, however, first appeared in Twitter's reply brief in support of its motion to vacate the nondisclosure order. It is well established that an argument first presented in a reply brief before the district court is forfeited. *Schindler Elevator Corp. v. Wash. Metro. Area Transit Auth.*, 16 F.4th 294, 302 n.3 (D.C. Cir. 2021) (citing *Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014)).

**C.**

Finally, we agree with the parties that Twitter's challenge to the contempt sanction is not moot. Because Twitter conditionally paid the sanction and its funds are held by the

**FILED UNDER SEAL**

19

district court in escrow, we may remedy any asserted error by ordering the district court to return Twitter's funds. *See, e.g., Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1057 (7th Cir. 1998) (holding that conditional payment "does not moot the appeal because the appellate court can fashion effective relief . . . by ordering that the sum paid . . . be returned"); *R.I. Hosp. Tr. Nat'l Bank v. Howard Commc'ns Corp.*, 980 F.2d 823, 829 n.9 (1st Cir. 1992) (reviewing an appeal of a contempt sanction on the merits where the contemnor expressed an intent "to escrow the funds pending resolution of any appeal"). The availability of a remedy "is sufficient to prevent this case from being moot." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992).

## III.

### A.

On the merits, we begin with Twitter's First Amendment challenge. Twitter argues that the nondisclosure order is a content-based prior restraint on speech. *See* Opening Br. 1. Because that argument presents a question of law, we review the district court's decision de novo. *See United States v. Popa*, 187 F.3d 672, 674 (D.C. Cir. 1999); *In re Subpoena*, 947 F.3d at 154.

We assume without deciding that strict scrutiny should govern our review of the instant nondisclosure order. *See In re Subpoena*, 947 F.3d at 155–56; *In re Search of Info. Associated with E-Mail Accts.*, 468 F. Supp. 3d 556, 560 (E.D.N.Y. 2020) (*E-Mail Accounts*); *cf. In re Nat'l Sec. Letter*, 33 F.4th 1058, 1063 (9th Cir. 2022). Nondisclosure orders implicate two disfavored types of speech restrictions: prior restraints and content-based restrictions. Prior restraints include "court

20

orders that actually forbid speech activities" in advance of the speech occurring. *Alexander v. United States*, 509 U.S. 544, 550 (1993). Content-based restrictions target "particular speech because of the topic discussed or the idea or message expressed." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Both types of restrictions are presumptively unconstitutional, and generally call for strict scrutiny. *See Nat'l Inst. of Family & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975). Assuming that strict scrutiny applies, we hold that the instant nondisclosure order, on this record, meets that demanding standard.[5]

Strict scrutiny requires the government to demonstrate that a speech restriction: (1) serves a compelling government interest; and (2) is narrowly tailored to further that interest. *See Reed*, 576 U.S. at 163; *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 508 (D.C. Cir. 2016). A restriction is narrowly tailored if "'less restrictive alternatives' . . . would not 'accomplish the government's goals equally or almost equally

---

[5]    We note, however, the Second Circuit's conclusion that a nondisclosure order "is not a typical prior restraint or a typical content-based restriction warranting the most rigorous First Amendment scrutiny." *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 877 (2d Cir. 2008). That court reasoned that such orders do not restrict "those who customarily wish to exercise rights of free expression, such as speakers in public fora, distributors of literature, or exhibitors of movies," as with typical prior restraints. *Id.* at 876. And while a nondisclosure order "is triggered by the content of a category of information," suggesting it is content-based, the *John Doe* court deemed it "far more limited than the broad categories of information that have been at issue with respect to typical content-based restrictions." *Id.*

**Add. 20**

21

effectively.'" *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 19 (D.C. Cir. 2009) (*NAM*) (quoting *Blount v. SEC*, 61 F.3d 938, 944 (D.C. Cir. 1995)).

The government proffered two compelling interests that supported nondisclosure of the search warrant: preserving the integrity and maintaining the secrecy of its ongoing criminal investigation of the events surrounding January 6, 2021. Gov't Br. 20. Those interests are "particularly acute where, as here, the investigation is ongoing." *In re Subpoena*, 947 F.3d at 156. Investigating criminal activity is a "core government function that secures the safety of people and property." *Google LLC*, 443 F. Supp. 3d at 452. In addition, the government's interest is heightened where an investigation has national security implications, for "no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). Thus, the government's interest was particularly strong here because its ongoing investigation aimed to "[f]erret[] out activity intended to alter the outcome of a valid national election for the leadership of the Executive Branch of the federal government . . . and [to assess] whether that activity crossed lines into criminal culpability." J.A. 372–73. Moreover, secrecy is paramount to ensuring that ongoing investigations can proceed without interference from targets or interested parties. *See Google LLC*, 443 F. Supp. 3d at 453. Breaching the investigation's confidentiality could open the door to evidence-tampering, witness intimidation, or other obstructive acts. *See* 18 U.S.C. § 2705(b); *see also In re Subpoena*, 947 F.3d at 156 ("[P]rotecting the secrecy of an investigation" is a compelling government interest.). Here, the district court specifically found reason to believe that disclosure of the warrant would jeopardize the criminal investigation. *See* J.A. 1. We therefore conclude that the

22

government's asserted interests were unquestionably compelling.

The nondisclosure order was also "narrowly tailored to advance the State's compelling interest through the least restrictive means." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 452 (2015). It bears emphasis that, under the strict-scrutiny standard, a restriction must be narrowly tailored, not "perfectly tailored." *Id.* at 454 (quoting *Burson v. Freeman*, 504 U.S. 191, 209 (1992)). Here, the nondisclosure order was initially limited in duration to 180 days. Thus, any concerns associated with indefinite nondisclosure orders are of no moment here. *Cf., e.g., United States v. Apollomedia Corp.*, No. 99-20849, 2000 WL 34524449, at *3 (5th Cir. June 2, 2000) (recognizing the "substantial constitutional questions raised by a nondisclosure order without any limitation as to time"); *In re Grand Jury Subpoena for: [Redacted]@yahoo.com*, 79 F. Supp. 3d 1091, 1093 (N.D. Cal. 2015) (positing that § 2705(b) restricts nondisclosure orders' duration to "some limit less than infinity"). Moreover, the speech restricted — disclosure of the existence or contents of the warrant — was limited to information that Twitter obtained only by virtue of its involvement in the government's investigation. Courts have suggested that such information, procured from the government itself or pursuant to a court-ordered procedure, is entitled to less protection than information a speaker possesses independently. *See Butterworth v. Smith*, 494 U.S. 624, 636 (1990) (Scalia, J., concurring) (distinguishing constitutional protection of what grand jury witnesses know beforehand from what they learn "only by virtue of being made a witness"); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) ("[A]n order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny."). Importantly, Twitter

**FILED UNDER SEAL**

23

remained free to raise general concerns about warrants or nondisclosure orders, and to speak publicly about the January 6 investigation.

Twitter's contrary arguments are unpersuasive. First, Twitter claimed that the government's interest in maintaining the confidentiality of the criminal investigations was undermined by information already in the public sphere. Twitter asserted that "the cat [was] out of the bag: the public . . . already [knew] that the Special Counsel [was] investigating the former President and collecting his private electronic communications." Opening Br. 25. We disagree. At the time of Twitter's challenge to the nondisclosure order, some information about grand jury subpoenas or visitors to the federal courthouse was public. But Twitter sought to disclose a different category of information, *i.e.*, the existence of a search warrant, which was issued by the district court upon a finding of probable cause that evidence of a crime might be found in the former President's Twitter account. *See* J.A. 295. In any event, the publicly available information that Twitter cited did not present the full story. *Ex parte* submissions reviewed by this court supported the district court's finding that disclosure would have harmed the integrity and secrecy of the ongoing grand jury investigation, despite public knowledge of the broader investigation.[6]

---

[6]    *See, e.g.,* ████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

**FILED UNDER SEAL**

24

Second, Twitter proposed two less restrictive alternatives to the nondisclosure order that it contended could address the government's concerns "while still enabling it to meaningfully exercise its First Amendment rights."  Opening Br. 31.  Those proposals involved revealing parts of the warrant to the former President or to his representatives.  At the time that Twitter made its motion, those suggested alternatives were nonstarters because they would not have maintained the confidentiality of the criminal investigation and therefore risked jeopardizing it.  To the extent that Twitter proposed revealing parts of the warrant package — the warrant and Attachment A — to the former President, that argument was forfeited because Twitter did not raise it when moving to vacate the nondisclosure order.  *See* J.A. 16–17.  In any event, such action would not have safeguarded the security and integrity of the investigation, as the whole point of the nondisclosure order was to avoid tipping off the former President about the warrant's existence.  Moreover, courts have rejected as "unworkable" proposals similar to Twitter's idea of notifying the former President's lawyers or representatives about the warrant, while expecting them to maintain the warrant's secrecy.  *In re Subpoena*, 947 F.3d at 159.  Such an approach would have required the district



25

court to take on the unpalatable job of "assess[ing] the trustworthiness of a would-be confidante chosen by a service provider." *Id.*; *see also E-Mail Accounts*, 468 F. Supp. 3d at 562 (holding that a proposal "to notify someone at the [targeted] company, like a senior official or a lawyer in its United States office, of the warrant . . . was not as effective as the nondisclosure order" in protecting an investigation). Twitter thus failed to proffer any alternative to the nondisclosure order that "accomplish[ed] the government's goals equally or almost equally effectively." *NAM*, 582 F.3d at 19 (quoting *Blount*, 61 F.3d at 944).

Because the nondisclosure order was a narrowly tailored means of achieving compelling government interests, it withstood strict scrutiny.

**B.**

Twitter asserts that the district court erred by declining to stay the enforcement of the warrant pending the court's adjudication of Twitter's First Amendment challenge to the nondisclosure order. Twitter argues that the court's approach violated Twitter's constitutional rights and contradicted the Supreme Court's mandated safeguards in First Amendment cases, as prescribed in *Freedman*. We find Twitter's arguments unconvincing.

The sequence in which a district court considers pending motions is a docket-management decision that is reviewed for abuse of discretion. *See Banner Health v. Price*, 867 F.3d 1323, 1334 (D.C. Cir. 2017). But "we review de novo any errors of law upon which the court relied in exercising its discretion." *Ameziane v. Obama*, 620 F.3d 1, 5 (D.C. Cir. 2010). In our view, the district court did not exceed the bounds

**FILED UNDER SEAL**

26

of its discretion when it ordered Twitter to comply with the warrant before it resolved the company's challenge to the nondisclosure order. Although the district court could have resolved the First Amendment issues simultaneously with the show-cause order, *see, e.g.*, *Google LLC*, 443 F. Supp. 3d at 455, it was not required to do so. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). Here, the district court reasonably concluded that the warrant and nondisclosure order were "wholly separate order[s]" governed by different legal standards, and that the criminal investigation should not be delayed while Twitter's motion was litigated. J.A. 366. Because the court weighed the government's need for the evidence at issue in "an important ongoing criminal investigation," *id.* at 387, and chose not to delay execution of the warrant under the particular circumstances presented, "the district court acted within the range of permissible alternatives that were available to it," *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

We reject Twitter's underdeveloped argument that the district court erred by denying it constitutionally required procedural safeguards, including maintaining the status quo until its First Amendment challenge could be adjudicated. *See* Opening Br. 37; *see also* J.A. 9. To support that claim, Twitter relies on *Freedman*, which addressed a very different "noncriminal process" — *i.e.*, "the prior submission of a film to a censor." *Freedman*, 380 U.S. at 58. The "scheme" in *Freedman* "condition[ed] expression on a licensing body's prior approval of content," which "presents peculiar dangers to constitutionally protected speech." *Thomas*, 534 U.S. at 321 (quoting *Freedman*, 380 U.S. at 57).

27

In that readily distinguishable context, the Supreme Court held that a censorship system "avoids constitutional infirmity only if it takes place under procedural safeguards." *Freedman*, 380 U.S. at 58. Those safeguards are: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Thomas*, 534 U.S. at 321 (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990) (principal opinion of O'Connor, J., joined by Stevens and Kennedy, J.J.)). The Supreme Court extended those safeguards to other censorship and licensing schemes in the years following *Freedman. See, e.g.*, *Se. Promotions, Ltd.*, 420 U.S. at 554, 559–61 (censorship board for theater productions); *City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774, 776 (2004) (licensing for adult-entertainment businesses); *Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 802 (1988) (licensing for professional fundraisers).

Twitter asserts that *Freedman* obligated the district court to maintain the status quo — *i.e.*, forbear from enforcing the warrant — while Twitter's objections to the nondisclosure order were litigated. *See* Opening Br. 35–37. But the *Freedman* safeguards applied by the Supreme Court to censorship and licensing schemes are a poor fit in this case. Whereas *Freedman* expressly addressed a "noncriminal" scheme and imposed protective measures designed to ensure prompt access to judicial review, *Freedman*, 380 U.S. at 58–59, the instant warrant and nondisclosure order were issued directly by a court in connection with a criminal investigation. Twitter received the full judicial process contemplated by § 2705(b) — a neutral and detached judge considered statutory

**FILED UNDER SEAL**

28

factors and made specific findings that supported the issuance of the nondisclosure order. *See* 18 U.S.C. § 2705(b); *see also* J.A. 1–2. Thus, there was no need in this case to maintain the status quo until a court could review Twitter's arguments because judicial review of statutory requirements had already occurred before the nondisclosure order was even served on Twitter. *Freedman* is inapplicable in this case.

The more analogous Supreme Court cases are those in which the Court upheld confidentiality requirements with respect to information obtained in connection with court processes. In *Rhinehart*, the Court sustained a protective order that prohibited a party from disseminating information learned through pretrial discovery. *Rhinehart*, 467 U.S. at 37. Because the information did not arise from "a traditionally public source of information," it "[did] not raise the . . . specter of government censorship." *Id.* at 32–33. And in *Butterworth*, the Court recognized that while a grand jury witness generally had a right to disclose his own testimony, that right did not extend to information that the witness gleaned from participating in the investigation. *Butterworth*, 494 U.S. at 626, 633 (holding state confidentiality law unconstitutional "insofar as [it] prohibits a grand jury witness from disclosing his own testimony after the term of the grand jury has ended," but leaving in place "that part of the . . . statute which prohibit[ed] the witness from disclosing the testimony of another witness" (emphasis omitted)).

Thus, the district court was not obligated to implement *Freedman*-style procedures while considering a motion to vacate an order that merely precluded "disclosure of a single, specific piece of information that was generated by the government" — *i.e.*, that the government obtained a court order compelling production of a user's data. *In re Nat'l Sec. Letter*,

29

33 F.4th at 1077. A nondisclosure order is not the type of "classic prior restraint" addressed by *Freedman*, and Twitter received considerable process before the warrant and nondisclosure order were even issued. *See In re Warrant to Search a Certain E-Mail Account Controlled & Maintained by Microsoft Corp.*, 855 F.3d 53, 56 (2d Cir. 2017) (Carney, J., concurring in denial of reh'g en banc) (observing that a warrant "issued by a neutral magistrate judge upon a showing of probable cause . . . satisfie[s] the most stringent privacy protections our legal system affords").

## C.

Finally, we affirm the district court's contempt sanction. A civil-contempt proceeding requires: "(1) issuance of an order; (2) following disobedience of that order, issuance of a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions; and (3) exaction of the threatened penalty if the purgation conditions are not fulfilled." *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981). The violation must be proven by clear and convincing evidence. *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006). We review both a contempt finding and a contempt sanction for abuse of discretion. *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 818 (D.C. Cir. 2009).

## 1.

The district court followed the procedure we have prescribed for imposing a contempt sanction. Faced with Twitter's alleged noncompliance with the warrant, the district court issued a show-cause order and held a hearing at which

30

Twitter had an opportunity to be heard. At that hearing, the district court found that Twitter had disobeyed a "clear and unambiguous court order" — *i.e.*, the warrant — that "requir[ed] Twitter to comply with production of the specified records . . . by January [27], 2023." J.A. 211. Because the government proved that Twitter stood in contempt of the warrant, the district court threatened to impose "escalating daily fines" unless Twitter purged the contempt by turning over the records by 5:00 p.m. on February 7. *Id.* at 213; *see id.* at 211, 216. Before setting that deadline, the district court confirmed that Twitter could meet it. When Twitter failed to timely purge its contempt, the district court appropriately issued another order that "exact[ed] . . . the threatened penalty" — a $350,000 sanction. *Blevins Popcorn*, 569 F.2d at 1184; *see* J.A. 216, 354–55.

The district court properly rejected Twitter's assertion that no sanction was warranted because it substantially complied with the warrant and acted in good faith. We have not decided whether a contemnor may rely on its good faith and substantial compliance to avoid a civil-contempt sanction. *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1017 (D.C. Cir. 1997). Assuming such a defense is available, it requires a contemnor to "demonstrate that it 'took all reasonable steps within [its] power to comply with the court's order.'" *Id.* (quoting *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)). Good faith "may be a factor in determining whether substantial compliance occurred," but "is not sufficient to excuse contempt." *Id.* at 1017–18.

Twitter contends that it "substantially complied with the [w]arrant" because "there was nothing [it] could have done to comply faster" after the court issued the February 7 order.

31

Opening Br. 47. Twitter also blames the government for failing to clarify the warrant's obligations. *Id.* at 47–48. We are unpersuaded. The district court noted that Twitter complied with the warrant "only *after* it had already delayed production since January 27, the original deadline." J.A. 387 (emphasis in original). The court opined that, had Twitter "been diligent and serious in its good faith intention to comply with the [w]arrant," it would have brought any issues to the government's attention "on January 19, 2023, or subsequently upon review by in-house counsel on January 25 and 26, 2023, or even during ongoing conversations with the government through February 1, 2023." *Id.* at 388. Instead, the court found that Twitter repeatedly represented to the court that it stood ready to comply, even as Twitter waited until after the February 7 deadline "to raise, *for the first time*, multiple questions about the [w]arrant's document demands." *Id.* at 387 (emphasis in original). Under those circumstances, the district court was on firm footing when it ruled that Twitter had not substantially and in good faith complied with the warrant. *See Food Lion*, 103 F.3d at 1019 (concluding that a company did not substantially comply when it "did not seek a clarification" of an order requiring production or "ask for an extension" before the production deadline).

Twitter argues that the district court erred by considering Twitter's conduct between January 19 (when it received the warrant) and February 7 (when the court ordered it to comply with the warrant by 5:00 p.m.). According to Twitter, the district court could find it in contempt based only on actions taken after the February 7 order issued. Opening Br. 49. That argument fails because it appears to assert good faith, substantial compliance with the February 7 order instead of the warrant. At the February 7 hearing, the district court found Twitter conditionally in contempt for violating the warrant, but

32

the court provided Twitter with an opportunity to purge that contempt and avoid sanctions by producing the warrant returns by 5:00 p.m. that day. *See* J.A. 211–15. When Twitter failed to timely purge, the court found the company in contempt for disobeying the warrant and imposed the threatened sanctions. *See id.* at 211, 354–55. Thus, Twitter's assertions of good faith and substantial compliance should have addressed all of its efforts to comply with the warrant, not just its efforts to purge its contempt by the 5:00-p.m. deadline. Twitter cites no authority supporting the proposition that a district court must limit its review of a putative contemnor's good faith and substantial compliance to a specific timeframe. Although we have reversed a district court that "limited its inquiries about [a contemnor's] compliance efforts to events that occurred before [a] fine started to accrue," we did so in part because that court "did not consider good faith for any purpose." *Wash. Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat'l Cap. Loc. Div. 689*, 531 F.2d 617, 621 (D.C. Cir. 1976). It does not follow that a district court must avoid considering the overall picture of a party's efforts to comply with a court order.

Accordingly, the district court did not abuse its discretion by finding Twitter in contempt and rejecting its purported defense of good faith and substantial compliance.

**2.**

The district court did not abuse its discretion in imposing a $350,000 sanction. Civil-contempt sanctions "may not be punitive" and "must be calibrated to coerce compliance." *In re Fannie Mae Sec. Litig.*, 552 F.3d at 823. The district court here imposed a geometric sanctions schedule that would apply if Twitter failed to complete its production by 5:00 p.m. on February 7: penalties began at $50,000 per day, to double

**FILED UNDER SEAL**

33

every day.  J.A. 216.  To be sure, that schedule was highly coercive.  As Twitter belatedly points out, after roughly one month of noncompliance, it would have required Twitter to pay a sanction greater than "the entire world's gross domestic product."  Opening Br. 56.

While a geometric schedule is unusual and generally would be improper without an upper limit on the daily fine, we nonetheless uphold the district court's sanctions order based on the particular facts of this case.  Twitter never raised any objection to the sanctions formula, despite having several opportunities to do so (at the February 7 and February 9 hearings, and in its papers opposing sanctions).  The company thus appeared to acquiesce to the formula.  Moreover, the $350,000 sanction ultimately imposed was not unreasonable, given Twitter's $40-billion valuation and the court's goal of coercing Twitter's compliance.  *Cf. In re Grand Jury Subpoena*, 912 F.3d 623, 626 (D.C. Cir. 2019) ($50,000 per day fine against a state-owned corporation); *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, Nos. 1:18-mc-175, 1:18-mc-176, 1:18-mc-177 (BAH), 2019 WL 2182436, at *5 (D.D.C. Apr. 10, 2019) ($50,000 per day fine against "multi-billion-dollar banks"); *United States v. Philip Morris USA Inc.*, 287 F. Supp. 2d 5, 15 & n.11 (D.D.C. 2003) ($25,000 per day fine against company with $190 million annual profits).  Finally, we note that Twitter assured the court that it would comply with the warrant by 5:00 p.m. on February 7, and never raised the possibility that it would defy the order for a month and end up owing the court "the entire world's gross domestic product."  Opening Br. 56.  Under these case-specific circumstances, the district court acted reasonably and did not abuse its discretion by imposing the $350,000 sanction.

FILED UNDER SEAL

34

<u>UNDER SEAL — EX PARTE INFORMATION REDACTED</u>

\*    \*    \*

In sum, we affirm the district court's rulings in all respects. The district court properly rejected Twitter's First Amendment challenge to the nondisclosure order.  Moreover, the district court acted within the bounds of its discretion to manage its docket when it declined to stay its enforcement of the warrant while the First Amendment claim was litigated.  Finally, the district court followed the appropriate procedures before finding Twitter in contempt of court — including giving Twitter an opportunity to be heard and a chance to purge its contempt to avoid sanctions.  Under the circumstances, the court did not abuse its discretion when it ultimately held Twitter in contempt and imposed a $350,000 sanction.

*So ordered.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rules 28(a)(1) and 35(c), X Corp. hereby states that all parties, intervenors, and amici appearing in this court are listed below.

### A.    Parties And Amici

Petitioner is Appellant X Corp. (successor in interest to named Appellant Twitter, Inc.).  Petitioner appeared in the district court and is a party in this Court.

Respondent is Appellee United States of America.  Respondent appeared in the district court and is a party in this Court.

No amici appeared in the district court and no amici have appeared before this Court.

### B.    Rulings Under Review

Appellant sought review of the district court's March 3, 2023 opinion and judgment denying Twitter's Motion to Vacate or Modify the Non-Disclosure Order and Stay Twitter's Compliance with the Search Warrant, holding Twitter in civil contempt for failing to comply with the district court's February 7 Minute Order, and assessing a $350,000 sanction against Twitter for the same, JA354.  Appellant also sought review of the January 17 Non-Disclosure Order, JA1, the February 3 scheduling order regarding briefing for Twitter's Motion to Vacate and for the government's Motion to Show Cause Why Twitter Should Not be Held in Contempt, JA30, the February 7 minute order holding Twitter in contempt if it

failed to comply with the Warrant by February 7 at 5:00pm, JA216, the oral orders regarding production timelines delivered during the February 7 hearing, JA213-215, and the oral order delivered during the February 9 hearing requiring the government to calculate a sanction once Twitter completed production, JA271-272.

This petition seeks rehearing of the panel's decision, which is attached to the petition.

### C.    Related Cases

Other than in the instant appeal, this case has not previously been before this Court or any court other than the district court below.  There are no related cases pending in this Court or in any other court of which counsel is aware.

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, Appellant X Corp., as successor in interest to named Appellant Twitter, Inc., discloses that Twitter, Inc. has been merged into X Corp. and no longer exists. X Corp. is a privately held company. Its parent corporation is X Holdings Corp. No publicly held corporation owns 10 percent or more of X Corp. or X Holdings Corp.