**FILED UNDER SEAL**

**ORAL ARGUMENT SCHEDULED FOR MAY 19, 2023**
**No. 23-5044**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN RE SEALED CASE

On Appeal from the United States District Court
for the District of Columbia, No. 1:23-SC-31-BAH
Before the Honorable Beryl A. Howell

**REPLY BRIEF FOR APPELLANT TWITTER**

ARI HOLTZBLATT (D.C. BAR NO. 1009913)
BENJAMIN POWELL (D.C. BAR NO. 464823)
WHITNEY RUSSELL (D.C. BAR NO. 987238)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 663-6000

GEORGE P. VARGHESE (MASS. BAR NO. 706861)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

May 5, 2023

**FILED UNDER SEAL**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... iii

SUMMARY OF ARGUMENT ........................................................................ 1

ARGUMENT ............................................................................................... 2

I.   THE NON-DISCLOSURE ORDER VIOLATES THE STORED
     COMMUNICATIONS ACT AND THE FIRST AMENDMENT ................................ 2

     A.   The Government Fails To Justify The Non-Disclosure
          Order Under The Stored Communications Act And First
          Amendment ........................................................................... 3

          1.   The government still fails to explain how
               disclosure of the Warrant would harm its
               investigation ................................................................ 3

          2.   The government fails to justify its reliance on
               shifting and undisclosed rationales ............................... 6

          3.   The government has no defense to its
               impermissible reliance on generalized, non-
               statutory harms ............................................................ 7

     B.   The Government Fails To Show The Order Is Narrowly
          Tailored ................................................................................ 10

II.  THE GOVERNMENT FAILS TO JUSTIFY THE DISTRICT COURT'S
     DECISION ORDERING PRODUCTION PRIOR TO RESOLVING
     TWITTER'S FIRST AMENDMENT CHALLENGE ................................................ 13

     A.   The Government Nowhere Disputes The Relationship
          Between Twitter's Speech Interest And The Timing Of
          The Warrant .......................................................................... 13

     B.   The Government Fails To Show That Mr. Trump Lacked
          A Colorable And Time-Sensitive Privilege Claim .......................... 16

     C.   Twitter's Challenge To The Underlying Order Is Not
          Moot ..................................................................................... 19

i

**FILED UNDER SEAL**

III.   THE GOVERNMENT CANNOT PERSUASIVELY DEFEND THE
       DISTRICT COURT'S ERRONEOUS ASSESSMENT OF THE CONTEMPT
       SANCTION ................................................................................................21

       A.    Like The District Court, The Government Fails To
             Account For Twitter's Substantial Good-Faith
             Compliance With The February 7 Show-Cause
             Order And Impermissibly Relies On Conduct Prior To
             February 7 ...........................................................................................21

       B.    The Government Concedes The District Court
             Sanctioned Twitter For Its Assertion Of Legal Rights .......................26

       C.    The Government's Examples Of "Comparable"
             Sanctions Further Demonstrate This Sanction Was
             Unprecedented And Unreasonable .......................................................27

CONCLUSION ....................................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

USCA Case #23-5044    Document #1998158    Filed: 05/05/2023    Page 4 of 39


**FILED UNDER SEAL**

# TABLE OF AUTHORITIES*

## CASES

Page(s)

*Aluminum Company of America v. Interstate Commerce Commission*, 581 F.2d 1004 (D.C. Cir. 1978).................................................................28

*Bartko v. Department of Justice*, 898 F.3d 51 (D.C. Cir. 2018)................................9

*\*Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011) .............3, 5

*Butterworth v. Smith*, 494 U.S. 624 (1990) ............................................................10

*City of Lakewood v. Plain Dealer Publishing Company*, 486 U.S. 750 (1988)......................................................................................................................7

*Del Monte Fresh Produce Company v. United States*, 570 F.3d 316 (D.C. Cir. 2009) .................................................................................................21

*Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979)........................................................................................10

*Federal Express Corp. v. Department of Commerce*, 39 F.4th 756 (D.C. Cir. 2022) ...................................................................................................2

*Food Lion, Inc. v. United Food & Commercial Workers International Union, AFL-CIO-CLC*, 103 F.3d 1007 (D.C. Cir. 1997) .............................22

*\*Freedman v. Maryland*, 380 U.S. 51 (1965).......................................................6, 7

*Google LLC v. United States*, 443 F. Supp. 3d 447 (S.D.N.Y. 2020) .....................15

*Guffey v. Mauskopf*, 45 F.4th 442 (D.C. Cir. 2022) .................................................14

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .........................................5

*In re Fannie Mae Securities Litigation*, 552 F.3d 814 (D.C. Cir. 2009)...........23, 24

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*In re Grand Jury Investigation of Possible Violations of 18 U.S.C.*
*§ 1956 & 50 U.S.C. § 1705*, 2019 WL 2182436 (D.C. Cir. |
Apr. 10, 2019).................................................................................28

*In re Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d 670
(11th Cir. 1992) .........................................................................20

*In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9287146
(N.D. Tex. Sept. 22, 2017) ...........................................................8

*In re Grand Jury Subpoena (T-112)*, 597 F.3d 189 (4th Cir. 2010)........................19

*In re Search Warrant Issued June 13, 2019*, 942 F.3d 159
(4th Cir. 2019) ........................................................................15, 26

*In re United States for an Order Pursuant to 28 U.S.C. § 165J(a)*
*for Order Precluding Notice of Grand Jury Subpoena*,
2017 WL 3278929 (D.D.C. July 7, 2017) ....................................12

*International Union, United Mine Workers of America v. Bagwell*,
512 U.S. 821 (1994)....................................................................23

*Knight First Amendment Institute at Columbia University v. Trump*,
928 F.3d 226 (2d Cir. 2019) .........................................................18

*Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978)........................9

*Maxwell v. Snow*, 409 F.3d 354 (D.C. Cir. 2005)....................................22

*McTernan v. City of York*, 577 F.3d 521 (3d Cir. 2009)..........................13

*National Labor Relations Board v. Blevins Popcorn Company*,
659 F.2d 1173 (D.C. Cir. 1981)...............................................22, 24

*Nebraska Press Association v. Stuart*, 427 U.S. 539 (1976) ....................................1

*Nixon v. Administrator of General Services*, 433 U.S. 425 (1977) ........................16

*Pigford v. Veneman*, 307 F. Supp. 2d 51 (D.D.C. 2004)........................................28

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) .................................................22

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) .........................................................5

*Seattle Times Company v. Rhinehart*, 467 U.S. 20 (1984) ......................................10

*Shelton v. United States*, 404 F.2d 1292 (D.C. Cir. 1968)...........................................27

*Twitter, Inc. v. Garland*, 61 F.4th 686 (9th Cir. 2023) ................................................7

*United States v. Apollomedia Corp.*, 2000 WL 34524449
    (5th Cir. June 2, 2000) ......................................................................................8

*United States v. Dionisio*, 410 U.S. 1 (1973).............................................................9

*United States v. Grubbs*, 547 U.S. 90 (2006) ..........................................................15

*United States v. Nixon*, 418 U.S. 683 (1974) ...........................................................17

*United States v. Powers*, 885 F.3d 728 (D.C. Cir. 2018)........................................12

*Washington Metropolitan Area Transit Authority v. Amalgamated
    Transit Union, National Capital Local Division 689*,
    531 F.2d 617 (D.C. Cir. 1976)....................................................20, 22, 23, 24

*Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015) ................................................2

*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) ....................................................15

## STATUTORY PROVISIONS

*18 U.S.C. § 2705 ....................................................................................................2, 8

## OTHER AUTHORITIES

Letter from Debra Steidel Wall, Acting Archivist of the United States,
    to Evan Corcoran (May 10, 2022), https://www.archives.gov/
    files/foia/wall-letter-to-evan-corcoran-re-trump-boxes-05.10.
    2022.pdf ...........................................................................................................17

**FILED UNDER SEAL**

Thrush, Glenn, et al., *Justice Dept. Issues 40 Subpoenas in a Week,*
    *Expanding Its Jan. 6 Inquiry*, N.Y. Times (Sept. 12, 2022),
    https://www.nytimes.com/2022/09/12/us/politics/trump-aides-
    jan-6-doj.html ................................................................................................4

13C Wright, Charles Alan & Arthur R. Miller, *Federal Practice and*
    *Procedure: Jurisdiction* § 3533.8 (3d ed. Apr. 2023 Update) ......................21

FILED UNDER SEAL

## SUMMARY OF ARGUMENT

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment Rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Yet the government presses an approach that would authorize prior restraints routinely. It concedes the public already knows it is investigating former President Trump and has sought his confidential electronic communications with close confidants. Thus, it also concedes that the only new fact disclosing the Warrant would reveal is that the government sought his electronic communications through Twitter. The government nowhere concretely connects disclosure of that single fact to even the vague, non-statutory interests in "secrecy" and "integrity" it invokes, let alone to the specific harms it must identify under the Stored Communications Act. Strict scrutiny demands more.

The government's other positions are equally flawed. It identifies no harm that would have arisen from waiting just 48 hours to adjudicate Twitter's First Amendment challenge before compelling production on the Warrant—let alone a harm weighty enough to justify irreparably infringing Twitter's right to speak when it mattered most and precluding any opportunity for timely assertion of executive privilege. Additionally, the government's own authorities confirm that it was unprecedented and unjustified to fine Twitter $350,000 for contempt after it had substantially complied with the Warrant by the court's deadline and required a

**FILED UNDER SEAL**

mere 51 additional hours to clarify the Warrant's scope and produce additional data outside its standard tooling. The Court should reverse.

## ARGUMENT

### I.    THE NON-DISCLOSURE ORDER VIOLATES THE STORED COMMUNICATIONS ACT AND THE FIRST AMENDMENT

As Twitter explained (at 21-22), both the statute and First Amendment place demanding burdens on the government to obtain a non-disclosure order. Section 2705(b) permits non-disclosure orders only if there is reason to believe disclosure of the particular warrant "will result" in one of five enumerated harms. The First Amendment further restricts such orders: as a content-based prior restraint on speech, a non-disclosure order is impermissible unless the government proves it is the least restrictive way to achieve a compelling government purpose. Nothing in the government's brief demonstrates that this is the "rare case[]" satisfying these standards. *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015).[1]

---

[1] The government assumes strict scrutiny applies but muses in a footnote (at 19-20 n.3) that there are "good reasons *not* to apply" it. The Court need not reach that question. Regardless, "an inchoate argument made only in a footnote is forfeited." *Federal Express Corp. v. Department of Commerce*, 39 F.4th 756, 766 & n.2 (D.C. Cir. 2022). Plus, the government is wrong. *See* Twitter Br. 21-22.

**FILED UNDER SEAL**

**A.    The Government Fails To Justify The Non-Disclosure Order Under The Stored Communications Act And First Amendment**

    **1.    The government still fails to explain how disclosure of the Warrant would harm its investigation**

The government concedes several important facts.  It concedes (at 23-25) the public knows about the existence and subject of its investigations and the attendant subpoenas issued to former President Trump's close allies for their electronic communications *with him*—meaning the public already knows the government is specifically collecting his private electronic communications.  *See* Twitter Br. 24-27.  The government identifies (at 23-24) only one fact that would be revealed by disclosing the Warrant:  existence of the Warrant.

Strict scrutiny requires the government to offer "proof" of the "direct causal link between" the non-disclosure order ("Order") and its feared harms.  *Brown v. Entertainment Merchs. Ass'n*, 564 U.S. 786, 799-800 (2011).  But the government never explains how disclosing this one morsel of new—entirely predictable—information would give Mr. Trump (or anyone else) "considerable ammunition" for new obstructive efforts.  U.S. Br. 24.  As Twitter noted (at 25-26), given how much information about the investigation is public, anyone inclined to destroy evidence, intimidate witnesses, or seriously jeopardize the investigation already has ample reason to do so irrespective of the Warrant.

**FILED UNDER SEAL**

The government has no direct response.  Instead, it says (at 23-24) that what is publicly known stems from intrepid journalism and the government's inability to gag grand jury witnesses.  But the reasons why the information is already public are irrelevant when assessing the constitutionally pertinent question:  the effect of further disclosure.  Indeed, as Justice Department policy recognizes, the government's interest in preserving an investigation's secrecy wanes as the investigation "become[s] public" over time, however that happens.  Twitter Br. 6-7.  Regardless, it was the government that generated the publicity by announcing the investigations at press conferences and subpoenaing scores of witnesses, including "blanket[ing] [Mr. Trump's] aides with about 40 subpoenas" in one week.  Thrush et al., *Justice Dept. Issues 40 Subpoenas in a Week, Expanding Its Jan. 6 Inquiry*, N.Y. Times (Sept. 12, 2022).

Moreover, the government cannot explain how disclosing the Warrant could enable Mr. Trump (or anyone else) to interfere with its investigations.  The government undisputedly knew before the Warrant's original deadline that Twitter preserved the responsive materials, *see* U.S. Br. 8, so it cannot have feared spoliation.  JA45-46, 387.  And the government identifies no other evidence the Warrant's disclosure might affect.  Nor does the government claim disclosure would reveal the identity of any witness.

4

**FILED UNDER SEAL**

Without the proof that the First Amendment requires, the government—like

the district court (JA377-378)—claims (at 23 n.4) courts must defer to the

government's judgment that the Order is justified, citing *Holder v. Humanitarian*

*Law Project*, 561 U.S. 1, 33 (2010).  But *Humanitarian Law Project* deferred to

the government only because the case concerned international terrorism.  *See id.* at

36.  Outside that unusual context, strict scrutiny forbids such deference.  *See*

Twitter Br. 24 (citing *Brown*, 564 U.S. at 799-800).

Finally, as Twitter explained (at 26), the fact that so many subpoenas to Mr.

Trump's confidants are public creates a distinct constitutional problem of

underinclusivity because the First Amendment ordinarily forbids content-based

prior restraints where the government has not restricted speech that "create[s] the

same problem[s]."  *Reed v. Town of Gilbert*, 576 U.S. 155, 171-172 (2015).  Such

underinclusivity casts doubt on whether the restraint truly is necessary to achieve a

compelling interest.  The government's only response (at 24-25) is, again, that

there is no legal power to prevent grand jury witnesses from disclosing their

subpoenas.  But that is irrelevant; imposing a non-disclosure order on Twitter

creates a constitutionally intolerable regime under which only one actor is

prohibited from discussing the same subject about which many others are free to

speak.

**FILED UNDER SEAL**

### 2.    The government fails to justify its reliance on shifting and undisclosed rationales

As Twitter explained (at 28-30), the district court's and the government's reliance on shifting and secret rationales undermined the Order procedurally and substantively.  The government attempts first to minimize the inconsistencies.  As to flight risk, the government disclaims (at 34) "rel[iance]" on it, but the district court signed an order reciting it, JA1, and the government abandoned it not when challenged by Twitter (JA178-179), but after the court agreed with Twitter that it was meritless (JA195).  As to other rationales, the government accuses (at 34) Twitter of "speculat[ing]" about "shift[s]" and "inconsistency," and claims (at 32) that it alerted Twitter to its arguments' "general purport."  But the government does not dispute that the district court denied Twitter's motion based on two rationales—threats to law enforcement (JA377) and exposure of future investigatory techniques (JA373)—absent from the Order and presented only *ex parte*.  That the government's appellate brief shifts course again by saying nothing about investigatory techniques and referring only obliquely to threats to law enforcement (at 27) highlights the problems.

Changing tack, the government excuses (at 33-34) its reliance on shifting and secret rationalizations on the ground that non-disclosure orders should be exempted from the procedural safeguards established in *Freedman v. Maryland*, 380 U.S. 51 (1965).  But basic safeguards must accompany *any* prior restraint

6

because, as *Freedman* said, "*any* system of prior restraints … bear[s] a heavy presumption against its constitutional validity."  380 U.S. at 57 (cleaned up) (emphasis added).  Even courts that have not required *Freedman*'s specific procedures have still required procedures "which were robust and which resembled the *Freedman* requirements in key respects."  *Twitter, Inc. v. Garland*, 61 F.4th 686, 702 (9th Cir. 2023).  At minimum, that means "an adversary proceeding," *Freedman*, 380 U.S. at 58, without "*post hoc* rationalizations" or "shifting … criteria," *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 758 (1988)—safeguards absent here.

> ### 3.   The government has no defense to its impermissible reliance on generalized, non-statutory harms

Twitter showed (at 27-28) that the government's heavy reliance on non-statutory, highly generalized interests in investigative "secrecy" and "integrity" could not satisfy the First Amendment or the Act.  The government's responses are not only meritless but troubling.

a.    The government does not deny that its generalized interests are insufficient to satisfy the Act.  Instead, it retreats to various procedural defenses, all incorrect.  For the first time, the government contends (at 16) Twitter "lacks standing" to assert its statutory challenge.  That position must be rejected because it was forfeited and would render the Act unconstitutional by depriving Twitter of the constitutionally mandatory safeguards against prior restraints just discussed:

The First Amendment requires a meaningful opportunity to challenge the actual basis of any prior restraint, including under the Act.  Accordingly, courts have consistently reviewed challenges to the government's compliance with Section 2705(b)'s factors.  *E.g.*, *United States v. Apollomedia Corp.*, 2000 WL 34524449, at *3 (5th Cir. June 2, 2000) (per curiam); *In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9287146, at *6 (N.D. Tex. Sept. 22, 2017).

Next, the government contends (at 30-31) that a statutory challenge would not make "practical sense" because Twitter lacks access to the government's *ex parte* submissions.  Again, Twitter is constitutionally entitled to access sufficient to facilitate meaningful adversarial process.  And Twitter can and does explain (at 20-30) why the government's rationales are facially implausible or not cognizable under the Act regardless of the government's evidence.

Finally, the government asserts (at 29 n.8) that Twitter forfeited any statutory challenge by raising it for the first time in its reply in support of its motion to vacate the Order.  Twitter's motion challenged the government's reliance on the Section 2705(b) rationales invoked in the Order, JA13-14, but Twitter had no occasion to challenge the government's reliance on non-statutory factors until the government actually relied on them—which it did for the first time in its opposition to that motion, JA287.  Twitter duly contested the sufficiency of

**FILED UNDER SEAL**

the non-statutory rationales under the Act in its reply to that opposition.  JA310-313.

b.    In any event, Twitter concededly has standing to challenge reliance on "secrecy" and "integrity" under the First Amendment.

As Twitter explained (at 28), recitation of such vague interests cannot satisfy the constitutional dictate that content-based prior restraints meet narrow, objective, and definite standards.  The government could almost always recite such interests, and thus the First Amendment's protections would be virtually meaningless— especially if, as here, those interests are accepted absent any concrete connection between disclosure and harm.  *See supra* pp.3-4.  Rather, prior restraints are permitted only where "the substantive evil [is] extremely serious and the degree of imminence extremely high."  *Landmark Commc'ns, Inc. v. Virginia,* 435 U.S. 829, 845 (1978).  The government's conclusory assertions fail that standard.

Nor does protecting the "secrecy" and "integrity" of the grand jury justify the Order, as the government suggests (at 21-22).  Convening a grand jury does not "draw a veil of secrecy" over every investigative action occurring in parallel. *Bartko v. Department of Justice*, 898 F.3d 51, 73 (D.C. Cir. 2018) (cleaned up). Further, even "grand juries must operate within the limits of the First Amendment," *United States v. Dionisio*, 410 U.S. 1, 11 (1973), and accordingly courts have struck down laws that too sweepingly restrain grand jury witnesses'

**FILED UNDER SEAL**

speech, which is the closest analogue to what the Order does here.  *E.g.*,

*Butterworth v. Smith*, 494 U.S. 624 (1990).  And if the Supreme Court has been

somewhat more receptive to such justifications in the grand jury context, that was

only because of a pre-Founding tradition of secrecy unique to grand jury

proceedings.  *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9

(1979).  There is no such tradition regarding search warrants issued against

electronic communications providers.

### B.    The Government Fails To Show The Order Is Narrowly Tailored

In its opening brief (at 31-34), Twitter showed that the Order was not

narrowly tailored because there are at least two less-restrictive alternatives (plus

combinations thereof):  (1) disclosing only the fact of the Warrant or the Warrant

and Attachment A but not Attachment B; and (2) disclosing only to Mr. Trump's

lawyer or to one of seven representatives designated to act on his behalf.

The government's argument (at 26) that the Order is "consistent with cases

permitting protective orders in civil" discovery is just an effort to smuggle

intermediate scrutiny from a distinct constitutional context.  *See Seattle Times Co.*

*v. Rhinehart*, 467 U.S. 20, 33 (1984).  Here, unlike in *Seattle Times*, the

government initiated contact with Twitter; Twitter is not seeking to wield the

government's power (e.g., the coercive tool of civil discovery) to obtain

information.  Regardless, the government's effort to reject Twitter's proposed alternatives would fail even under less exacting scrutiny.

The government concedes that the district court failed to address the first alternative.  Instead, the government says (at 27) Twitter failed to raise it in its vacatur motion.  Not so:  Twitter's motion proposed "notify[ing] just its user of the Warrant," JA16, and explained this meant "notify[ing] its user … of the *existence* of the Warrant," *id.* (emphasis added); JA14.  And the government's claims (at 27) that disclosing even such limited information would not "adequately protect [the] investigation" and "could precipitate violence" are facially implausible.  Twitter explained (at 31) that those claims are premised on the disclosure of *Attachment B*, which is *not* contemplated by this proposed alternative—and the government has no answer.

As to Twitter's second alternative, the government's contention (at 28) that "some" of the designated representatives are objectionable concedes that "some" others are not, and that is enough; Twitter did not propose disclosure to *all* the representatives.  The government then argues (at 28-29) that extending the Order to prevent the recipient representative from disclosing to Mr. Trump is a separate alternative that is both forfeited and not statutorily authorized.  Both objections are incorrect.

**FILED UNDER SEAL**

First, that feature is part-and-parcel of the proposal to allow Twitter to disclose to a representative.  Twitter identified the option of extending the Order to the representative in response to the government's suggestion that nothing would stop the representative from just telling Mr. Trump.  JA290-291.  That is enough to preserve the argument; Twitter was not required in its opening motion to anticipate the government's every possible objection.  *See United States v. Powers*, 885 F.3d 728, 732 (D.C. Cir. 2018).

Second, Twitter already cited (at 33) precedent recognizing the authority to extend the Order to the representative, which the government ignores.  At a minimum, the All Writs Act supplies sufficient authority, as courts have recognized in the context of grand jury subpoenas.  *See In re United States for an Order Pursuant to 28 U.S.C. § 165J(a)*, 2017 WL 3278929, at *1 (D.D.C. July 7, 2017).

Finally, contrary to the government's assertion (at 28-29) that the representative could not litigate an assertion of executive privilege without first informing the former President, as Twitter explained (at 32), Mr. Trump has already granted the designated representatives sufficient authority to do so—authorizing them to act on his behalf "in *all* respects that pertain to the records of [his] presidency."  JA135 (emphasis added).

II.    **THE GOVERNMENT FAILS TO JUSTIFY THE DISTRICT COURT'S DECISION ORDERING PRODUCTION PRIOR TO RESOLVING TWITTER'S FIRST AMENDMENT CHALLENGE**

A.    **The Government Nowhere Disputes The Relationship Between Twitter's Speech Interest And The Timing Of The Warrant**

As Twitter explained (at 35-42), the district court's refusal to address Twitter's First Amendment claim before compelling compliance with the Warrant denied Twitter the ability to speak when its speech mattered most. The government rests (at 39) on the formal "separate[ness]" of the Warrant and Order while disregarding their obvious connection: the value of Twitter's speech was to enable the listener to mount a viable constitutional challenge to the Warrant. The government says nothing about Twitter's ample case law stating that, when a speaker aims to facilitate a third party's action before a certain event, a prior restraint must be analyzed in light of that event's timing. *See* Twitter Br. 35-37. Nor does the government address the many examples Twitter cited (at 41-42)—including the Presidential Records Act—that combine notice and delayed production to protect third-party interests.[2]

---

[2] Even if the district court's order would ordinarily be reviewed for abuse of discretion, *see* U.S. Br. 35 & n.9, here it is reviewed de novo because it presents a First Amendment issue. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (factual findings "[o]rdinarily" reviewed for clear error require "independent examination of the factual record … when First Amendment rights are implicated").

FILED UNDER SEAL

Instead, the government's primary response is to highlight (at 40-42) supposed "practical" and "logistical" problems with resolving the First Amendment challenge first. But, the government never explains how the additional 48 hours Twitter proposed to adjudicate the First Amendment challenge (Br. 34) would have harmed the government's interests, let alone how such harm could outweigh the significant intrusion on Twitter's rights. *See Guffey v. Mauskopf*, 45 F.4th 442, 450 (D.C. Cir. 2022) ("logistical concerns" could not "justify a 'heavy burden' on 'First Amendment interests'"). And the government's reliance on hypotheticals (Br. 40-41) elides the distinctly compelling features of this case: Twitter's speech concerned a potential assertion of executive privilege over the former President's private communications (*infra* pp.16-18) where (1) the investigations were unusually public (*supra* pp.3-4), (2) the non-disclosure order invoked facially dubious grounds, and (3) the constitutional challenge would have necessitated *de minimis* additional time. Requiring a district court, on these facts, to resolve a First Amendment challenge before ordering production does not mean the same would be required where, unlike here, the privilege at issue is less time-sensitive, the investigation is less public, the relevant order contains no obvious defects, or the government can articulate a concrete need for greater speed. Indeed, even in the case the government cites (at 40) for its parade of delay-induced dangers, the court decided Google's challenge to the non-disclosure order before

14

compelling production.  *See Google LLC v. United States*, 443 F. Supp. 3d 447,

455 (S.D.N.Y. 2020).

Finally, the government's assertion (at 46-47) that Twitter cited no authority

requiring pre-enforcement review ignores the cases Twitter cited (at 41) permitting

pre-*review* challenges to search warrants, including, like here, where necessary to

protect a third party's privilege.  *See In re Search Warrant Issued June 13, 2019*,

942 F.3d 159, 183 (4th Cir. 2019).  There is no material difference between pre-

enforcement and pre-review challenges; either way, the point is to afford an

opportunity for challenges before the privilege is spoiled and the speech

undermined.  Indeed, Twitter offered to produce the data to the court to be held

pending adjudication of its First Amendment challenge.  *See* Twitter Br. 14.

The government also suggests (at 46-47) *Zurcher v. Stanford Daily*, 436

U.S. 547, 565-567 (1978), supports its contention that the basic procedures for

obtaining a warrant adequately protect First Amendment rights.  *Zurcher* shows the

opposite:  Where a prior restraint is challenged, those basic procedures do *not*

suffice.  *Id.* at 566-567 (rejecting pre-production challenge because warrant

"carrie[d] no realistic threat of prior restraint"); *accord United States v. Grubbs*,

547 U.S. 90 (2006) (involving no prior restraint).

**FILED UNDER SEAL**

**B.    The Government Fails To Show That Mr. Trump Lacked A Colorable And Time-Sensitive Privilege Claim**

As explained (Br. 37-38), Twitter's speech concerned a colorable claim of executive privilege that would be irreparably undermined by its production to investigators.  The government does not deny the time-sensitive nature of the opportunity to assert the privilege.  And it admits (at 46) the production included 32 direct message threads—precisely the sort of private communications triggering a potential privilege claim.  Instead, the government denies only that there was a colorable privilege claim, baldly suggesting (at 42) that executive privilege cannot be asserted by a former President and then arguing (at 43) that executive privilege cannot be asserted against other executive officials because the privilege is "rooted in the separation of powers."  But there is precedent supporting a privilege assertion in these circumstances and none foreclosing it.

The government dismisses (at 43-44) *Nixon v. Administrator of General Services*, 433 U.S. 425, 448 (1977), because there the privilege assertion by a former President against the Executive Branch was "[un]successful[]."  But that confuses whether the privilege applies and can be asserted with whether it was overcome by countervailing interests under the circumstances.  Specifically, the Court held on those facts that the assertion "yield[ed]" to Congress's goal of preserving executive materials, after analyzing the "minimal nature of the intrusion into … confidentiality" and the "safeguards built into the" statute.  433 U.S. at 454.

16

FILED UNDER SEAL

If the government were correct that executive privilege could not be asserted by a former President or to prevent intra-branch disclosures, there would have been no reason to consider the strength of Congress's interests or the extent of the intrusion. Whether a privilege assertion by Mr. Trump is overcome by the government's interests or safeguards is precisely the issue that Twitter's disclosure to Mr. Trump would have facilitated, but the court's ruling foreclosed.

Likewise, the fact that the Archivist recently rejected Mr. Trump's executive privilege assertion directly against the incumbent President over documents belonging to and already in the possession of the executive branch, *see* U.S. Br. 44-45, hardly resolves the question. To the contrary, the Archivist relied on those specific facts and declined to decide that a former President could never assert privilege against the Executive Branch. Letter from Debra Steidel Wall, Acting Archivist of the United States, to Evan Corcoran 3 (May 10, 2022).

The government also disregards Twitter's point (Twitter Br. 39) that the privilege is *also* meant to ensure full and frank communication between the President and the President's advisors, which is "fundamental to the operation of Government." *United States v. Nixon*, 418 U.S. 683, 708 (1974). As Twitter explained (at 39), the prospect that a prosecutor, especially under a different administration, could seize presidential communications could well chill those candid discussions. The government offers no response.

FILED UNDER SEAL

At most, the applicability of executive privilege here is unsettled—and that *favors* giving the former President (or his representative) an opportunity to air the issue.  The prospect that questions about the availability of executive privilege may be resolved—or ignored—without such adversarial testing gravely threatens Presidents' ability to obtain candid advice through confidential communications.

In any event, as Twitter explained (at 39-40)—and the government does not contest—the Warrant *did* implicate separation of powers because former President Trump's private communications may well be presented to the grand jury.

Finally, the government claims (at 45) Twitter "offered no support" for the "speculative premise" that the private messages Mr. Trump sent during his Presidency "could contain" privileged presidential communications.  But as Twitter explained (at 12), Mr. Trump relied on Twitter heavily "for conducting official business."  *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 232 (2d Cir. 2019), *judgment vacated on other grounds sub nom. Biden v. Knight First Amend. Inst.*, 141 S. Ct. 1220 (2021).  Likewise, the National Archives treats Mr. Trump's Twitter account as a repository of official records. *See id*.  It is at least plausible he used Twitter's private messaging for official confidential communications—the sort that could trigger executive privilege.

FILED UNDER SEAL

### C.    Twitter's Challenge To The Underlying Order Is Not Moot

As Twitter explained (at 42), and the government concedes, "the district court's refusal to postpone compliance with the Warrant while adjudicating Twitter's First Amendment challenge formed the basis for the contempt fines against Twitter."  And the government agrees (at 48) this Court can remedy that erroneous contempt order by vacating the sanctions.  The district court's refusal to postpone compliance thus presents a live dispute:  That decision injured Twitter by leading to sanctions against it, and those sanctions may be undone.  It is irrelevant that a different injury the court's decision caused—Twitter's compelled premature transfer of Mr. Trump's communications—might be irremediable.  *See* U.S. Br. 38-39.  Even where a party has already "turned over … [the] documents" demanded by a court order, a court may "consider the merits" of that underlying order so long as "monetary fees" for a resulting contempt order remain at issue.  *In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 194-195 (4th Cir. 2010).  That is the case here, and Twitter's challenge is therefore not moot.

The government cites (at 36-37) several cases for the proposition that complying with a production order moots a challenge to a contempt finding premised on that order.  But nearly all lacked a still-contested monetary sanction.  The presence of such a sanction is a critical distinction—as Twitter explained (at 43-44), and the government does not answer.  Only two cases in the government's

19

brief involved such a sanction. One is *In re Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d 670, 672 (11th Cir. 1992), which Twitter explained (at 44) is a misguided outlier. The other is *Washington Metropolitan Area Transit Authority v. Amalgamated Transit Union, National Capital Local Division 689*, 531 F.2d 617 (D.C. Cir. 1976), which the government misreads and actually confirms that this appeal is *not* moot. There, two orders were premised on an underlying restraining order: a preliminary injunction and a contempt judgment. *See id.* at 620. The court held that the appeal of the *injunction* was moot because the enjoined activity (a strike) had ended pursuant to the parties' agreement. *See id.* The appeal of the contempt judgment and its associated sanction, however, was not moot. *See id.* at 620-622.

The government embraces (at 39 n.10) the extraordinary view that, to avoid mootness, Twitter "had to disobey the Show Cause Order," "be held in contempt," incur bankruptcy-threatening sanctions, and then hope for a stay of the sanctions' accrual. That would, as Twitter explained (at 44-45), wreak havoc. It would prolong the very investigatory delay that concerns the government and force companies like Twitter to choose between their constitutional rights and financial ruin.

In any event, as Twitter explained (at 45), this Court can exercise jurisdiction under the exception to mootness for issues "capable of repetition, yet

evading review." The government's only response (in a footnote at 39 n.11) is that it "does not intend to seek another search warrant and nondisclosure order for the former President's Twitter account." That does not defeat the exception. Twitter need show only a "reasonable likelihood" of being "subject[ed] to the same legal wrong," not that "the very same facts" will recur. *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 325 (D.C. Cir. 2009). And as Twitter explained (at 45-46), and the government does not deny, the company can reasonably expect to again be unable to fully litigate a request to hold warrant production pending challenge to an accompanying non-disclosure order. Therefore, the exception applies. *See* 13C Wright & Miller, *Federal Practice and Procedure: Jurisdiction* § 3533.8 (3d ed. Apr. 2023 Update) (mootness exception covers "[g]overnment investigations" that "reflect patterns of recurring behavior").

## III. THE GOVERNMENT CANNOT PERSUASIVELY DEFEND THE DISTRICT COURT'S ERRONEOUS ASSESSMENT OF THE CONTEMPT SANCTION

### A. Like The District Court, The Government Fails To Account For Twitter's Substantial Good-Faith Compliance With The February 7 Show-Cause Order And Impermissibly Relies On Conduct Prior To February 7

The government does not dispute that 1) Twitter substantially complied with the Court's Show-Cause Order by the February 7 deadline; 2) Twitter demonstrated good faith in its post-February 7 compliance efforts; and 3) the district court based the contempt sanction on Twitter's conduct *before* the court

FILED UNDER SEAL

issued the February 7 order.  JA272, 387-389; U.S. Br. 49.  These facts are

dispositive.  *Washington Metro.*, 531 F.2d at 621.  As Twitter explained (Br. 49-

53), the district court's reliance on pre-February 7 conduct was erroneous as a

matter of law and therefore requires the sanction's vacatur.  *See Pullman-Standard*

*v. Swint*, 456 U.S. 273, 284-285 (1982) (factual finding "made under an erroneous

view of controlling legal principles" is "clearly-erroneous").[3]

The government, like the district court, insists (at 49-50) Twitter's pre-

February 7 conduct bears on its good faith in complying with the February 7 order.

Specifically, it faults Twitter (at 50, 54) for "not identify[ing] th[e] technical issues

or otherwise alert[ing] the Government about its inability to comply fully until

after the February 7 deadline" and accuses Twitter of using its First Amendment

concerns "as an excuse not to comply with … the Warrant."  According to the

government (at 50), Twitter should have done more before February 7 because it

---

[3] Citing *Food Lion, Inc v. United Food & Commercial Workers International*
*Union, AFL-CIO-CLC*, 103, F.3d 1007 (D.C. Cir. 1997), the government questions
(at 48) whether the good-faith-and-substantial-compliance defense "survives" in
this circuit.  That is wrong.  *Washington Metropolitan* remains "circuit precedent"
because it has not been "overruled either by an *en banc* court or the Supreme
Court."  *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005).  The remark in
*Food Lion* that "one [district] judge" suggested that *National Labor Relations*
*Board v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981), casts doubt
on *Washington Metropolitan*, 103 F.3d at 1017 n.15, is irrelevant because *Blevins*
did not address *Washington Metropolitan* or the good-faith-and-substantial-
compliance defense.  *See* 659 F.2d at 1184.

**FILED UNDER SEAL**

would have been required to produce the Warrant returns even had the district court "resolved the separate [constitutional] challenge in Twitter's favor."

The government is wrong that Twitter would necessarily have had to produce on the Warrant, as adjudicating any executive privilege claim could have altered Twitter's production obligations. Regardless, the pre-February 7 conduct is legally irrelevant. As Twitter explained (Br. 40), and the government acknowledges (at 55), other than compensation (irrelevant here), the sole purpose of civil contempt sanctions is to "exert a constant coercive pressure" to comply with the order and therefore may not be "imposed retrospectively for a completed act of disobedience." *International Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-829 (1994) (cleaned up). Rather, the court must focus on the contemnor's "compliance efforts" with the *contempt order*, not on "events that occurred before the fine started to accrue." *Washington Metro.*, 531 F.2d at 621.

The government's sole cited case to the contrary involved a contempt sanction where the district court "placed great weight on the long history of the discovery dispute." *In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822-823 (D.C. Cir. 2009). The government argues (at 51) that *Fannie Mae* suggests "courts may permissibly consider the contemnor's conduct over the full course of the litigation … when assessing whether the contemnor has carried its burden." That is wrong.

**FILED UNDER SEAL**

*Fannie Mae*'s statement about the "long history of the discovery dispute" referred entirely to the contemnor's conduct *after* the relevant order (a 5-month-old discovery order) was issued. 552 F.3d at 822. Neither the district court nor this Court addressed pre-order conduct in evaluating whether the contemnor had substantially complied in good faith.[4]

The government suggests (at 53) *Washington Metropolitan* is inapposite because it involved "the difficulty in coordinating a return to work for a large-scale union in an era with communication unlike the present day." But those facts did not affect either the district or appellate court's evaluation of good-faith substantial compliance. This Court instead explained that the relevant error was, as here, the district court's focus on "events that occurred before the fine started to accrue." 531 F.2d at 621.[5]

---

[4] *Fannie Mae* also involved the second stage of contempt proceedings: determining whether the contemnor's good-faith compliance with the discovery order (issued at stage one) could excuse contempt. Here, as in *Washington Metropolitan*, we are at the third stage: determining whether Twitter's good-faith compliance with the *contempt order* (issued at stage two for noncompliance with the Warrant), should mitigate "the threatened penalty." *Blevins*, 659 F.2d at 1185.

[5] The government also concedes (at 53) that *Washington Metropolitan* requires courts to exhibit "[f]lexibility" when determining contempt sanctions and to consider any "complexit[ies]," "ambiguities," and "difficulties" involved in compliance, but ignores that the district court failed to do so. (First brackets in original.) The government cannot cure that error by hypothesizing how the district might have applied those factors.

FILED UNDER SEAL

In any event, the government and district court have mischaracterized Twitter's *pre*-February 7 attempts to comply with the Warrant and secure necessary clarifications regarding its scope while simultaneously litigating its constitutional claims. Upon learning of the Warrant on January 25, Twitter immediately directed preservation of all responsive data within its standard tooling and, on January 31 (a date the government agreed to four days prior), alerted the government to its First Amendment concerns. JA50-51. On February 1, Twitter informed the government it would need to clarify "technical issues" with the Warrant (i.e., its scope) so that Twitter would be able to "respond[]." JA276-277. After the government rebuffed that request for clarification, Twitter explained in its February 2 motion to vacate that it believed the Order was unconstitutional but had nevertheless preserved responsive data within its standard tooling. JA8, 14. And on February 5, Twitter offered to produce responsive data to be held by the court without review pending litigation, but the government refused. JA42. Ultimately, because of Twitter's pre-February 7 efforts, and consistent with its statement to the court that it "believe[d] it was prepared" to produce, Twitter produced all responsive data within its standard tooling within two hours of the February 7 order (by the 5pm deadline). JA210, 274. And once the government finally clarified the Warrant's scope—only after the February 7 deadline passed and the district court intervened at Twitter's urging on February 9—Twitter went

25

**FILED UNDER SEAL**

to great lengths to produce the remaining data from outside its standard tooling, even as the government provided additional "clarifications" through late afternoon on February 9.  JA276-277; Twitter Br. 13-15, 47-48.

Although the government acknowledges Twitter's February 1 attempt to discuss the Warrant's technical issues, it improperly and inaccurately faults Twitter (at 50, 57) for failing to more aggressively "pursue negotiations" and accuses Twitter's "lawyers" of slowing down its "engineers."  The government, however, omits its own refusal to negotiate with Twitter at each turn, and like the district court, ignores Twitter's other compliance efforts prior to February 7.  As shown, Twitter litigated its constitutional claims while simultaneously preparing production and unsuccessfully attempting to elicit necessary clarifications from the government.  Even if this conduct were legally relevant, the record demonstrates that Twitter did its best to clarify and comply "prior to any filing in this case."  JA267; *see Search Warrant Issued June 13, 2019*, 942 F.3d at 182 ("We do not fault the Law Firm for seeking a negotiated resolution [and] … will not reward the government for ignoring those efforts.").

### B. The Government Concedes The District Court Sanctioned Twitter For Its Assertion Of Legal Rights

The government concedes (at 54) the district court committed clear error if it "*punished* Twitter for even trying to protect its constitutional rights."  And the government concedes (at 52) the district court assessed sanctions based on "the

FILED UNDER SEAL

legal justifications Twitter had relied on to refuse compliance with the Warrant," i.e., Twitter's argument that the First Amendment required resolution of its challenge to the Order before Warrant production. Those concessions together require vacatur of the sanctions. *See* Twitter Br. 54-55; *Shelton v. United States*, 404 F.2d 1292, 1299-1300 (D.C. Cir. 1968) (party suspecting production order might violate constitutional rights may "avoid contempt for complete noncompliance" by "inform[ing]" ordering authority "of [that] position").

Citing nothing, the government claims (at 54) the court's reliance on Twitter's assertion of its legal rights as a basis for sanctions "is not equivalent to punishing Twitter for raising such a claim in the first place." That makes no sense. Basing a contempt sanction on an assertion of a colorable constitutional right *punishes* that assertion. Much like the district court's dismissive treatment of Twitter's constitutional claims, *see* Twitter Br. 14-15 (citing examples), the government's position is improper and only serves to chill future defense of constitutional rights.

### C. The Government's Examples Of "Comparable" Sanctions Further Demonstrate This Sanction Was Unprecedented And Unreasonable

In its opening brief, Twitter explained that three features of the contempt sanction made it excessive and therefore impermissibly punitive: the sanctions schedule—$50,000 per day, doubling daily; the amount of the sanction ultimately

imposed—$350,000; and the gravity of non-compliance for which it was

imposed—a mere 51 hours during which the court determined it was "clear"

Twitter had been "working hard" to comply.  JA272; *see* Twitter Br. 55-59; *supra*

pp.25-26.  In response, and citing nothing, the government asserts (at 56) the

sanction was reasonable because it was "commensurate with the gravity of

Twitter's non-compliance and Twitter's ability to pay."

     "One of the best tests of reasonableness is a comparison," *Aluminum

Company of America v. Interstate Commerce Commission*, 581 F.2d 1004, 1008

(D.C. Cir. 1978), and like the cases Twitter cited (Br. 56-58), the government's

cases show that the sanction wildly exceeds ordinary practice.  The only

"escalating" penalty it finds was $1,000 per day for the first month, $2,000 per day

for the second, and so on.  *Pigford v. Veneman*, 307 F. Supp. 2d 51, 57 (D.D.C.

2004), *cited in* U.S. Br. 55-56.  At that rate, the *Pigford* sanction would have taken

almost 4.5 months of non-compliance to equal the $350,000 sanction imposed on

Twitter for 51 hours.  All other sanction schedules the government cites increased

linearly, and they too were vastly smaller.  The largest was "a daily imposition of a

$50,000 fine … for multi-billion-dollar banks."  *In re Grand Jury Investigation of

Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, 2019 WL 2182436, at

*5 (D.C. Cir. Apr. 10, 2019), *cited in* U.S. Br. 56.  That schedule would have taken

seven days to equal the $350,000 penalty imposed on Twitter; after seven days,

**FILED UNDER SEAL**

Twitter's sanction would have been $6.35 million—and still increasing exponentially.

As for Twitter's supposed ability to pay, the government does not suggest Twitter has greater financial resources than the "multi-billion dollar banks" subjected to the far less onerous sanction in *Grand Jury*.  Further, the government does not deny that Twitter has not turned a profit since 2019.  Twitter Br. 57.  Nor is the personal wealth of Twitter's owner relevant.

Finally, the government does not deny that, as the district court found, Twitter "work[ed] hard" to produce the remaining documents after the February 7 order, JA272, 387, nor suggest there was anything more Twitter could have done after February 7 to comply faster—particularly given the government's and district court's necessary clarifications through February 9, JA272, 276-277.  Rather, the government again faults (at 57) Twitter for *pre*-February 7 conduct, which, as explained, is impermissible and inaccurate, *supra* pp.21-26.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment, vacate the Non-Disclosure Order, and vacate the contempt sanction.

FILED UNDER SEAL

Respectfully submitted,

s/  Ari Holtzblatt

ARI HOLTZBLATT (DC BAR NO. 1009913)
BENJAMIN POWELL (DC BAR NO. 464823)
WHITNEY RUSSELL (DC BAR NO. 987238)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

GEORGE P. VARGHESE (MASS. BAR NO. 706861)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Counsel for X Corp., successor in interest to
Appellant Twitter, Inc.*

May 5, 2023

**FILED UNDER SEAL**

## CERTIFICATE OF COMPLIANCE WITH
## TYPEFACE AND WORD-COUNT LIMITATIONS

Pursuant to Federal Rule of Appellate Procedure 32(g) and D.C. Circuit Rule 32(e)(2)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.    Exclusive of the exemption portions of the brief, as provided in Federal Rule of Appellate Procedure 32(f), the brief contains 6,498 words.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Office for Microsoft 365 MSO in 14-point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

s/  Ari Holtzblatt
ARI HOLTZBLATT

May 5, 2023

**FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2023, I caused the foregoing to

be served by email upon:

James I. Pearce
Assistant Special Counsel
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
(202) 840-7000

s/  Ari Holtzblatt

ARI HOLTZBLATT