**ARGUED ON MAY 19, 2023**

No. 23-5044

In the

# United States Court of Appeals
## for the District of Columbia Circuit

————————————

IN RE: SEALED CASE

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
District Court No. 22-sc-2144 (Howell, C.J.)

——————

RESPONSE FOR THE UNITED STATES
IN OPPOSITION TO REHEARING EN BANC

——————

J.P. COONEY
Deputy Special Counsel

RAYMOND N. HULSER
Counselor to the Special Counsel

CECIL W. VANDEVENDER
Assistant Special Counsel

JACK SMITH
Special Counsel

THOMAS P. WINDOM
Senior Assistant Special Counsel

JAMES I. PEARCE
Assistant Special Counsel
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. B-206
Washington, D.C. 20530
(202) 705-9879
jip@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................ii

GLOSSARY OF ABBREVIATIONS.............................................................iv

INTRODUCTION ........................................................................................ 1

BACKGROUND ......................................................................................... 2

ARGUMENT ............................................................................................... 5

    Rehearing en banc is unwarranted. ........................................................ 5

        A.    The Court's factbound rejection of Twitter's proposed alternative to nondisclosure was correct and does not conflict with precedent. ..................................................... 6

        B.    The Court's determination that the procedures in *Freedman v. Maryland* do not apply to a nondisclosure order was correct and consistent with similar decisions of other courts of appeals. .............................................. 11

CONCLUSION............................................................................................ 19

CERTIFICATE OF COMPLIANCE ........................................................... 20

CERTIFICATE OF SERVICE ................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Freedman v. Maryland,*
    380 U.S. 51 (1965) ................................................................ 1, 4-5, 11

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.,*
    751 F.3d 629 (D.C. Cir. 2014) ................................................. 5

*In re National Security Letter,*
    33 F.4th 1058 (9th Cir. 2022) ........................................ 12, 14-15

*In re Sealed Search Warrant & Application for a Warrant by Tel. or Other*
    *Reliable Elec. Means,* 11 F.4th 1235, 1238-39 (11th Cir. 2021),
    *cert. denied,* 143 S. Ct. 88 (2022) .............................................. 17

*In re Search Warrant (Sealed),*
    810 F.2d 67 (3d Cir. 1987) ........................................................ 18

*In re Search Warrant Issued June 13, 2019,*
    942 F.3d 159 (4th Cir. 2019) .................................................... 17

*John Doe, Inc. v. Mukasey,*
    549 F.3d 861 (2d Cir. 2008) .......................................... 11, 14-17

*Matter of Subpoena 2018R00776,*
    947 F.3d 148 (3d Cir. 2020) ................................................. 4, 9-10

*Seattle Times Co. v. Rhinehart,*
    467 U.S. 20 (1984) .................................................................. 13

*Thomas v. Chicago Park Dist.,*
    534 U.S. 316 (2002) ................................................................ 12

*Twitter, Inc. v. Garland,*
    61 F.4th 686 (9th Cir. 2023) ......................................... 12-13, 15

*United States v. Grubbs,*
    547 U.S. 90 (2006) .................................................................. 10

*United States v. Johnston*,
    268 U.S. 220 (1925) ................................................................... 9

*Williams-Yulee v. Fla. Bar*,
    575 U.S. 433 (2015) ............................................................ 4, 10

## Statutes and Rules

18 U.S.C. § 2705 ................................................................. 2, 8, 16

18 U.S.C. § 2709 ........................................................................ 14

Stored Communications Act, Pub. L. No. 99-508, 100 Stat. 1848
    (1986) ........................................................................................ 2

Fed. R. App. P. 35 ...................................................................... 5

## Other Authorities

U.S. Dep't of Justice, *Seeking Enterprise Customer Data Held by Cloud
    Service Providers* (Dec. 2017) ................................................. 8

U.S. Dep't of Justice, *Supplemental Policy Regarding Applications for
    Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (May 27, 2022) ................... 8

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Add. | Addendum to Twitter's Rehearing Petition |
| Amicus Br. | Amicus Brief filed by the Electronic Frontier Foundation |
| FBI | Federal Bureau of Investigation |
| Gov. Br. | Appellee Brief filed by the Government |
| JA | Joint Appendix |
| NDO | Nondisclosure order |
| NSL | National Security Letter |
| Pet. | Petition for En Banc Rehearing |

## INTRODUCTION

In a unanimous opinion, this Court affirmed the district court's decision that a nondisclosure order issued with a search warrant for a Twitter account used by former President Donald J. Trump furthered a compelling governmental interest in the secrecy and integrity of an ongoing investigation and was narrowly tailored to further that compelling interest. Add.19-25. The Court also held that procedural protections first announced in a case involving film censorship, *see Freedman v. Maryland*, 380 U.S. 51 (1965), did not require the district court to resolve Twitter's First Amendment challenge to the nondisclosure order before requiring Twitter to comply with the search warrant. Add.25-29. Those holdings were correct and consistent with decisions of other courts.

The two issues on which Twitter seeks en banc rehearing do not merit further review. First, Twitter contends (Pet.7-13) that the Court mandated a categorical rule that disclosure to an account holder's trusted representative could never serve as an alternative to a nondisclosure order. In fact, the Court's rejection of Twitter's proposed alternative as unworkable reflected a case-specific application of the narrow-tailoring component of strict-scrutiny analysis that neither merits reconsideration nor forecloses Twitter or other entities subject to a nondisclosure order from seeking similar relief in future cases. Second,

Twitter argues (Pet.13-18) that the Court incorrectly held that *Freedman*'s procedural protections were inapplicable.  With the partial exception of a Second Circuit decision considering distinct—and subsequently amended—nondisclosure requirements for a different type of legal process than the search warrant involved here, *Freedman* has been limited to licensing schemes and censorship regimes, and the Court correctly rejected Twitter's "underdeveloped" (Add.26) argument to apply it here.  The petition for en banc rehearing should be denied.

## BACKGROUND

The Stored Communications Act, Pub. L. No. 99-508, 100 Stat. 1848 (1986), provides that when a court issues a search warrant to an electronic communications service provider, the government may also seek an order requiring the provider "not to notify any other person of the existence of the warrant" for such period as the court deems appropriate, if the court finds, *inter alia*, that disclosure would result in witness intimidation or otherwise seriously jeopardize an investigation.  18 U.S.C. § 2705(b).  Here, the district court issued a search warrant for information associated with a Twitter account belonging to the former President and an accompanying order ("nondisclosure order" or "NDO") under Section 2705(b) directing Twitter not to disclose "the existence or content of the Warrant" for 180 days.  JA2.  Twitter failed to comply with the

warrant and moved to vacate or modify the NDO on the ground that it violated Twitter's First Amendment rights.     JA3-19.     Twitter argued that the Government had failed to demonstrate a compelling interest supporting nondisclosure, that "unique and important executive privilege considerations" supported its First Amendment challenge, and that less restrictive means existed. JA10-17 (capitalization altered in quotation).  Twitter likewise contended that it should not be required to comply with the warrant while its challenge to the NDO was pending.  JA17-18.  In addition to opposing Twitter's motion, the Government moved for an order to show cause why Twitter should not be held in contempt for failing to comply with the warrant in a timely fashion.  JA22-25.

The district court directed Twitter to comply with the warrant while it considered Twitter's motion challenging the NDO and ultimately concluded that the NDO survived strict scrutiny as "a narrowly tailored restriction for which no less restrictive alternative is available that would be at least as effective in serving the government's compelling interests."  JA372.  The district court observed that the NDO was "narrow in scope and time duration" because it prevented Twitter only from disclosing the warrant's existence and was limited to 180 days.  JA381-82.  Moreover, the court reasoned, Twitter's proposed alternatives—notifying the former President or one of his representatives under

3

the Presidential Records Act—were "untenable" because they did not allow the

Government to "maintain[] confidentiality about this covert investigative

Warrant." JA383.[1]

This Court affirmed. *See* Add.1-34. As relevant here, the Court concluded

that, based on the record, the NDO met the demanding strict-scrutiny standard.

Add.20-22. The interests supporting nondisclosure were compelling, Add.21-

22, and the NDO was narrowly tailored to further those interests "through the

least restrictive means." Add.22 (quoting *Williams-Yulee v. Fla. Bar*, 575 U.S.

433, 452 (2015)). Twitter's proposed alternatives—disclosing the NDO to the

former President or one of his representatives—"would not have safeguarded

the security and integrity of the investigation." Add.24. Disclosing the

warrant's existence to a representative, a measure other courts had rejected,

Add.24 (citing *Matter of Subpoena 2018R00776*, 947 F.3d 148, 159 (3d Cir. 2020)),

was also "'unworkable'" because it would have forced the district court to

undertake the "unpalatable job" of determining whether a service provider's

handpicked "'confidante'" was trustwothy, Add.24-25.

---

[1] The district court also concluded that Twitter's failure to comply fully with the warrant by the (second) court-imposed deadline merited sanctions. JA384-89. Twitter does not seek rehearing on that issue.

The Court also rejected Twitter's "underdeveloped" (Add.26) argument that the district court erred under *Freedman v. Maryland*, 380 U.S. 51 (1965), by requiring Twitter to comply with the warrant while the court adjudicated Twitter's First Amendment challenge.  Add.25-29.  *Freedman*—which required certain procedural safeguards, including a mechanism for timely judicial review, before a state could censor a film—was "readily distinguishable" and "a poor fit" because the warrant in this case underwent a "full judicial process" even before Twitter challenged the NDO, which in any event was "not the type of 'classic prior restraint' addressed by *Freedman*."  Add.27-29.  No "*Freedman*-style procedures" were therefore necessary.  Add.28.

**ARGUMENT**

**Rehearing en banc is unwarranted.**

Rehearing en banc is disfavored.  Fed. R. App. P. 35(a).  It is "reserved for 'question[s] of exceptional importance' or to preserve 'uniformity of the court's decisions.'"  *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 636 (D.C. Cir. 2014) (quoting Fed. R. App. P. 35(a)).  Twitter's petition fails to meet that demanding standard.  The Court's factbound determination that Twitter's proposed alternatives to nondisclosure were insufficient is neither exceptionally important nor in conflict with decisions of other courts.  And the Court's conclusion that the procedures called for under

*Freedman v. Maryland*, 380 U.S. 51 (1965), were unnecessary in the context of this case was correct and likewise consistent with other cases. The petition should be denied.[2]

### A. The Court's factbound rejection of Twitter's proposed alternative to nondisclosure was correct and does not conflict with precedent.

Twitter contends (Pet.7-13) that rehearing is warranted to reconsider whether one of its proposed alternatives to nondisclosure—alerting a third-party "representative" of the former President—was a viable less-restrictive option. The Court's factbound conclusion that that alternative was unworkable in this case was correct. It was also consistent with the only other court of appeals to have considered a similar argument. Moreover, nothing in the Court's ruling forecloses Twitter or another service provider from proposing such an alternative in a future case. Rehearing on this issue is unwarranted.

Like the district court, this Court assumed without deciding that strict scrutiny applied, Add.19; *see* JA.372, and thus evaluated whether the NDO served a compelling government interest and was narrowly tailored to further

---

[2] In an *Amicus* brief supporting Twitter's petition, the Electronic Frontier Foundation urges rehearing on the same two issues for the same principal reasons as Twitter. *See* Brief of *Amicus Curiae* Electronic Frontier Foundation in Support of Appellant's Petition for Rehearing En Banc, at 4-14 (filed Sept. 8, 2023).

that interest. Add.20. After determining that nondisclosure served the compelling interest of protecting the "integrity and secrecy" of an ongoing grand jury investigation, Add.23, the Court concluded that the NDO's limited scope and short duration satisfied the narrow-tailoring requirement, Add.22. In reaching that conclusion, the Court found unpersuasive Twitter's proffered alternatives of alerting the former President or one of his representatives because either option risked the very harms against which the NDO protected. Add.24

That factbound determination was correct and does not warrant en banc review. Although the Court noted that nondisclosure orders are arguably unlike "typical prior restraint[s]" and therefore may not "warrant[] the most rigorous First Amendment scrutiny," Add.20 n.5 (internal quotation marks omitted), it nonetheless applied the familiar two-part strict-scrutiny standard to Twitter's claim. Add.19-25. The Court thus required the Government to adduce a compelling interest and to demonstrate that the NDO was narrowly tailored to further that interest, and, applying that standard "on this record," determined that disclosing the warrant's existence to the former President or one of his representatives under the Presidential Records Act would undermine the compelling interest supporting nondisclosure, Add.20, 23-25.

Twitter's repeated description (Pet.7, 8, 13) of the Court's decision as having fashioned a "categorical" rule that disclosure to a third party will always

prove "unworkable" is mistaken.[3]  Neither the Government's argument nor the Court's case-specific holding categorically forecloses the possibility, in other cases, that a limited disclosure to third parties—who may themselves be subject to an order not to disclose the information to certain individuals, including the target of an investigation—will be a viable alternative to a nondisclosure order.[4] Indeed, as Twitter notes, Department of Justice policy already specifically contemplates notification of a third party under certain circumstances.  Pet.10 (citing U.S. Dep't of Justice, *Seeking Enterprise Customer Data Held by Cloud Service Providers* (Dec. 2017)); *see also* U.S. Dep't of Justice, *Supplemental Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)*, at 2 (May 27, 2022) (requiring "case- and fact-specific analysis" to determine whether a nondisclosure order should be sought).  Based on an assessment of the record before it—not, as Twitter suggests (Pet.11), the "grace of prosecutors"—the district court concluded, and this Court agreed, that a nondisclosure order was appropriate here.  But those rulings do not hold or imply that, as a categorical matter, Twitter or another entity could not under different facts disclose to a third party legal process it receives from the Government.  Just as the Supreme

---

[3] Amicus commits the same mistake.  *See* Amicus Br.10.

[4] Twitter fails to cite, however, any published case in which a court has adopted the approach it advocates with respect to a nondisclosure order issued, as here, under 18 U.S.C. § 2705(b).  *See* Pet.8.

Court does not grant a writ of certiorari to "review evidence and discuss specific facts," *United States v. Johnston*, 268 U.S. 220, 227 (1925), this Court should not grant en banc rehearing to reassess the panel's unanimous application of strict scrutiny to the factual record. That is particularly the case where, as here, Twitter advances factual arguments in its rehearing petition that it failed to advance before the district court or the panel. *See, e.g.*, Pet.9 (advocating for disclosure to specific representative).

Review is additionally unwarranted because, as Twitter acknowledges (Pet.9), the only other court of appeals to have considered a similar argument rejected it. In *Matter of Subpoena 2018R00776*, 947 F.3d 148 (3d Cir. 2020), the Third Circuit considered an electronic service provider's argument that, in lieu of a nondisclosure order, the district court should have required the government to notify a third party about a subpoena. *Id.* at 158. The court concluded that that alternative was "untenable" because it was "impractical," "would be ineffective in maintaining . . . secrecy," would risk "undermin[ing] the government's interest in maintaining the confidentiality of an ongoing investigation," and would require a court to "assess the trustworthiness of a would-be confidante chosen by a service provider." *Id.* at 158-59. Just as the Court reasoned here, the Third Circuit determined that the district court had

9

properly "'decline[d] to wade into this swamp' of unworkable line drawing." *Id.* at 159 (quoting *Williams-Yulee*, 575 U.S. at 454).

Finally, Twitter's suggestion (Pet.12) that the nondisclosure question is "of particular importance" because of a potential claim of executive privilege does not merit further review. For one, Twitter does not explain the relevance of a putatively "[u]nique" or "[i]mportant" issue—as Twitter characterized the executive-privilege claim below, *see* JA14—to strict-scrutiny analysis. A Twitter user's potential ability to challenge legal process—here, the warrant—is entirely distinct from the First Amendment concerns that Twitter claims it sought to further through its own challenge to the NDO. *See, e.g.*, JA5 n.1 (Twitter acknowledging below that it was not challenging the warrant's validity); JA6 (Twitter acknowledging it "might lack standing to assert the rights and privileges of its users"). Nor does a Twitter user need notice of a warrant prior to execution because any challenge by a property owner to a search warrant must come after the warrant's execution. *See United States v. Grubbs*, 547 U.S. 90, 99 (2006). In any event, any executive-privilege claim would fail on the merits, *see* Gov. Br.42-46, and the panel's decision appropriately did not address it.[5]

---

[5] Moreover, the proposed alternative that Twitter emphasizes in its rehearing petition—disclosure of the warrant's existence to a representative who cannot disclose that information further—would not have resulted in a notification to

**B.    The Court's determination that the procedures in *Freedman v. Maryland* do not apply to a nondisclosure order was correct and consistent with similar decisions of other courts of appeals.**

Twitter contends (Pet.13-18) that panel rehearing is warranted because the Court erred in determining that the procedural safeguards first articulated in *Freedman*, 380 U.S. 51, were not required and that Twitter received sufficient procedural protections without applying *Freedman*. The Court correctly rejected Twitter's "underdeveloped" argument, Add.26, and its decision does not conflict with the Second Circuit's decision in *John Doe, Inc. v. Mukasey*, 549 F.3d 861 (2d Cir. 2008). Finally, Twitter's concern (Pet.17) that the Court's decision will "do great damage if left uncorrected" overlooks the significant procedural protections from which Twitter benefited. Rehearing is therefore unwarranted.

In *Freedman*, a Maryland "motion picture censorship statute" required submission of any film to a "Board of Censors" before it could be sold or exhibited. 380 U.S. at 52 & n.1. The Supreme Court, recognizing that "any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity," held that the Maryland scheme was unconstitutional. *Id.* at 57-60 (brackets and internal quotation marks omitted). In *Freedman* and subsequent cases, the Court developed certain

---

the former President such that he could have asserted an executive-privilege claim.

"procedural safeguards" for censorship regimes involving content-based prior restraints: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002) (internal quotation marks omitted).

This Court correctly concluded that *Freedman* does not apply in the "readily distinguishable context" of a criminal case involving a search warrant and accompanying nondisclosure order.  Add.27.  The procedural safeguards that *Freedman* prescribes, 380 U.S. at 58, apply to cases involving "government censorship and licensing schemes," not to a law that prohibits disclosure of government requests for information "to assist in an investigation."  *In re National Security Letter*, 33 F.4th 1058, 1077 (9th Cir. 2022).  Because the *Freedman* procedures "were designed to curb traditional censorship regimes," they "are not required in the context of government restrictions on the disclosure of information transmitted confidentially as part of a legitimate government process, because such restrictions do not pose the same dangers to speech rights as do traditional censorship regimes."  *Twitter, Inc. v. Garland*, 61 F.4th 686, 707 (9th Cir. 2023).

Twitter's counterarguments lack merit.  Twitter's claim (Pet.13) that the Supreme Court has not limited *Freedman* to "'noncriminal' schemes" finds no support in the cases on which it relies, none of which involved a criminal scheme, *see id.* at 14 (citing Supreme Court cases applying *Freedman* to professional licensing statutes, injunctions preventing parades, and a law blocking the sale of obscene materials).[6]  And contrary to Twitter's claim, Pet.15, the Court's reliance (Add.28) on "more analogous" cases—including *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), which upheld a civil protective order limiting disclosure in part because such an order was "not the kind of classic prior restraint that requires exacting First Amendment scrutiny," Add.30 (internal quotation marks omitted)—was appropriate because those cases underscore that *Freedman* should not be extended to "long-accepted confidentiality restrictions concerning government-provided information because of the differences between these types of confidentiality requirements and traditional prior restraints." *Twitter*, 61 F.4th at 708.  Moreover, although *Freedman* requires any restriction on speech prior to judicial resolution to preserve the status quo, here Twitter sought broader relief:  a freeze on a

---

[6] Amicus cites additional cases where courts have applied *Freedman* but likewise fails to identify any criminal cases.  *See* Amicus Br.11-12.

collateral step (the execution of a warrant) in a criminal investigation about which it sought to speak.

Twitter's assertion (Pet.16-17) that further review is appropriate because this Court's decision conflicts with the Second Circuit's decision in *Mukasey*, *supra*, overlooks salient differences between the cases. In *Mukasey*, the court considered whether the then-operative nondisclosure rules for a National Security Letter ("NSL")[7] comported with the First Amendment. At the time, the rules permitted the Government to impose a nondisclosure obligation based on a certification by a senior official from the FBI concerning certain enumerated harms, 549 F.3d at 866, and did not require the Government to "initiate judicial review of the lawfulness of a nondisclosure requirement," *id.* at 878.[8] In analyzing the NSL nondisclosure requirements, the Second Circuit concluded that the availability of a nondisclosure order without a concomitant requirement on the Government to initiate judicial review was inconsistent with

---

[7] An NSL is "an administrative subpoena issued by the FBI to a wire or electronic communication service provider which requires the provider to produce specified subscriber information that is relevant to an authorized national security investigation." *In re National Security Letter*, 33 F.4th at 1063; *see* 18 U.S.C. § 2709(a).

[8] The relevant framework was enacted first in 1986 and amended several times until the lawsuit in *Mukasey* was filed in 2004. *See* 549 F.3d at 865-66. The Second Circuit remanded an earlier appeal to the district court after Congress amended the NSL requirements in 2006, and its 2008 decision considered the 2006 amendments. *Id.* at 869.

the third *Freedman* requirement. *Id.* at 883. In 2015, Congress amended the NSL nondisclosure requirements, including by adding two ways for a NSL recipient to avail itself of judicial review. *See In re National Security Letter*, 33 F.4th at 1066-67. Reviewing the 2015 amendments to the NSL nondisclosure requirements, the Ninth Circuit initially opted not to resolve whether "the NSL law *must* provide [the *Freedman*] procedural safeguards" because that law "in fact provides all of them." *Id.* at 1079. In a subsequent NSL case, the Ninth Circuit concluded that *Freedman*'s "particular procedural framework" did not apply, but that in any event, the service provider—Twitter—had received "procedural protections" that were "substantial and sufficient." *Twitter*, 61 F.4th at 707-08.

This case is an unsuitable vehicle to consider any potential conflict concerning the treatment of NSL nondisclosure requirements between the Second Circuit and the Ninth Circuit. For one, the search warrant and accompanying NDO here involved a statutory nondisclosure framework distinct from the NSL nondisclosure requirements. Here, for example, the Government was required to prove to a judicial officer that probable cause supported issuing a search warrant, and then to demonstrate to the same judicial officer "reason to believe that notification of the existence" of the warrant would result in an enumerated harm, including "destruction of or tampering with evidence," "intimidation of potential witnesses," or "otherwise seriously jeopardizing an

15

investigation." 18 U.S.C. § 2705(b). Furthermore, unlike the Ninth Circuit, the Second Circuit does not appear to have revisited whether or how *Freedman* would apply in light of the 2015 amendments to the NSL nondisclosure requirements. Finally, even under a modification to the NSL framework contemplated in *Mukasey*, the district court's decision here to adjudicate the Government's show-cause motion before resolving Twitter's separate challenge to the NDO would not have been inconsistent with *Freedman*. *See Mukasey*, 549 F.3d at 879 (proposing a 60-day time period for resolving a challenge to nondisclosure during which the nondisclosure requirement would remain in effect "[i]n accordance with the first and second *Freedman* safeguards").

Twitter's claim (Pet.17-18) that the Court's decision will do "great damage" is both incorrect and overstated. Notwithstanding the Court's correct conclusion that *Freedman*'s procedural requirements did not apply, Twitter nonetheless received "full judicial process" accorded by statute, including a "neutral and detached judge consider[ing] statutory factors and ma[king] specific findings that supported the issuance of the nondisclosure order." Add.27-28. Twitter sought judicial review of the nondisclosure order within weeks of receiving the warrant and NDO, *see* Add.4-6, and fewer than 30 days elapsed from the filing of Twitter's motion seeking to vacate or modify the NDO until the district court's order denying that motion, *see* JA.3 (motion filed on

16

Feb. 2, 2023); JA.356-390 (district court ruling on Mar. 3, 2023); *see Mukasey*, 549 F.3d at 879 (contemplating 60-day period to resolve NSL nondisclosure challenge).  Moreover, the Court's ruling did not, as Twitter suggests, hold that "courts are *never* required to resolve challenges to non-disclosure orders before ordering compliance with a warrant."  Pet.17 (emphasis added).  Instead, the Court acknowledged that although the district could court have resolved the First Amendment and warrant compliance issues simultaneously, the court's determination "not to delay execution of the warrant under the particular circumstances presented" was not an abuse of discretion.  Add.26.

Twitter's argument (Pet.17-18) that a different rule should apply where, as here, an executive-privilege claim is presented lacks merit.  For one, the cases on which Twitter relies (*id.*) did not involve a pre-enforcement challenge by a third party—like Twitter—that held no cognizable privilege in the materials to be seized under the warrant.  *See In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1238-39 (11th Cir. 2021) (per curiam) (challenge brought by attorneys "assert[ing] attorney-client and work-product privilege over at least some of [the] documents"), *cert. denied*, 143 S. Ct. 88 (2022); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 164-65 (4th Cir. 2019) (challenge brought by law firm invoking attorney-client and work-product privilege over materials); *In re Search Warrant (Sealed)*, 810 F.2d

17

67, 70-71 (3d Cir. 1987) (post-search challenge to medical records under the medical professionals and patients privilege).    Additionally, beyond the ungrounded speculation exercised on behalf of one particular user,[9] Twitter had no plausible reason to conclude that the former President, with the full array of communication technologies available to the head of the Executive Branch, would have used Twitter's direct-message function to carry out confidential communications with Executive Branch advisors.    In any event, Twitter's proposed alternative to nondisclosure would not have enabled the former President to assert an executive privilege-claim.  *See supra* note 5.

---

[9] As Twitter acknowledged below, JA6, Twitter users on whose accounts a search warrant has been executed could potentially advance any number of legal arguments related to information obtained as a result, including privilege claims (such as attorney-client, clergy-penitent, and public officials protected by "official privileges") and suppression claims under the Fourth Amendment.

## CONCLUSION

The Court should deny Twitter's petition for rehearing en banc.

Respectfully submitted,

J.P. COONEY
Deputy Special Counsel

JACK SMITH
Special Counsel

RAYMOND N. HULSER
Counselor to the Special Counsel

THOMAS P. WINDOM
Senior Assistant Special Counsel

CECIL W. VANDEVENDER
Assistant Special Counsel

JAMES I. PEARCE
Assistant Special Counsel
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. B-206
Washington, D.C. 20530
(202) 705-9879
jip@usdoj.gov

September 26, 2023

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND LENGTH LIMITATIONS

1.     This brief contains 3,886 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

it has been prepared in proportionally spaced, 14-point serif typeface using

Microsoft Word for Microsoft 365.

/S/ JAMES I. PEARCE
Assistant Special Counsel
U.S. Department of Justice
(202) 705-9879
jip@usdoj.gov

20

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit on September 26, 2023. I certify that service will be accomplished by email to following counsel for Twitter:

SETH WAXMAN
ARI HOLTZBLATT
BENJAMIN POWELL
WHITNEY RUSSELL
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000

GEORGE P. VARGHESE
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

/S/ JAMES I. PEARCE
Assistant Special Counsel
U.S. Department of Justice
(202) 705-9879
jip@usdoj.gov