# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Filed January 16, 2024

No. 23-5044

IN RE: THE SEARCH OF INFORMATION STORED AT PREMISES CONTROLLED BY TWITTER, INC.

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:23-sc-00031)

---

On Petition for Rehearing En Banc

---

Before: SRINIVASAN, *Chief Judge*; HENDERSON\*, MILLETT, PILLARD, WILKINS, KATSAS\*, RAO\*, WALKER\*, CHILDS, PAN, and GARCIA, *Circuit Judges*.

## O R D E R

Upon consideration of appellant's petition for rehearing en banc, the response thereto, the amicus curiae brief filed by Electronic Frontier Foundation in support of rehearing en banc, and the absence of a request by any member of the court for a vote, it is

**ORDERED** that the petition be denied.

**Per Curiam**

2

                                  **FOR THE COURT:**
                                  Mark J. Langer, Clerk

BY:      /s/
            Daniel J. Reidy
            Deputy Clerk

\* A statement by Circuit Judge Rao, joined by Circuit Judges Henderson, Katsas, and Walker, respecting the denial of the petition for rehearing en banc, is attached.

Rao, *Circuit Judge*, statement respecting the denial of rehearing en banc, joined by Henderson, Katsas, and Walker, *Circuit Judges*: This case turned on the First Amendment rights of a social media company, but looming in the background are consequential and novel questions about executive privilege and the balance of power between the President, Congress, and the courts.

Seeking access to former President Donald Trump's Twitter/X account, Special Counsel Jack Smith directed a search warrant at Twitter and obtained a nondisclosure order that prevented Twitter from informing President Trump about the search. The Special Counsel's approach obscured and bypassed any assertion of executive privilege and dodged the careful balance Congress struck in the Presidential Records Act. The district court and this court permitted this arrangement without any consideration of the consequential executive privilege issues raised by this unprecedented search.

We should not have endorsed this gambit. "[A]ny court completely in the dark as to what Presidential files contain is duty bound to respect the singularly unique role under Art. II of a President's communications and activities" by affording such communications a presumptive privilege. *United States v. Haldeman*, 559 F.2d 31, 76 (D.C. Cir. 1976) (en banc) (cleaned up). Rather than follow established precedent, for the first time in American history, a court allowed access to presidential communications before any scrutiny of executive privilege.

The options at this juncture are limited. Once informed of the search, President Trump could have intervened to protect claims of executive privilege, but did not, and so these issues are not properly before the en banc court. Nonetheless, executive privilege is vital to the energetic and independent exercise of the President's Article II authority and to the separation of powers. While the privilege *may* yield to the needs of a criminal investigation, in making this determination,

2

the Supreme Court and this circuit have always carefully balanced executive privilege against other constitutional interests. By contrast, the court here permitted a special prosecutor to avoid even the assertion of executive privilege by allowing a warrant for presidential communications from a third party and then imposing a nondisclosure order. Because these issues are likely to recur, I write separately to explain how the decisions in this case break with longstanding precedent and gut the constitutional protections for executive privilege.

I.

As part of the criminal investigation into President Trump's alleged efforts to interfere with the peaceful transfer of power after the 2020 presidential election, the Special Counsel obtained a search warrant for the President's Twitter account. After President Trump left office, the contents of his Twitter account from his time in office were deposited with the National Archives and Records Administration. Although an Executive Branch agency held the account data, the Special Counsel admitted he did not seek the account from the Archives because a request to the Archives "would trigger notice to the former President under" the Presidential Records Act, Pub. L. No. 95-591, 92 Stat. 2523 (1978) (codified at 44 U.S.C. §§ 2201 *et seq.*). To avoid the notice required by law, the Special Counsel instead directed a search warrant at Twitter and obtained an order prohibiting Twitter from disclosing the warrant to anyone, including President Trump or his agents. Twitter ultimately complied with the warrant, releasing the requested information. *See In re Sealed Case* ("*Twitter*"), 77 F.4th 815, 821 (D.C. Cir. 2023). The release included 32 direct messages sent by President Trump. He was informed of the warrant and disclosure only months later. *See id.* at 825.

3

The district court rejected Twitter's First Amendment challenge to the nondisclosure order. The court held the order was a narrowly tailored means to serve the compelling government interest in maintaining the secrecy of the Special Counsel's investigation. The court reasoned that disclosing the search warrant to President Trump or his representatives would jeopardize the criminal investigation. A panel of this court affirmed the district court in full. *Id.* at 836.

The First Amendment and other arguments Twitter advances in seeking rehearing en banc are important and may warrant further review. I write, however, to highlight the substantial executive privilege issues implicated by this case. While a Twitter account primarily consists of public tweets, it may also include some private material, such as direct messages between users, drafts, and personal metadata. In fact, the material produced by Twitter included several dozen direct messages written by a sitting President. The district court afforded no opportunity for the former President to invoke executive privilege before disclosure, and this court made no mention of the privilege concerns entangled in a third-party search of a President's social media account. This approach directly contravenes the principles and procedures long used to adjudicate claims of executive privilege.

II.

Executive privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon* ("*Nixon*"), 418 U.S. 683, 708 (1974). The privilege flows from the vesting of all executive power in a single President and "derives from the supremacy of the Executive Branch within its assigned area of constitutional responsibilities." *Nixon v. Adm'r of Gen. Servs.* ("*GSA*"), 433 U.S. 425, 447 (1977). The

4

confidentiality of presidential communications is critical to the energetic exercise of executive power and to the independence of the Executive Branch. It is well established that such privilege extends beyond a President's time in office. *Id.* at 448–49.

When exercising the judicial obligation to determine the validity and scope of executive privilege, the Supreme Court and this circuit have recognized certain implementing rules for adjudicating privilege claims. *See Nixon*, 418 U.S. at 713–14; *Nixon v. Sirica*, 487 F.2d 700, 714–18 (D.C. Cir. 1973) (en banc). Faced with a subpoena or other request for documents, the President may invoke executive privilege, and upon such invocation, the documents become "presumptively privileged." *Nixon*, 418 U.S. at 713; *see also In re Sealed Case* ("*Espy*"), 121 F.3d 729, 744 (D.C. Cir. 1997). Courts must afford presidential materials this presumption even in the absence of an assertion of executive privilege. *See Haldeman*, 559 F.2d at 76–77; *cf. Cheney v. U.S. District Court for D.C.*, 542 U.S. 367, 391 (2004) (correcting the lower court's "mistaken assumption that the assertion of executive privilege is a necessary precondition to" considering separation of powers objections).

While the privilege is not absolute, it may "be defeated only by a strong showing of need." *Senate Select Comm. on Presidential Campaign Activities v. Nixon* ("*Senate Select*"), 498 F.2d 725, 730 (D.C. Cir. 1974) (en banc). For example, when the special prosecutor sought President Nixon's tapes for a criminal investigation, the Court required the prosecutor to show a "demonstrated, specific need for evidence" and to prove that the material was "essential to the justice of the [pending criminal] case." *Nixon*, 418 U.S. at 713 (quoting *United States v. Burr*, 25 F. Cas. 187, 192 (C.C.D. Va. 1807) (Marshall, C.J.)). And while the privilege yielded in that case, we held that a congressional committee subpoenaing a set of President

5

Nixon's tapes had failed to show the material was "demonstrably critical to the responsible fulfillment of [its] functions." *Senate Select*, 498 F.2d at 731.

Moreover, as a practical matter, we have emphasized that determinations regarding executive privilege must occur case-by-case and with careful attention to each document. While the privilege may yield to other important constitutional interests, any disclosure must be limited to the materials relevant to those needs. *See Espy*, 121 F.3d at 761 (requiring the district court to specifically identify the privileged information required to meet the demonstrated need and limiting disclosure only to those documents or parts of documents); *Nixon*, 418 U.S. at 714–16 (authorizing the release of only relevant and admissible portions of President Nixon's tapes and emphasizing the rest "must be excised" and "restored to its privileged status").

Our established procedures for evaluating executive privilege comport with Chief Justice Marshall's admonition that "[i]n no case of this kind would a court be required to proceed against the president as against an ordinary individual." *Burr*, 25 F. Cas. at 192. When presidential privileges are implicated, the Supreme Court and this court have recognized the important and delicate constitutional interests at stake and carefully weighed the privilege against other governmental interests.

A.

In every case involving access to presidential communications, the President has been able to litigate claims of executive privilege, or the court has denied access to the materials. I can find no precedent for what occurred here, namely the court-ordered disclosure of presidential communications without notice to the President and without any adjudication of executive privilege. Approval of the

6

Special Counsel's search warrant and nondisclosure order, with no consideration for the confidentiality of presidential materials, constitutes a "significant departure from historical practice."[1] *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020). This unprecedented approach is mistaken for at least three reasons.

First, neither the district court nor this court explained why presidential privilege may be circumvented with the simple expediency of a search warrant and nondisclosure order. Indeed, this extraordinary approach cannot be squared with the vital constitutional protection for executive privilege. In every prior case involving materials that might be covered by presidential privilege, the President has been allowed to raise the privilege claim *before* disclosure. *See, e.g.*, *Nixon*, 418 U.S. at 714–16 & n.21 (requiring the President have an opportunity

---

[1] The Supreme Court has twice in recent years repudiated a decision of this court for failing to recognize serious separation of powers concerns implicated by novel intrusions on the presidency. When a committee of the House of Representatives subpoenaed President Trump's accountants for his tax returns, the Court explained the unprecedented nature of the dispute, identified the threats it posed to the Office of the President, and held that our court "did not take adequate account of" the "special concerns regarding the separation of powers." *Mazars*, 140 S. Ct. at 2036. And when this court suggested that a sitting President may override the executive privilege claims of a former President, the Supreme Court stated that this was "nonbinding dicta" because the "circumstances [in which] a former President may obtain a court order preventing disclosure of privileged records from his tenure in office, in the face of a determination by the incumbent President to waive the privilege, are unprecedented and raise serious and substantial concerns." *Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (denial of application for stay of mandate and injunction pending review); *see also id.* at 680–81 (Kavanaugh, J., statement respecting denial of application for stay).

7

to raise privilege before enforcement of a subpoena); *Dellums v. Powell*, 642 F.2d 1351, 1364 (D.C. Cir. 1980) (holding the former President "must be given an opportunity to present his particularized claims of Presidential privilege"); *see also United States v. Reynolds*, 345 U.S. 1, 8 (1953) (emphasizing the court's duty to determine the appropriateness of an executive privilege claim "without forcing a disclosure of the very thing the privilege is designed to protect"). By contrast, here the former President was not given an opportunity to assert privilege over communications made during his time in office. The warrant and nondisclosure order were an end-run around executive privilege, ignoring the need to "afford Presidential confidentiality the greatest protection consistent with the fair administration of justice." *Nixon*, 418 U.S. at 715.

Second, the process employed by the Special Counsel and sanctioned by the district court evades the meticulous protections for presidential privilege established by Congress in the Presidential Records Act and reflected in traditional Executive Branch practice. The Act requires notice to a former President before the disclosure of any potentially privileged material. *See* 44 U.S.C. § 2206(3). The Archivist must "promptly notif[y]" a former President if his records are subpoenaed or otherwise sought for "any civil or criminal investigation." 36 C.F.R. § 1270.44(a)(1), (c); *cf. GSA*, 433 U.S. at 444 (upholding the constitutionality of an earlier presidential records statute in part because the statute provided an opportunity to assert executive privilege). After notice, the former President may assert privilege, and if the Archivist decides to release material over such a claim, the former President may seek judicial review of his "rights or privileges." 44 U.S.C. § 2204(e). Moreover, by Executive Order, when a former President raises a privilege claim, the Archivist must consult with the Executive Branch and "abide by any instructions given him by the incumbent President or his

8

designee unless otherwise directed by a final court order." Exec. Order No. 13,489, 74 Fed. Reg. 4669, 4670 (Jan. 21, 2009). And before disclosing any presidential records, the Archivist must provide 30-day notice to the former President, allowing him to seek judicial review. *Id.*

Both the Presidential Records Act and longstanding Executive Branch practice include: (1) notice to a former President before disclosure of presidential records; (2) an opportunity to assert executive privilege; (3) consideration by the incumbent President of privilege issues; and (4) judicial review of claims of executive privilege *before* disclosure. These procedures effectuate the President's constitutional privilege—they are part of the "traditional way[s] of conducting government" between the branches. *Mazars*, 140 S. Ct. at 2035 (cleaned up).

Nonetheless, the Special Counsel acknowledged deliberately circumventing notice to the former President by going to Twitter for the communications, rather than to the National Archives. But as the Supreme Court has admonished, we cannot "sidestep constitutional requirements any time a President's information is entrusted to a third party[.] … The Constitution does not tolerate such ready evasion; it deals with substance, not shadows." *Id*. (cleaned up).

Third, the judicial decisions here provide less protection to executive privilege claims than to privilege claims raised by Members of Congress under the Speech or Debate Clause. When the Executive searches a place where legislative materials are likely to exist—such as a Member's office or cell phone—a Member must be able to assert the Clause's protections before any materials are disclosed. *See United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 662–63 (D.C. Cir. 2007); *see also In re Sealed Case* ("*Perry*"), 80 F.4th

9

355, 366 (D.C. Cir. 2023). By contrast, the district court allowed disclosure of presidential communications to the Special Counsel without notice to the former President or any opportunity to assert executive privilege. This disparity makes little sense given the constitutional foundation of executive privilege, which derives from the "President's unique powers and profound responsibilities." *Espy*, 121 F.3d at 749; *see also Nixon*, 418 U.S. at 711–12.

The warrant and nondisclosure order sought private presidential communications within President Trump's Twitter account. In these circumstances, the district court should have recognized that such material was "presumptively privileged," allowed the former President an opportunity to assert claims of executive privilege, and assessed any privilege claim against the needs of the Special Counsel's investigation.

B.

To bypass the procedures established by Congress, longstanding Executive Branch practice, and Supreme Court precedent, the Special Counsel asserted that the search warrant had to be executed without notice to the former President because notice would endanger the secrecy of the Special Counsel's investigation and give President Trump an opportunity to destroy evidence and intimidate witnesses. The interests of a criminal investigation may ultimately override a President's claim of executive privilege, but the clear throughline of our cases is that presidential communications are "presumptively privileged," and the court must balance any countervailing constitutional interests. *Cf. Nixon*, 418 U.S. at 708–13; *Haldeman*, 559 F.2d at 76–77. Neither the Supreme Court nor this court has ever suggested that the interests of criminal justice can thwart even the consideration of presidential privilege.

10

The Special Counsel rebutted Twitter's efforts to raise executive privilege concerns by arguing that there was "no plausible reason to conclude that the former President … would have used Twitter's direct-message function to carry out confidential communications." But it is widely known that President Trump used his Twitter account to conduct official business. This is precisely why the contents of the account were deposited with the National Archives. Because some functions of a Twitter account, such as direct messages, are private and confidential, it is entirely plausible that the President's account may have contained privileged material. In fact, Twitter vigorously maintained this possibility. The district court dismissed the concerns about executive privilege and also questioned the company's motives in raising claims on behalf of President Trump.[2] Under longstanding precedent, however, the Special Counsel should not have been allowed to evade an assertion of presidential privilege simply by issuing the warrant to a third party—"it is, after all, the President's information." *Mazars*, 140 S. Ct. at 2035.

Furthermore, the Special Counsel maintained that there was not even a colorable claim of executive privilege because the warrant for President Trump's Twitter account came from the Executive Branch and therefore could not implicate the separation of powers. This claim flies in the face of Supreme Court and circuit precedent. To begin with, the Court has held that a former President may assert executive privilege, including against disclosure within the Executive Branch. *See GSA*, 433 U.S. at 448–49. In addition, there is no suggestion that the incumbent President waived executive privilege for this investigation, and the Special Counsel maintains a studied

---

[2] In just one of several examples, the district court asked Twitter's lawyers if they were litigating the case only because "the CEO wants to cozy up with the former President."

11

"independence" from the Department of Justice, the Attorney General, and the President.[3] And finally, the Supreme Court has recently recognized that a conflict between a former and incumbent President over executive privilege raises "serious and substantial concerns." *Trump v. Thompson*, 142 S. Ct. 680, 680 (2022) (denial of application for stay of mandate and injunction pending review). The Court's statement forecloses the Special Counsel's claim that, in effect, any Executive Branch official can dodge a former President's claim of executive privilege without judicial review.

Nothing in the foregoing precludes the possibility that, if the former President had asserted executive privilege, the Special Counsel could have surmounted it by demonstrating a "specific need for evidence in a pending criminal trial." *Nixon*, 418 U.S. at 713. But the Court and this circuit have always undertaken that balance with meticulous attention to the constitutional privilege protecting the President and his Office.

\* \* \*

Before this case, presidential materials were presumptively privileged, even in the absence of an assertion of privilege. Such presumption recognized the importance of confidentiality to the effective and energetic discharge of the President's duties. The presumption also limited the role of the courts when called on to balance executive privilege against

---

[3] *See* Press Release No. 22-1238, U.S. Dep't of Just., Statement of Special Counsel Jack Smith (Nov. 18, 2022) (stating "I intend to conduct the assigned investigations, and any prosecutions that may result from them, independently"); *see also* Press Release No. 22-1237, U.S. Dep't of Just., Appointment of a Special Counsel (Nov. 18, 2022) ("[T]he Special Counsel will not be subject to the day-to-day supervision of any [DOJ] official.").

12

other constitutional interests. Without a word, the district court and our court have flipped the presumption.

The absence of a presumptive privilege particularly threatens the Chief Executive when, as here, a third party holds presidential communications. *See Mazars*, 140 S. Ct. at 2035. And to be sure it aggrandizes the courts, which will have the power to determine whether executive privilege will be considered before its breach. Without a presumption for executive privilege, new questions will invariably arise, particularly because nothing in the panel's opinion is limited to a *former* President. What if, in the course of a criminal investigation, a special counsel sought a warrant for the *incumbent* President's communications from a private email or phone provider? Under this court's decision, executive privilege isn't even on the table, so long as the special counsel makes a showing that a warrant and nondisclosure order are necessary to the prosecution. And following the Special Counsel's roadmap, what would prevent a *state* prosecutor from using a search warrant and nondisclosure order to obtain presidential communications from a third-party messaging application? And how might Congress benefit from this precedent when it seeks to subpoena presidential materials from third parties in an investigation or impeachment inquiry?

Not every "wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting). Perhaps the threat here was hard to spot. Nevertheless, judicial disregard of executive privilege undermines the Presidency, not just the former President being investigated in this case.